## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SHIRIN BAYATI and MOJAN KAMALVAND, on behalf of themselves and a proposed class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GWG HOLDINGS, INC., BRAD K. HEPPNER, ROY W. BAILEY, PETER T. CANGANY, JR., DAVID F. CHAVENSON, THOMAS O. HICKS, DENNIS P. LOCKHART, BRUCE W. SCHNITZER, DAVID H. DE WEESE, MURRAY T. HOLLAND, and TIMOTHY L. EVANS,<br><br>Defendants. | Case No. 3:22-cv-00410<br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiffs Shirin Bayati and Mojan Kamalvand ("Plaintiffs") allege the following based upon the investigation of Plaintiffs' counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Defendant GWG Holdings, Inc. ("GWGH" or the "Company"), as well as regulatory filings and reports, press releases and other public statements issued by the Company, and media reports. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This securities class action seeks remedies under the Securities Act of 1933 ("Securities Act") on behalf of all persons who purchased GWGH bonds ("L Bonds") directly in GWGH's L Bond Offering ("LBO") pursuant to a registration statement that became effective on

June 3, 2020 ("June 2020 Registration Statement"). GWGH sold over $350 million of L Bonds between August 2020 and April 2021 in connection with the June 2020 Registration Statement.

2.       Beginning in 2018, Defendant Brad K. Heppner engineered GWGH's L Bond distribution platform so as to enrich himself, leaving GWGH insolvent and the L Bonds virtually worthless. This scheme was accomplished through Defendants' false and misleading statements and omissions, including in the June 2020 Registration Statement for the offering and sale of L Bonds.

3.       Until 2018, GWGH's primary business purpose was investment in life insurance policies. GWGH raised capital for such investment through the sale of L Bonds to retail investors through a network of securities broker-dealers. In 2018, GWGH announced a major shift in its stated business purpose: instead of investing in life insurance policies, GWGH would invest in The Beneficient Company Group L.P. ("Ben LP"), an entity founded and controlled by Mr. Heppner. GWGH represented that Ben LP was developing a business to, among other things, provide liquidity to holders of alternative assets by making loans secured by those assets.

4.       Defendants materially misrepresented in the June 2020 Registration Statement that GWGH intended to use the net proceeds from the LBO to grow its "alternative asset exposure"— including through investments in Ben LP and its subsidiaries in the form of equity investments and loans—to "create a unified platform uniquely positioned to provide an expanded suite of products, service and resources for investors," and to better position Ben LP's "balance sheet, working capital and liquidity profile to satisfy anticipated Texas Department of Banking regulatory requirements." In fact, those investments and loans were neither used to increase the value of GWGH's assets (alternative or otherwise), nor to provide an expanded set of products or services

for investors, nor to increase working capital or liquidity, nor to satisfy any regulatory requirements.

5.      In the period leading up to the LBO, through a series of complex 2018 and 2019 transactions, GWGH transferred more than $359 million in cash to Ben LP and its subsidiaries, and issued $366 million in L Bonds to a Ben LP subsidiary. These transactions culminated in GWGH's consolidation of ownership and control of Ben LP. But, in a pattern that would repeat itself in connection with the offering connected to the June 2020 Registration Statement, a substantial percentage of the cash proceeds were not used for their stated purpose. As one example, GWGH loaned $80 million to a Ben LP subsidiary in 2019 for the supposed purpose of strengthening Ben LP's cash position to enable Ben LP to obtain a Texas trust charter, an acquisition GWGH represented was necessary to implement Ben LP's business plan. As discussed *infra*, it became apparent in November 2021, when GWGH restated certain financial statements, that by December 31, 2019, the $80 million that GWGH had loaned was no longer in the possession of the Ben LP subsidiary, Ben LP, or any of its other subsidiaries.

6.      GWGH's L Bond sales increased by approximately 65% between 2018 and 2020. Yet GWGH's disclosures after the LBO demonstrate that only a small percentage of the capital raised through the sale of L Bonds pursuant to the June 2020 Registration Statement was used to develop Ben LP's business or make collateralized loans consistent with its stated business purpose, and no capital was set aside for future investment. A significant amount of capital raised through the sale of L Bonds was used to repay a $153 million debt to a Heppner-controlled entity, which, as set forth *infra*, appears not to have been a *bona fide* debt. After servicing its outstanding L Bonds and other debt, paying overhead expenses, and making loan payments to the Heppner-controlled

entity, GWGH had only minimal cash to invest in collateralized loans or otherwise develop Ben LP's business.

7.       GWGH was forced to discontinue the LBO in April 2021 when it was unable to timely file its 2020 annual report. With the LBO discontinued, GWGH immediately ran into liquidity problems. By August 2021, GWGH had pledged its entire portfolio of life insurance policies—with a fair market value of approximately $790 million—as collateral for loans to keep GWGH afloat. In November 2021, GWGH spun Ben LP off as an independent entity.

8.       Also in November 2021, GWGH disclosed that it had received an SEC subpoena in October 2020 for documents and information relating to the LBO and its accounting practices, among other areas of inquiry, as part of a non-public investigation of GWGH being conducted by the SEC. GWGH further disclosed that the existence of the investigation could have a material adverse effect on "the value of [GWGH's] securities."

9.       After it received the SEC subpoena in October 2020, but before it disclosed the SEC investigation in November 2021, GWGH sold over $200 million of L Bonds.

10.      In January 2022, GWGH missed a payment of interest and principal due and owing to L Bond holders, and announced its hiring of restructuring counsel. In February 2022, GWGH disclosed that it was unable to continue making payments on the L Bonds. The bonds now lack value on account of GWGH's inability to service them.

11.      As a result of Defendants' wrongful acts and omissions, and the steep decline in the value of the L Bonds, Plaintiffs and other Class members have suffered significant losses and damages, which they seek to recover through this action.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to §§ 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. This Court has jurisdiction over this action pursuant to § 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. § 1331.

13.     Venue is properly laid in this District pursuant to § 22 of the Securities Act and 28 U.S.C. §§ 1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District as GWGH maintains its principal place of business in this District.

14.     In connection with the wrongful acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

### Plaintiffs

15.     Ms. Bayati resides in California and purchased L Bonds of the Company with a principal amount of $50,000 on or around May 1, 2021. Ms. Bayati has owned such L Bonds continuously until present.

16.     Ms. Kamalvand resides in California and purchased L Bonds of the Company with a principal amount of $35,000 on or around May 1, 2021. Ms. Kamalvand has owned such L Bonds continuously until present.

### Defendants

17.     Defendant Brad K. Heppner resides in Texas. Mr. Heppner served as the Company's Chairman of the Board of Directors from April 26, 2019 to June 14, 2021. Mr. Heppner is also one of the founders of Ben LP and serves as the Chairman of Ben LP's Board of Directors

and as its Chief Executive Officer. As of July 22, 2020, Mr. Heppner was the beneficial owner of 8,169 shares of common stock of the Company.

18.     Defendant Roy W. Bailey resides in Texas. Mr. Bailey was a Director of the Company from March 16, 2020 to March 6, 2021. As of May 13, 2020, Mr. Bailey beneficially owned 7,895 shares of restricted stock units of the Company.

19.     Defendant Peter T. Cangany, Jr. resides in Washington. Mr. Cangany has been a Director of the Company continuously since April 26, 2019. Mr. Cangany is also presently a Director of Ben LP. As of September 30, 2021, Mr. Cangany was the beneficial owner of 8,169 shares of common stock of the Company. As of December 31, 2020, Mr. Cangany had outstanding 25,000 restricted equity units ("REUs") of Ben LP, of which 12,500 vested on April 1, 2021, and 12,500 are scheduled to vest on April 1, 2022.

20.     Defendant David F. Chavenson resides in Texas. Mr. Chavenson presently is a Director of the Company, having been appointed to the Board of Directors on May 13, 2019. As of September 30, 2021, Mr. Chavenson was the beneficial owner of 8,169 shares of common stock of the Company.

21.     Defendant Thomas O. Hicks resides in Texas. Mr. Hicks was a Director of the Company from April 26, 2019 to June 14, 2021. Mr. Hicks presently is a Director of Ben LP. As of July 23, 2020, Mr. Hicks was the beneficial owner of 8,169 shares of common stock of the Company. Additionally, as of that date, Mr. Hicks was the indirect beneficial owner of 1,452,155 shares of Company common stock through AltiVerse Capital Markets, LLC ("AltiVerse"). AltiVerse is a Delaware limited liability company for which Hicks Holdings Operating LLC, a Texas limited liability company ("Hicks Holdings"), serves as Manager. Mr. Hicks is sole manager of Hicks Holdings.

22.     Defendant Dennis P. Lockhart resides in Georgia. Mr. Lockhart was a Director of the Company from May 13, 2019 to June 14, 2021. Mr. Lockhart presently is a Director of Ben LP. As of July 23, 2020, Mr. Lockhart was the beneficial owner of 8,169 shares of common stock of the Company. As of December 31, 2020, Mr. Lockhart had outstanding 25,000 REUs of Ben LP, of which 12,500 vested on May 10, 2021, and 12,500 are scheduled to vest on May 10, 2022.

23.     Defendant Bruce W. Schnitzer resides in Connecticut. Mr. Schnitzer was a Director of the Company from April 26, 2019 to June 14, 2021. Mr. Schnitzer presently is a Director of Ben LP. As of June 22, 2020, Mr. Schnitzer was the beneficial owner of 8,169 shares of common stock of the Company. As of December 31, 2020, Mr. Schnitzer held 3,750 REUs of Ben LP, which vested on January 1, 2021.

24.     Defendant David H. De Weese resides in New York. Mr. De Weese has continuously served as a Director of the Company since April 26, 2019. Mr. De Weese is also presently a Director of Ben LP. As of September 30, 2021, Mr. De Weese was the beneficial owner of 8,169 shares of common stock of the Company.

25.     Defendant Murray T. Holland resides in Texas. Mr. Holland has served as GWGH's President and Chief Executive Officer since April 26, 2019.

26.     Defendant Timothy L. Evans resides in Texas. Mr. Evans joined GWGH as Chief Integration Officer on May 6, 2019, and was appointed Chief Financial Officer on August 15, 2019. Mr. Evans previously served as Deputy General Counsel of Ben LP since February 2018.

27.     The individual Defendants described above are collectively referred to herein as the "Individual Defendants."

28.     Defendant GWG Holdings, Inc. is a Delaware corporation formed on or about March 19, 2008, and headquartered in Dallas, Texas. GWGH conducts its life insurance secondary

market business through a wholly-owned subsidiary, GWG Life, LLC ("GWG Life"), and GWG

Life's wholly-owned subsidiaries: GWG Life Trust; GWG DLP Funding IV, LLC ("DLP IV");

GWG DLP Funding V Holdings, LLC ("DLP V Holdings"); and GWG DLP Funding Holdings

VI, LLC ("DLP VI Holdings"). In addition, from December 31, 2019 until approximately

November 29, 2021, Ben LP was a consolidated subsidiary of GWGH.

## RELEVANT NON-PARTIES

29.     The Beneficient Company Group, L.P., is a Delaware limited partnership formed

on or about September 16, 2003, and headquartered in Dallas, Texas. Individual Defendant

Heppner presently serves as Chairman of the Board of Directors and CEO of Ben LP. Mr. Heppner

also serves as Chairman of the Board of Directors and CEO of Ben LP's general partner,

Beneficient Management, LLC ("Beneficient Management"), a Delaware limited liability

company. Ben LP describes itself as a provider of private trust solutions, "including a unique suite

of private trust, lending and liquidity products, to bring liquidity to owners of alternative assets."

As of July 22, 2020, Beneficient Capital Company, LLC ("BEN Capital"), an affiliate of Ben LP,

owned 2,500,000 shares of common stock of the Company.

30.     Emerson Equity LLC ("Emerson Equity") is a California limited liability company

formed on or about October 10, 2003. Headquartered in San Mateo, California, Emerson Equity

describes itself as a "leading boutique investment firm" that "sponsor[s] companies that bring

private placement offerings in the market." Emerson Equity was the dealer manager for the L

Bonds in the LBO for purposes of the Securities Act.

31.     Whitley Penn LLP ("Whitley Penn") is a Texas limited liability partnership formed

on or about February 17, 2006. Whitley Penn is headquartered in Fort Worth, Texas. Whitley Penn

was the auditor for GWGH for the calendar year ended December 31, 2019.

32.     The Relevant Non-Parties set forth above are not named as Defendants in this action.  Plaintiffs reserve the right to name any or all Relevant Non-Parties as a Defendant based on Plaintiffs' continuing investigation, information learned in discovery, or otherwise.

### AGENCY, ALTER-EGO, AND CO-CONSPIRATOR ALLEGATIONS

33.     At all relevant times, each Defendant and Relevant Non-Party was a principal, agent, alter ego, joint venturer, partner, or affiliate of each other Defendant and Relevant Non-Party, and in doing the acts alleged herein, was acting within the course and scope of that principal, agent, alter ego, joint venture, partnership, or affiliate relationship. Each Defendant and Relevant Non-Party had actual knowledge of the wrongful acts of each other Defendant and Relevant Non-Party; ratified, approved, joined in, acquiesced, or authorized the wrongful acts of each other Defendant and Relevant Non-Party; and retained the benefits of those wrongful acts.

34.     Each Defendant and Relevant Non-Party also aided and abetted, encouraged, and rendered substantial assistance to each other Defendant and Relevant Non-Party in the wrongful conduct alleged herein. In taking action, as alleged herein, to aid, abet, encourage, and substantially assist the commissions of the wrongful acts and other misconduct set forth herein, each Defendant and Relevant Non-Party acted with an awareness of their primary wrongdoing and realized that their conduct would substantially aid the accomplishment of the wrongful acts and purposes set forth herein.

### FACTUAL ALLEGATIONS

35.     GWGH was incorporated in 2006. Throughout most of its existence, GWGH's business was focused on the acquisition of life insurance policies in the secondary market. Its annual report for 2017 filed with the SEC on Form 10-K ("2017 Annual Report") states that the

fair value of the life insurance policies held by GWGH and its subsidiaries as of December 21, 2017 was approximately $651 million.

36.     GWGH raised capital for the purchase of life insurance policies primarily through the sale of bonds, marketed under the name "L Bonds," to retail investors through a network of broker-deal firms registered with the Financial Industry Regulatory Authority ("FINRA"). During 2017, GWGH raised approximately $131.8 million from the issuance of L Bonds. GWGH's annual report for the period ended December 31, 2019, filed with the SEC on Form 10-K ("2019 Annual Report"), describes its "world class" financial services platform for distributing its L Bonds: "this platform consists of over one hundred independent broker dealers and several thousand 'independent' financial advisors ('Retail Distribution') who sell the Company's investment products."

37.     As of January 2018, GWGH's Chief Executive Officer and Chief Operating Officer were Jon Sabes and Steven Sabes respectively, each of whom was a Director of GWGH. The 2017 Annual Report states that Jon and Steven Sabes were controlling stockholders of GWGH, together beneficially owning or controlling approximately 72% of GWGH's common stock. GWGH's common stock had been listed on the Nasdaq Capital Market ("NASDAQ") since 2014, but the stock was thinly traded. For example, in the month of January 2018, the average daily trading volume of the stock was 8,040 shares. The average closing price of the stock during that month was $8.66.

**Diversion of L Bond Investor Funds to Ben LP**

38.     On January 18, 2018, GWGH made an 8-K filing with the SEC announcing a so-called strategic relationship with Ben LP. GWGH reported that it was developing a business to provide "mid-to-high net worth individuals trust services and related liquidity products and loans

for alternative assets and illiquid funds." GWGH further reported that Ben LP was developing "a third business segment, referred to as financial technologies and online platforms, designed to offer clients online financial technologies and platforms for direct access to Ben LP's liquidity products and services."

39.     Between August 2018 and December 2019, GWGH entered a series of complex transactions with Ben LP pursuant to which GWGH made a substantial investment in Ben LP and eventually took control of and consolidated it. Through these transactions, approximately $359 million in cash was transferred from GWGH to Ben LP and its subsidiaries. GWGH raised these funds through the sale of L Bonds, and those sales increased from approximately $264 million in 2018 to approximately $403 million in 2019.

40.     The first set of transactions was entered in August 2018: (i) GWGH and its subsidiary GWG Life made a commercial loan in the amount of $200 million to Ben LP ("Commercial Loan"); (ii) Ben LP provided GWGH a promissory note in the amount of $162.9 million ("Exchangeable Note"); (iii) Ben LP purchased 5 million shares of GWGH convertible preferred stock; (iv) trusts affiliated with Ben LP ("Seller Trusts") delivered to GWGH 4,032,359 common units of Ben LP at an assumed value of $10 per unit; and (v) GWGH issued L Bonds to the Seller Trusts in the aggregate principal amount of $403.2 million ("Seller Trust L Bonds").

41.     Additional transactions were entered in December 2018: (i) the principal amount of the Commercial Loan was reduced to $182 million; (ii) the principal amount of the Exchangeable Note was reduced to $148.2 million; (iii) the principal amount of the Seller Trust L Bonds was reduced to $366.9 million; (iv) the Seller Trusts refunded $0.8 million in interest paid on the Seller Trust L Bonds; (v) interest on the Commercial Loan and the Exchangeable Note was added to the principal amount of the Commercial Loan, increasing that principal amount to $192.5

million; (vi) the Seller Trusts transferred 21,650,087 common units of Ben LP to GWGH; (vii) GWGH received 14,822,843 common units of Ben LP in exchange for the Exchangeable Note; (viii) GWGH issued 22,013,516 shares of GWGH common stock to the Seller Trusts; and (ix) Ben LP was issued 5 million shares of GWGH common stock in exchange for the 5 million shares of convertible preferred stock that it received in August 2018.

42.     The Seller Trust L Bonds had a maturity date of August 9, 2023. The Seller Trusts had the right to require GWGH to repurchase the Seller Trust L Bonds, in whole or part, in or after December 2020, with the repurchase to be made either in cash or through cancellation of outstanding principal and accrued interest on the Commercial Loan, or a portion thereof. The agreements entered between GWGH and Ben LP in 2018 thus contemplated cancellation of the Commercial Loan and additional transfers of cash from GWGH to Ben LP of at least $166 million by December 2020.

43.     In April 2019, Jon and Steven Sabes sold and transferred all of their shares of GWGH common stock to an entity controlled by Defendant Hicks, AltiVerse, in exchange for $25 million cash and AltiVerse equity interests. Jon and Steven Sabes could not have liquidated their shares on the NASDAQ because the shares were thinly traded as discussed *supra*. Upon information and belief, the $25 million in cash that AltiVerse used to purchase these shares originated in part from GWGH's transfers of funds to Ben LP and/or its subsidiaries.

44.     At the time that they sold their shares to AltiVerse, Jon and Steven Sabes resigned from GWGH's Board, as did the Board's five other Directors. Eleven new Directors were appointed, including Mr. Heppner. Defendant Holland became Chief Executive Officer.

45.     In June 2019, GWG Life made a $65 million loan to six trusts, all of which are subsidiaries of Ben LP (collectively, the "LiquidTrust Borrowers") pursuant to the terms of a

promissory note. In November 2019, GWG Life advanced $15 million of additional loan proceeds to the LiquidTrust Borrowers pursuant to those terms. The stated purpose of this loan was to "further diversify into alternative assets (beyond life insurance) and ancillary businesses and . . . to better position [Ben LP's] balance sheet, working capital and liquidity profile to satisfy anticipated Texas Department of Banking regulatory requirements." In July 2020, the promissory note was converted into a preferred equity interest in a Ben LP affiliate, Beneficient Company Holdings LP ("BCH").

46.     Lastly, in December 2019, GWGH transferred $79 million to Ben LP in exchange for 666,667 common units of Ben LP and an equity interest in BCH. GWGH obtained the right to appoint a majority of the Board of Directors of Ben LP's general partner, Beneficient Management, and therefore obtained control of Ben LP. At this juncture, GWGH began reporting the results of Ben LP and its subsidiaries on a consolidated basis, and Mr. Heppner became a Director and the Chairman of GWGH's Board of Directors.

## GWGH's Public Statements

47.     GWGH first reported Ben LP's financial information on a consolidated basis in GWGH's 2019 Annual Report. Analysis of GWGH's financial statements—including through comparison of its December 31, 2019 financial statements (post-consolidation) to its September 30, 2019 financial statements (pre-consolidation) in its quarterly report filed with the SEC on Form 10-Q for the period ending September 30, 2019 ("9/30/19 Quarterly Report")—reveal that Ben LP had little or no cash left as of the time of consolidation, and that Ben LP's only significant assets

were loans receivable in the amount of approximately $232 million, collateralized by private equity investments.[1]

48.     Following consolidation, the LiquidTrust Borrowers were initially treated as unconsolidated entities; financial information for the LiquidTrust Borrowers was not reported by GWGH on a consolidated basis in its 2019 Annual Report. However, after GWGH's auditor changed from Whitley Penn to Grant Thornton LLP, GWGH in July 2021 asked the SEC's Office of the Chief Accountant ("OCA") whether Ben LP was required to consolidate certain trusts, including the LiquidTrust Borrowers. During a July 2021 call, OCA indicated that it would object to treatment by Ben LP of the LiquidTrust Borrowers, among other trusts, as unconsolidated. GWGH was therefore forced to restate its financial statements for the year ending 2019.

49.     GWGH's restated financial statements for the year ending December 31, 2019— reported in its annual report for the year ending December 31, 2020 filed with the SEC on Form 10-K on November 5, 2021 ("2020 Annual Report")—reflect adjustments to cash and cash equivalents resulting from treatment of the trusts, including the LiquidTrust Borrowers, as consolidated entities. The restated financial statements reflect an upward adjustment of cash and cash equivalents of approximately $3 million, and an upward adjustment of restricted cash of approximately $13 million. Despite GWGH's representation that the purpose of GWG Life's $80 million in loans to the LiquidTrust Borrowers was to "better position [Ben LP's] balance sheet, working capital and liquidity profile to satisfy anticipated Texas Department of Banking regulatory requirements," the restated financial statements show that little, if any, of those loan proceeds remained in the possession of the LiquidTrust Borrowers, Ben LP, or any of Ben LP's other

---

[1] GWGH's restated financial statements disclosed in its 2020 annual report for the year ending December 31, 2019, reported the value of its private equity-related investments using the net asset value of the private equity investments collateralizing the loans.

subsidiaries as of December 31, 2019. By then, all or most of the proceeds of the $80 million loans to the LiquidTrust Borrowers had been transferred to insiders.

50.     GWGH's 2019 Annual Report states that Ben LP was indebted to an entity affiliated with Mr. Heppner, HCLP Nominees, LLC ("HCLP"), in the amount of approximately $153 million. That $153 million debt did not result from *bona fide* lending from the Heppner-controlled HCLP entity to Ben LP or its subsidiaries. As noted *supra*, the assets held by Ben LP and its subsidiaries at the time of the consolidation consisted primarily of a $232 million loan receivable.

51.     In connection with the consolidation of Ben LP and GWGH, an intercreditor agreement was entered between GWG Life and HCLP pursuant to which GWG Life's loans to the LiquidTrust Borrowers (affiliates of Ben LP) totaling $80 million were subordinated to HCLP's $153 million loan to Ben LP. As discussed *supra*, in July 2020, the promissory note accompanying GWG Life's loans to the LiquidTrust Borrowers was converted to a preferred equity interest in BCH.

52.     In May 2020, Ben LP executed a term sheet to amend its credit agreements with HCLP, and Ben LP amended those agreements in August 2020. Pursuant to the amendments, Ben LP made a $28.6 million payment to HCLP in July 2020, a $25.0 million payment to HCLP in September 2020, and a $25.0 million payment to HCLP in December 2020. The final maturity date of  HCLP's loan to Ben LP was March 31, 2022. As of September 30, 2021, the balance of this loan was approximately $77 million.

53.     The pace of GWGH's capital raising through the sale of L Bonds accelerated, increasing from approximately $264 million in 2018 to approximately $403 million in 2019, and to approximately $440 million in 2020. At the time the LBO was suspended on April 16, 2021,

GWGH was on pace to raise over $500 million in 2021. Despite these increases, only a small percentage of the funds raised were used to develop Ben LP's business or to make investments consistent with Ben LP's business objectives, and no capital was set aside for future investment.

54.    Thus, even as GWGH continued raising hundreds of millions of dollars through L Bond offerings, only a small portion of the funds was used as represented to investors. The rest—almost all of the money invested by Plaintiffs and the Class—was diverted, including for Defendant Heppner's personal benefit.

55.    GWGH was forced to discontinue the LBO offering on April 16, 2021, after failing to file its 2020 Annual Report with the SEC by its March 2021 deadline as a result of its accounting problems.

### The Scheme Collapses

56.    Mr. Heppner resigned from GWGH's Board of Directors effective June 14, 2021.

57.    Between March 2021 and September 2021, GWGH obtained loan proceeds from an existing secured creditor, LNV Corporation ("LNV"), a subsidiary of Beale Bank USA, and from an additional creditor, National Founders LP ("NF"). GWGH reported that the combined balance of its loans from LNV and NF increased from approximately $194 million to approximately $328 million between December 31, 2020 and September 30, 2021.

58.    In an August 11, 2021 filing with the SEC on Form 8-K that disclosed the credit facility with NF, GWGH reported that it had provided a security interest, in connection with the credit facility, in substantially all of GWGH's remaining life insurance policies not pledged under its credit facility with LNV. GWGH had pledged its entire $790 million portfolio of life insurance policies as loan collateral for LNV and NF.

59.     In an August 25, 2021 filing with the SEC on Form 8-K, GWGH announced it had entered a non-binding term sheet with Ben LP and certain of its affiliates outlining a series of transactions which, if completed, would result in Ben LP no longer being a consolidated subsidiary of GWGH. In a subsequent November 12, 2021 filing with the SEC on Form 8-K, GWGH announced that definite agreements had been executed, and that by November 29, 2021 at the latest, Ben LP would become independent.

60.     In connection with this spin off, Ben LP agreed to "pay off" the Commercial Loan, which had a balance of approximately $202 million, by issuing GWGH approximately 19 million units of common limited partnership of Ben LP. These units have little value in relation to the $202 million loan balance, as GWGH already owned approximately 89% of Ben LP's outstanding units of common limited partnership, and Ben LP owned relatively little in assets.

61.     On November 5, 2021, GWGH filed its 2020 Annual Report with the SEC. GWGH therein announced that it had been served a subpoena by the SEC in October 2020 relating to a non-public fact-finding investigation:

> On October 6, 2020, [GWGH] received a subpoena to produce documents from the Chicago office of the SEC's Division of Enforcement, informing the Company of the existence of a non-public, fact-finding investigation into [GWGH]. Since the initial subpoena, the Company has received subsequent subpoenas from the SEC for additional information. The requested information from the SEC has primarily related to [GWGH's] investment products, including its L Bonds, as well as various accounting matters, among them, the consolidation for financial reporting purposes of [Ben LP] by [GWGH], goodwill valuation, and the accounting related to the ExAlt Trusts, related party transactions, life insurance policies, and the calculation of the debt-coverage ratio. We are cooperating fully with the SEC in connection with its investigation. Investigations of this nature are inherently uncertain, and their results cannot be predicted. Regardless of the outcome, the SEC investigation may have an adverse impact on us because of fines, legal costs, other expenses, diversion of management resources, and other factors. **The investigation could also result in reputational harm to the Company and may have a material adverse effect on the Company's current and future business activities and its ability to raise**

**capital through the sale of L Bonds and equity securities. As a result, the failure to raise enough capital to meet our cash needs could have a material adverse effect on our operations and the value of our securities.** (Emphasis added.)

62.    GWGH attempted to resume the LBO after filing its 2020 Annual Report in November 2021 but was unable to effectively do so.

63.    On January 18, 2022, GWGH filed an 8-K with the SEC announcing that it had hired counsel as a "restructuring legal advisor to assist the Company's Board of Directors and management in evaluating alternatives with respect to its capital structure." GWGH further disclosed "it did not make the January 15, 2022 interest payment of approximately $10.35 million and principal payments of approximately $3.25 million with respect to its L Bonds." In addition, GWGH announced that it had elected to voluntarily discontinue the LBO effective January 10, 2022.

64.    GWGH's January 18, 2022 8-K filing also stated: (i) the Company is permitted a 30-day grace period to make the interest and principal payments to investors; (ii) in the event that the Company does not make the payments within the grace period, an event of default under the indenture will result, and trustee may elect to accelerate the L Bonds causing them to be immediately payable; and (iii) payment of principal and interest on the L Bonds is subject to the subordination provisions of the Indenture for the benefit of holders of Senior Debt.

65.    On February 14, 2022, GWGH filed with the SEC an Investor Communication attached as an exhibit to an 8-K. This communication stated that GWGH would be unable to make the payments on the L Bonds within the grace period, and that GWGH would notify L Bond holders if and when L Bond would be able to make any future payments.

**The Misleading June 2020 Registration Statement**

66.    On or about March 30, 2020, GWGH filed with the SEC a Registration Statement on Form S-1 for the LBO. On or about May 15, 2020, GWGH filed an Amendment to the Registration Statement as Amendment No. 1 to Form S-1. On June 3, 2020, the SEC declared the Registration Statement effective, and on or about June 5, 2021, GWGH filed the final Prospectus for the LBO which forms part of the June 2020 Registration Statement. The June 2020 Registration Statement incorporates by reference certain GWGH SEC filings including the 2019 Annual Report.

67.    Whitley Penn audited the consolidated financial statements of GWGH and its subsidiaries for the year ending December 31, 2019, as disclosed in the 2019 Annual Report, and incorporated by reference in the June 2020 Registration Statement. Whitley Penn likewise audited the effectiveness of GWGH's internal controls over financial reporting as of December 31, 2019. The June 2020 Registration Statement states that the financial statements were incorporated in reliance on the report of Whitley Penn pertaining to such financial statements and the effectiveness of GWGH's internal controls over financial reporting.

68.    Emerson Equity was the dealer manager for the L Bonds in the LBO for purposes of the Securities Act. The L Bonds were offered and sold on a best-efforts basis by Emerson Equity, which received selling commissions ranging from 0.75% to 5.00% of the principal amount of L Bonds sold, depending on the bonds' maturity date, among other compensation.

69.    In August 2020, GWGH began offering and selling the L Bonds pursuant to the June 2020 Registration Statement. Between August 2020 and April 2021, GWGH issued over $350 million in L Bonds.

70.     The June 2020 Registration Statement was negligently prepared. It contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading. The June 2020 Registration Statement's false and misleading statements relating to the transactions with Ben LP include:

- [GWGH] completed the transactions with [Ben LP] to provide the Company with a significant increase in assets and common shareholders' equity;

- We intend to use the net proceeds from this offering to grow our alternative asset exposure, including through investments in [Ben LP] in the form of equity investments and/or loans to [Ben LP] or related entities; and

- In the second quarter of 2019, we completed an expansion of the strategic relationship with [Ben LP], which was a transformational event for both organizations that is expected to create a unified platform uniquely positioned to provide an expanded suite of products, services and resources for investors and the financial professionals who assist them. [GWGH] and [Ben LP] intend to collaborate extensively and capitalize on one another's capabilities, relationships and services.

The statement that GWGH intended to use the net proceeds from this offering "to grow our alternative asset exposure, including through investments in Ben LP in the form of equity investments and/or loans to Ben LP and related entities," was false and misleading. Only a small percentage of the offering proceeds was being used for these purposes as of this time. Further, the statement that the "expansion of the strategic relationship with [Ben LP] . . . is expected to create a unified platform uniquely positioned to provide an expanded suite of products, service and resources for investors" materially misrepresented Ben LP's business prospects and ability to achieve those objectives. As discussed *supra*, even though the pace of GWGH's capital raising through the LBO had increased dramatically between 2018 and 2020, GWGH had little cash available to make investments in Ben LP's business after servicing the L Bonds and other debt, making loan payments to a Heppner-controlled entity, and paying overhead expenses.

20

71.     According to the June 2020 Registration Statement, Ben LP planned to operate three potentially high-value, high-margin lines of business:

- Private Trust Lending & Liquidity Products. Through Beneficient Capital Company, L.L.C. ("BCC"), Beneficient provides a unique suite of private trust, lending and liquidity products focused on bringing liquidity to owners of professionally managed alternative assets. Beneficient's innovative liquidity solutions are designed to serve mid-to-high net worth ("MHNW") individuals, small-to-mid sized ("STM") institutions, and asset managers who have historically possessed few attractive options to access early liquidity from their alternative assets. Beneficient targets MHNW clients with $5 million to $30 million in net worth and STM institutional clients typically holding less than $1 billion in assets.

- Trust and Custody Services. Through Beneficient Administrative and Clearing Company, L.L.C. ("BACC") and (subject to capitalization) through PEN Indemnity Insurance Company, LTD ("PEN"), Beneficient plans, in the future, to market retirement funds, custody and clearing of alternative assets, and trustee and insurance services for covering risks attendant to owning or managing alternative assets.

- Financial Technology. Through Ben Markets Management Holdings, L.P., formerly called ACE Portal, L.L.C. ("ACE"), Beneficient plans in the future to provide online portals and financial technologies for the trading and financing of alternative assets.

The above-referenced representations are materially false and misleading. GWGH had little capital available to develop these business lines notwithstanding that its pace of capital raising through the LBO had increased dramatically between 2018 and 2020.

72.     The June 2020 Registration Statement also misrepresented the purpose of the loans that GWG Life made to the LiquidTrust Borrowers between June 2019 and November 2019, stating that the lending aimed to "further diversify into alternative assets (beyond life insurance) and ancillary businesses and was intended to better position [Ben LP's] balance sheet, working capital and liquidity profile to satisfy anticipated Texas department of banking regulatory

requirements."[2] As discussed *supra*, the funds were not actually used to position Ben LP's "balance sheet, working capital and liquidity profile to satisfy anticipated Texas department of banking regulatory requirements." By December 31, 2019, the $80 million of loan proceeds was no longer in the possession of the LiquidTrust Borrowers, Ben LP or any of its other subsidiaries.

73.     The June 2020 Registration Statement incorporated by reference the 2019 Annual Report, which contained numerous material financial misrepresentations and omissions, leading to an SEC investigation and the restatement in November 2021 of GWGH's 2019 financial statements.

74.     As discussed *supra*, GWGH disclosed in its 2020 Annual Report, filed on November 5, 2021, that it was served by the SEC with a subpoena requesting documents relating to the LBO and its accounting practices, among other matters, in connection with the SEC's non-public investigation of it. GWGH further disclosed:

> The investigation could also result in reputational harm to the Company and may have a material adverse effect on the Company's current and future business activities and its ability to raise capital through the sale of L Bonds and equity securities. As a result, the failure to raise enough capital to meet our cash needs could have a material adverse effect on our operations and the value of our securities.

75.     GWGH thus acknowledged that the SEC's investigation could have a material adverse effect on the value of the L Bonds that GWGH was selling pursuant to the June 2020 Registration Statement. Notwithstanding that GWGH received the subpoena in October 2020, GWGH failed to disclose the existence of the SEC investigation or its receipt of the subpoena in its Prospectus Supplement No. 2 to the June 2020 Prospectus (filed with the SEC on November

---

[2] This statement was contained within the 2019 Annual Report, which the June 2020 Registration Statement incorporated by reference.

23, 2020) or in any other public filing until it belatedly filed its 2020 Annual Report on November 5, 2021.

76.     After being served with the SEC subpoena in October 2020, GWGH raised over $200 million through the LBO.

77.     Certain accounting issues that are subjects of the SEC investigation, including the consolidation for financial reporting purposes of Ben LP by GWGH, were a direct cause of GWGH's inability to timely file its 2020 Annual Report. GWGH's missed deadline for filing of its 2020 Annual Report was the reason that GWGH was forced to discontinue the LBO in April 2021. The discontinuation of the LBO, in turn, has left GWGH unable to fulfill its obligations to L Bond holders.

78.     Through the actions detailed above, Mr. Heppner defrauded GWGH and investors in the L Bonds by engineering GWGH's capital-raising platform to enrich himself and his affiliated entities, in a scheme that would inevitably collapse. The June 2020 Registration Statement was materially false and misleading including because it omitted disclosure of Mr. Heppner's scheme to defraud.

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring this action as a class action on behalf of a class consisting of all persons who purchased L Bonds directly in the LBO (the "Class"). Excluded from the Class are Defendants and their family members, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

80.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and

can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least hundreds of members in the proposed Class. Class members may be identified from records maintained by GWGH or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

81.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law described herein.

82.    Plaintiffs will fairly and adequately protect the interests of the members of the Class, and have retained counsel competent and experienced in class and securities litigation.

83.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether Defendants violated the Securities Act;

(b)    whether the June 2020 Registration Statement was negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

84.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Moreover, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation would prevent members of the Class from individually redressing the

wrongs done to them. There will be no difficulty in the management of this action as a class action, and a class action provides economies of scale and supervision by a single court.

## COUNT I
### Violation of § 11 of the Securities Act
### Against GWGH and the Individual Defendants

85.     Plaintiffs repeat and reallege each and every allegation set forth above.

86.     This Count is brought pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class against GWGH and the Individual Defendants.

87.     As set forth above, the June 2020 Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

88.     Defendant GWGH is the issuer of the L Bonds issued and sold pursuant to the June 2020 Registration Statement. As the issuer, GWGH is strictly liable to Plaintiffs and the Class under § 11 for the material misrepresentations and omissions in the June 2020 Registration Statement.

89.     The Individual Defendants each signed or were named as directors in the June 2020 Registration Statement. As such, each is strictly liable for the material misrepresentations and omissions contained in the June 2020 Registration Statement. Each Individual Defendant had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the June 2020 Registration Statement and ensure that they were true and accurate, that there were no omissions of material facts that would render the Registration Statement misleading, and that the document contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material

misrepresentations and omissions contained in the June 2020 Registration Statement and should have known of the omissions of material facts necessary to make the statements made therein not misleading or otherwise required to be stated therein. Accordingly, the Individual Defendants are liable to Plaintiffs and the Class under Section 11 for the material misrepresentations and omissions in the June 2020 Registration Statement.

90.     None of the Defendants made a reasonable investigation or had reasonable grounds for the belief that the statements contained in the June 2020 Registration Statement were true and without omissions of any material facts and were not misleading.

91.     By reason of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, § 11 of the Securities Act.

92.     Plaintiffs acquired L Bonds pursuant to the LBO.

93.     Plaintiffs and the Class have sustained damages. The value of the L Bonds has substantially declined as a result of Defendants' violations.

94.     At the time of their purchases of L Bonds, Plaintiffs and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures discussed herein. Less than one year has elapsed from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiffs commenced this action. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiffs commenced this action.

95.     By reason of the foregoing, Plaintiffs and Class members are entitled to damages under § 11, as measured by the provisions of § 11(e), as well as any and all remedies that may exist at law or in equity.

<u>COUNT II</u>
**Violation of § 12(a)(2) of the Securities Act**
**Against the Individual Defendants**

96.     Plaintiffs repeat and reallege each and every allegation set forth above.

97.     This Count is brought pursuant to § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class against the Individual Defendants.

98.     The Individual Defendants named herein were sellers and offerors and/or solicitors of purchasers of the L Bonds pursuant to the June 2020 Registration Statement.

99.     As set forth above, the June 2020 Registration Statement contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein. Defendants' actions of solicitation included preparing the inaccurate and misleading June 2020 Registration Statement and participating in efforts to market the L Bonds to investors.

100.    Defendants owed to the purchasers of the L Bonds, including Plaintiffs and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the June 2020 Registration Statement to ensure that such statements were accurate and did not contain any misstatement or omission of material fact. The Individual Defendants, in the exercise of reasonable care, knew or should have known that the June 2020 Registration Statement contained misstatements and omissions of material fact.

101.    Plaintiffs and the other members of the Class purchased or otherwise acquired L Bonds pursuant to the June 2020 Registration Statement, and neither Plaintiffs nor the other Class members knew, or in the exercise of reasonable diligence could have known, of the untruths, inaccuracies and omissions contained in the June 2020 Registration Statement.

102.    Plaintiffs, individually and on behalf of the Class, hereby offer to tender to Defendants those L Bonds that Plaintiffs and the other Class members continue to own, in return for the consideration paid for those L Bonds together with interest thereon. Class members who have sold their shares are entitled to rescissory damages.

### COUNT III
### For Violation of § 15 of the Securities Act
### Against GWGH and the Individual Defendants

103.    Plaintiffs repeat and reallege each and every allegation set forth above.

104.    This Count is brought pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class against GWGH and the Individual Defendants.

105.    All of the Individual Defendants were control persons of GWGH by virtue of their positions as directors and/or senior officers of GWGH. Each Individual Defendant had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of GWGH.

106.    GWGH and each Individual Defendant was a culpable participant in the violations of §§ 11 and 12(a)(2) of the Securities Act set out in the Counts above. Each signed or authorized the signing of the June 2020 Registration Statement and otherwise participated in the process which allowed the LBO to proceed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating the Plaintiffs as Lead Plaintiffs and as Class representatives under Rule 23 of the Federal Rules of Civil Procedure, and Plaintiffs' counsel as Lead Counsel;

28

B.      Awarding compensatory damages to Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Such equitable, injunctive or other relief as deemed appropriate by the Court.

Dated: February 18, 2022

 */s/ Spencer Cox*
**BURNS CHAREST LLP**
Warren T. Burns (TXBN 24053119)
Spencer Cox (TXBN 24097540)
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002
wburns@burnscharest.com
scox@burnscharest.com

Adam E. Polk (*pro hac vice* application forthcoming)
Jordan Elias (*pro hac vice* application forthcoming)
Sean Greene (*pro hac vice* application forthcoming)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
jelias@girardsharp.com
sgreene@girardsharp.com

Paul D. Malmfeldt (*pro hac vice* application forthcoming)
Mark D. Liston (*pro hac vice* application forthcoming)
**MALMFELDT LAW GROUP P.C.**
120 N. LaSalle Street, Suite 2000

Chicago, IL 60602
Tel: (312) 606-8625
pdm@malmfeldt.com
mdl@malmfeldt.com

Scott L. Silver (*pro hac vice* application forthcoming)
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: (954) 755-4799
ssilver@silverlaw.com

*Attorneys for Plaintiffs*

CERTIFICATION OF PLAINTIFF SHIRIN BAYATI
PURSUANT TO FEDERAL SECURITIES LAWS

SHIRIN BAYATI ("Plaintiff") declares:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiffs' counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action: *See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17 day of February, 2022.

Shirin Bayati

**SCHEDULE A**

**SECURITIES
TRANSACTION**

**Bond**

| Date Acquired | Principal Amount of Bonds Acquired |
|---|---|
| 5/1/2021 | $50,000.00 |

CERTIFICATION OF PLAINTIFF MOJAN KAMALVAND
PURSUANT TO FEDERAL SECURITIES LAWS

MOJAN KAMALVAND ("Plaintiff") declares:

1.      Plaintiff has reviewed the complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiffs' counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action: *See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 17 day of February, 2022.

Mojan Kamalvand

## SCHEDULE A

## SECURITIES
## TRANSACTION

**Bond**

| Date Acquired | Principal Amount of Bonds Acquired |
|---|---|
| 5/1/2021 | $35,000.00 |