**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SHIRIN BAYATI AND MOJAN KAMALVAND,** on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| | § | **CIVIL ACTION NO. 3:22-CV-00410-B** |
| v. | § § | |
| **GWG HOLDINGS, INC.** *et al.*, | § § | |
| Defendants. | § § | |

**APPENDIX TO THE MOTION OF THOMAS HORTON AND FRANK MOORE
FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

| DOCUMENT | PAGE |
|---|---|
| Joint Declaration of Thomas Horton and Frank Moore in support of their Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel | Appx. 2-5 |
| Joint Declaration of Daniel C. Girard and Paul D. Malmfeldt in support of Motion of Thomas Horton and Frank Moore for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel | Appx. 6-10 |
| Exhibit A – Notice of Pendency of Bayati v. GWG Holdings, Inc., Civil Action No. 3:22-cv-00410-B, published on February 23, 2022, in Business Wire. | Appx. 11-14 |
| Exhibit B – Certification of Thomas Horton pursuant to the Private Securities Litigation Reform Act of 1995. | Appx. 15-17 |
| Exhibit C – Certification of Frank Moore pursuant to the Private Securities Litigation Reform Act of 1995. | Appx. 18-20 |
| Exhibit D - Girard Sharp LLP's Firm Resume | Appx. 21-47 |
| Exhibit E - Malmfeldt Law Group P.C.'s firm resume | Appx. 48-50 |

1

Dated: April 25, 2022

**GIRARD SHARP LLP**

Daniel C. Girard (*pro hac vice* application forthcoming)
Adam E. Polk (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Sean Greene (*pro hac vice*)
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
apolk@girardsharp.com
jelias@girardsharp.com
sgreene@girardsharp.com

Paul D. Malmfeldt (*pro hac vice*)
**MALMFELDT LAW GROUP P.C.**
120 N. LaSalle Street, Suite 2000
Chicago, IL 60602
Tel: (312) 606-8625
pdm@malmfeldt.com

Warren T. Burns (TXBN 24053119)
Spencer Cox (TXBN 24097540)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
Fax: (469) 444-5002
wburns@burnscharest.com
scox@burnscharest.com

Scott L. Silver (*pro hac vice*)
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, FL 33065
Tel: (954) 755-4799
ssilver@silverlaw.com

*Attorneys for Movants Thomas Horton and Frank Moore*

## <u>CERTIFICATION OF SIGNATURE OF ANOTHER PERSON</u>

In accordance with LR 11.1(c), I hereby certify that the above signatory has consented to the filing of the foregoing document.

<div align="right">

/s/ <i>Adam E. Polk</i>

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document was served via ECF upon all counsel of record on April 25, 2022.

/s/ *Adam E. Polk*

# APPENDIX

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SHIRIN BAYATI AND MOJAN KAMALVAND,** on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | **CIVIL ACTION NO. 3:22-CV-00410-B** |
| **GWG HOLDINGS, INC.** *et al.*, | § § § | |
| Defendants. | § § | |

## JOINT DECLARATION OF THOMAS HORTON AND FRANK MOORE IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

We, Thomas Horton and Frank Moore, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      We submit this Declaration in support of our joint motion for appointment as Lead Plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and for approval our selection of Girard Sharp LLP ("Girard Sharp") and Malmfeldt Law Group P.C. ("Malmfeldt Law Group") as co-lead counsel for the proposed Class in this case. We each have personal knowledge of the information in this Joint Declaration relating to our own activities and beliefs.

2.      I, Thomas Horton, purchased a substantial amount of L Bonds of GWG Holdings, Inc. ("GWGH") and suffered substantial losses in connection with my transactions in GWGH as shown on the certification submitted to the Court.

3.      I, Frank Moore, purchased a substantial amount of L Bonds of GWGH and suffered substantial losses in connection with my transactions in GWGH as shown on the certification submitted to the Court.

1

4.      We understand that it is Lead Plaintiff's responsibility to monitor and remain fully informed regarding the status and progress of this litigation and the prospects for any resolution of this matter. We further understand that as Lead Plaintiff, we will have responsibility for making important decisions and directing counsel with respect to this litigation, after receiving the benefit of counsel's advice. To discharge these duties, we will, among other things, review pleadings and motion papers received from counsel, obtain periodic status reports on the progress of the litigation and potentially produce documents, answer interrogatories, and/or appear for depositions. We will provide input into litigation decisions and strategies as requested and be involved in the approval of any major litigation decisions, including whether to settle the case and, if so, on what terms.

5.      We are aware that a Lead Plaintiff has a fiduciary duty to the entire Class. We understand that to fulfill our fiduciary duties and obligations as Lead Plaintiff, we must fairly and adequately represent the Class by vigorously prosecuting this case on behalf of the Class members. Each of us will do our best to maximize the recovery for the Class.

6.      We will take an active role in the prosecution of the case, including by supervising Lead Counsel and ensuring that the case is handled in an efficient manner.

7.      We will continue to communicate regularly with counsel and each other as needed regarding major litigation events, such as important motions, settlement discussions, trial preparation and trial, and we will have the authority and responsibility to direct counsel with respect to each of these events after receiving the benefit of Lead Counsel's advice. We intend to communicate with our counsel as necessary to ensure the vigorous and efficient prosecution of this case and to discuss the progress of the litigation and the litigation strategies recommended by our counsel. We anticipate these communications will occur as often as necessary, depending on the current activity in the case. We understand that litigation of this nature typically has periods of

greater and lesser activity, and we will remain available to counsel and ourselves as needed to faithfully perform our role as Lead Plaintiff.

8.      In consultation with our counsel, we agreed to proceed together because we each suffered losses in our investments in GWG and would like the opportunity to participate in this action as Lead Plaintiff. In addition, we agreed to jointly prosecute the case together as Lead Plaintiff to ensure the best representation of the Class.

9.      As to any issue that needs a decision or response, we will endeavor to reach consensus on the proper course of action. However, should any disagreement arise among us during the course of the litigation, we have agreed upon a mechanism to resolve any internal disagreements.

10.      We believe Girard Sharp and Malmfeldt Law Group should be approved by the Court to serve as Lead Counsel for the proposed Class of L Bond holders. We have selected these firms to represent the Class because the firms have extensive securities litigation experience and have achieved outstanding results on behalf of investors. We believe that the proven track record of Girard Sharp and Malmfeldt Law Group demonstrates that the firms will work diligently to obtain the best possible recovery for the Class.

We declare under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of April 2022.

DocuSign by:

*Thomas Horton*

91847E9C3DC0440...
Thomas Horton

Appx. 4

Executed this 24th day of April 2022.

Frank Moore

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SHIRIN BAYATI AND MOJAN** | § | |
| **KAMALVAND,** on behalf of themselves | § | |
| and all others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **CIVIL ACTION NO. 3:22-CV-00410-B** |
| v. | § | |
| | § | |
| **GWG HOLDINGS, INC.** *et al.*, | § | |
| | § | |
| Defendants. | § | |

**JOINT DECLARATION OF DANIEL C. GIRARD AND PAUL D. MALMFELDT**
**IN SUPPORT OF MOTION OF THOMAS HORTON AND**
**FRANK MOORE FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

Daniel C. Girard and Paul D. Malmfeldt, hereby declare as follows:

1.      Daniel C. Girard is an attorney licensed to practice in the State of California who will apply to be admitted to practice *pro hac vice* in this case, and a partner of the law firm Girard Sharp LLP. Mr. Girard submits this declaration based on personal knowledge and in support of the Motion of Thomas Horton and Frank Moore for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel. If called upon to do so, Mr. Girard could and would testify competently to pertinent facts set forth below.

2.      Paul D. Malmfeldt is an attorney licensed to practice in the State of Illinois and admitted to practice *pro hac vice* in this case, and a partner of the law firm Malmfeldt Law Group P.C. Mr. Malmfeldt submits this declaration based on personal knowledge and in support of the Motion of Thomas Horton and Frank Moore for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel. If called upon to do so, Mr. Malmfeldt could and would testify competently to pertinent facts set forth below.

3.      In addition to representing Movants Thomas Horton and Frank Moore, we represent Plaintiffs Shirin Bayati and Mojan Kamalvand, who filed this action. All Defendants have now been served.

4.      Attached hereto as **Exhibit A** is a true and correct copy of the Notice of Pendency of *Bayati v. GWG Holdings, Inc.*, Civil Action No. 3:22-cv-00410-B, published on February 23, 2022 in *Business Wire*, a national business-oriented wire service, and notifying investors of the April 25, 2022 deadline to seek appointment as Lead Plaintiff.

5.      Movants Horton and Moore together suffered losses in GWG Holdings' L Bonds of $5,883,000.

6.      Attached hereto as **Exhibit B** is Mr. Horton's signed certification required by the Private Securities Litigation Reform Act of 1995 ("PSLRA") accompanied by tables on Schedule A showing his transactions and estimated losses in GWG Holdings' L Bonds during the class period.

7.      Attached hereto as **Exhibit C** is Mr. Moore's signed PSLRA certification accompanied by accompanied by tables on Schedule A showing his transactions and estimated losses in GWG Holdings' L Bonds during the class period.

8.      Daniel C. Girard is experienced in prosecuting investment fraud class actions, and Girard Sharp LLP is qualified to serve as lead counsel. Mr. Girard served as lead counsel in *Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F (N.D. Tex.) ("*Provident Royalties*"), a case brought by investors in a failed investment scheme. Girard Sharp coordinated settlement negotiations with bankruptcy trustees and competing plaintiff groups to achieve a global $150 million settlement. Concerning the representation provided by Mr. Girard and his team in *Provident Royalties*, presiding Judge W. Royal Furgeson wrote, "Class Counsel in this case

2

possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation." 2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011). As lead counsel in the *Woodbridge Investments Litigation*, No. 2:18-CV-00103-DMG (C.D. Cal.), Mr. Girard worked closely with a bankruptcy trustee to secure a $54,500,000 settlement—finally approved by the court in December 2021—from Comerica Bank for investors defrauded by a Ponzi scheme that the bank allegedly abetted. In the *Peregrine Financial Group Customer Litigation*, No. 1:12-cv-5546 (N.D. Ill.), Mr. Girard served as one of two co-lead counsel pursuing claims on behalf of investors who lost millions in the collapse of a commodities futures merchant. The litigation generated recoveries of more than $75 million; the court noted that counsel "conferred an impressive monetary benefit on the Settlement Class: the funds recovered from U.S. Bank are substantial—both in absolute terms and when assessed in light of the risks of establishing liability and damages." In the *SLM Corp. Securities Litigation*, No. 08-Civ-1029-WHP (S.D.N.Y), Mr. Girard served as lead counsel representing investors of SLM Corporation who alleged that Sallie Mae, the leading provider of student loans in the United States, misled the public about its financial performance to inflate the company's stock price. After prevailing on class certification, Girard Sharp negotiated a settlement for $35 million to resolve the investors' claims. *See also, e.g.*, *In re Oppenheimer Rochester Funds Group Sec. Litig.*, No. 09-md-02063-JLK (D. Colo.) ($50.75 million settlement for mutual fund investors); *In re Lehman Bros. Equity/Debt Sec. Litig.*, No. 08-Civ-5523 (S.D.N.Y.) ($120 million settlement).

3

9.      Girard Sharp's firm resume describes additional securities fraud and other class actions that the firm has successfully prosecuted. A true and correct copy of this firm resume is attached hereto as **Exhibit D**.

10.     The attorneys at Malmfeldt Law Group P.C. also are experienced in prosecuting and successfully resolving securities class actions, including through work alongside Girard Sharp, and the two firms will adequately protect the rights and interests of the L Bond holders in this case. In *Magowski v. The Parking REIT, Inc., et al.*, No. 24-C-19-003125 (Circuit Court for Baltimore City), Malmfeldt Law Group (then Blau & Malmfeldt) joined Girard Sharp in prosecuting shareholder claims relating to a REIT's internalization of its external manager, and ultimately achieved a settlement valued at over $9.25 million. In *Milliken v. American Realty Capital Hospitality Advisors, LLC, et al.*, No. 18-CV-1757 (S.D.N.Y.), Malmfeldt Law Group represented a stockholder in Hospitality Investors Trust, Inc. who challenged various of the company's transactions with its affiliated entities. The case resulted in a settlement of over $15 million. *See also, e.g.*, *Trumbo, et al. v. The Inland Group, et al.*, No. 13-CH-07790 (Circuit Court of Cook County, Ill.) ($11.1 million settlement); *Gamburg, et al. v. Hines Real Estate Investment Trust, Inc., et al.*, No. 24-CV-16-004496 (Circuit Court for Baltimore City) ($3.25 million settlement).

11.     A true and correct copy of Malmfeldt Law Group's firm resume is attached hereto as **Exhibit E**.

12.     In furtherance of their representation of L Bond holders in this matter, Movants' counsel engaged experienced bankruptcy counsel, Eric English of Porter Hedges LLP, to appear on behalf of the bondholders at the "first day" hearing in bankruptcy court and assert their interest in preservation of their claims and pursuit of recoveries through this action.

13.     Girard Sharp and Malmfeldt Law Group are well-capitalized firms whose professionals have considerable experience working together. If appointed lead counsel, we will commit all necessary resources to prosecuting this action on behalf of the L Bond holders. If appointed, our efforts will be guided and supervised by the Movants, who suffered significant losses. We will diligently pursue their claims and those of the class, working to maximize investor recoveries and bring this matter to a favorable result in an efficient, cost-effective manner.

<center>*     *     *</center>

We declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of April 2022.

<div style="display:flex; justify-content:space-around;">

_____
Daniel C. Girard

_____
Paul D. Malmfeldt

</div>

<center>**CERTIFICATION OF SIGNATURE OF ANOTHER PERSON**</center>

In accordance with LR 11.1(c), I hereby certify that above signatories have consented to the filing of the foregoing document.

/s/ *Adam E. Polk*
_____

<center>5</center>

Appx. 10

EXHIBIT A

# Girard Sharp LLP Files Class Action Lawsuit Against GWG Holdings, Inc. and Announces Opportunity for Investors with Substantial Losses to Lead Case

businesswire.com/news/home/20220223006114/en/Girard-Sharp-LLP-Files-Class-Action-Lawsuit-Against-GWG-Holdings-Inc.-and-Announces-Opportunity-for-Investors-with-Substantial-Losses-to-Lead-Case

February 23, 2022



SAN FRANCISCO--(BUSINESS WIRE)--Girard Sharp LLP announces that it, together with its co-counsel, Malmfeldt Law Group P.C., filed a proposed class action lawsuit on February 18, 2022, seeking to represent purchasers of GWG Holdings, Inc. (Nasdaq: GWGH) L bonds directly in GWGH's L bond offering pursuant to a June 3, 2020, registration statement. Commenced on February 18, 2022, the *GWGH* class action lawsuit—captioned *Bayati, et al. v. GWG Holdings, Inc., et al.*, No. 3:22-cv-00410 (N.D. Tex.)—alleges that GWGH and certain of its directors made misrepresentations and omissions in offering materials in violation of the Securities Act of 1933.

The plaintiffs are represented by Girard Sharp, which has extensive experience in prosecuting investor class actions for financial fraud. You can view a copy of the complaint by clicking here.

**If you suffered losses and wish to serve as lead plaintiff of the *GWGH* class action lawsuit, please provide your information by clicking here. You can also contact attorney Adam Polk of Girard Sharp by calling (415) 981-4800 or via email at apolk@girardsharp.com. Lead plaintiff motions for the *GWGH* class action lawsuit must be filed with the Court no later than April 25, 2022.**

**COMPLAINT ALLEGATIONS**: Until 2018, GWGH's business was focused on investment in life insurance policies. GWGH raised capital for the purchase of life insurance policies in the secondary market primarily through the sale of L bonds to investors through a network of securities broker-deal firms. In 2018, GWGH announced a major shift in its stated purpose: Instead of investing in life insurance policies, GWGH would invest in The Beneficient Company Group L.P., an entity founded and controlled by Defendant Brad K. Heppner, who was Chairman of GWGH's Board of Directors from April 26, 2019 to June 14, 2021.

On or about March 30, 2020, GWGH filed with the Securities and Exchange Commission a registration statement for an L bond offering, which became effective on June 3, 2020. In August 2020, GWGH began offering and selling L bonds pursuant to the June 2020

Appx. 12

registration statement. GWGH sold over $350 million of L bonds between August 2020 and April 2021 in connection with the June 2020 registration statement.

The *GWGH* class action lawsuit alleges that Defendants made material misrepresentations and omissions in the June 2020 registration statement concerning GWGH's use of the net proceeds from the L bonds offering. Plaintiffs allege that, contrary to representations in the registration statement, L bond proceeds were neither used to increase the value of GWGH's assets (alternative or otherwise), nor to provide an expanded set of products or services for investors, nor to increase working capital or liquidity, nor to satisfy any regulatory requirements.

By April 2021, GWGH was forced to discontinue the L bond offering as it was unable to timely file its 2020 annual report and soon faced liquidity problems. In November 2021, GWGH disclosed that it had received an SEC subpoena for documents and information relating to the offering and its accounting practices, among other areas of inquiry. GWGH further disclosed that the existence of the investigation could have a material adverse effect on "the value of [GWGH's] securities." In February 2022, GWGH announced that it was unable to continue making payments on L bonds and that the bonds lacked value on account of GWGH's inability to service them.

**THE LEAD PLAINTIFF SELECTION PROCESS**: The Private Securities Litigation Reform Act of 1995 permits any investor who purchased GWGH's L bonds pursuant to the June 2020 registration statement to seek appointment as lead plaintiff in the *GWGH* class action lawsuit. A lead plaintiff is generally the movant with the greatest financial interest in the relief sought by the putative class who is also typical and adequate of that class. A lead plaintiff acts on behalf of all other class members in directing the *GWGH* class action lawsuit. The lead plaintiff can select a law firm of his or her choice to litigate the *GWGH* class action. An investor's ability to share in any potential future recovery from the *GWGH* class action is not dependent upon serving as lead plaintiff.

**ABOUT GIRARD SHARP LLP**: Girard Sharp LLP is a national litigation firm representing plaintiffs in class and collective actions in federal and state courts. The firm serves individuals, institutions and business clients in cases involving securities, antitrust, consumer protection, and whistleblower laws. Our clients range from individual consumers and small businesses to Fortune 100 corporations and public pension funds. Our attorneys have recovered over a billion dollars for our clients against some of the nation's largest corporations, such as Raymond James, Peregrine Financial Group, and Oppenheimer Funds, in cases arising from securities fraud, false advertising and other unfair business practices. Girard Sharp has been distinguished as a Tier 1 law firm for plaintiffs' class action litigation in the "Best Law Firms" list in the survey published in *U.S. News & World Report's* Money Issue. *Law360* named Girard Sharp as one of its Product Liability Groups of the Year for 2021. In 2020, Girard Sharp was honored with the *Daily Journal's* "Top Boutiques in

California" award. *The National Law Journal* (*NLJ*) also has named Girard Sharp to its elite "Plaintiffs' Hot List," a selection of top U.S. plaintiffs' firms recognized for wins in high-profile cases.

Attorney advertising.

Past results do not guarantee future outcomes.

Services may be performed by attorneys in any of our offices.

# EXHIBIT B

DocuSign Envelope ID: 53ED6859-F441-4733-B4FB-34584C3F27F3

## CERTIFICATION OF THOMAS HORTON
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

THOMAS HORTON declares:

1.     I have reviewed the complaint in this action, and agree with and support its allegations.

2.     I did not purchase the securities at issue in this action at the direction of plaintiffs' counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     I am willing to serve as a representative party on behalf of the proposed class, including providing testimony at deposition and trial, if necessary.

4.     Schedule A, attached to this Certification, accurately shows my transactions during the Class Period in the securities that are the subject of this action.

5.     I have neither served nor sought to serve as a representative party in a class action filed under the federal securities laws within the three-year period prior to the date of this Certification.

6.     I will not accept any payment for serving as a representative party on behalf of the proposed class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 24th day of April 2022.

DocuSigned by:

*Thomas Horton*

91847E9C3DC0440...

Thomas Horton

# SCHEDULE A

## SECURITIES TRANSACTIONS

| L Bonds | |
|---|---|
| **Date Acquired** | **Principal Amount of Bonds Acquired** |
| 7/22/2020 | $2,500,000.00 |
| 7/22/2020 | $2,500,000.00 |
| 7/22/2020 | $600,000.00 |
| **Total** | $5,600,000.00 |

EXHIBIT C

DocuSign Envelope ID: CE236D9A-22FE-4930-8E85-16D9896F524B

CERTIFICATION OF FRANK MOORE
PURSUANT TO FEDERAL SECURITIES LAWS

FRANK MOORE declares:

1.      I have reviewed the complaint in this action, and agree with and support its allegations.

2.      I did not purchase the securities at issue in this action at the direction of plaintiffs' counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the proposed class, including providing testimony at deposition and trial, if necessary.

4.      Schedule A, attached to this Certification, accurately shows my transactions during the Class Period in the securities that are the subject of this action.

5.      I have neither served nor sought to serve as a representative party in a class action filed under the federal securities laws within the three-year period prior to the date of this Certification.

6.      I will not accept any payment for serving as a representative party on behalf of the proposed class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of April, 2022.

DocuSigned by:

469A6E3BC0DC45F...

Frank Moore

Appx. 19

## SCHEDULE A

## SECURITIES TRANSACTION

| L Bonds | |
|---|---|
| **Date Acquired** | **Principal Amount of Bonds Acquired** |
| 8/27/2020 | $225,000.00 |
| 12/28/2020 | $33,000.00 |
| 12/28/2020 | $25,000.00 |
| **Total** | $283,000.00 |

# EXHIBIT D



## Firm Resume

Girard Sharp is a national litigation firm representing plaintiffs in class and collective actions in federal and state courts. The firm serves individuals, institutions and business clients in cases involving consumer protection, securities, antitrust, privacy, and whistleblower laws.

Our clients range from individual consumers and small businesses to Fortune 100 corporations and public pension funds. We have recovered over a billion dollars on behalf of our clients in class actions and non-class cases. In addition to litigation, our firm also provides consulting and strategic counseling services to institutional clients and professionals in securities litigation and corporate governance. We are committed to achieving favorable results for all of our clients in the most expeditious and economical manner possible.

Girard Sharp is distinguished as a Tier 1 law firm for plaintiffs' mass tort and class action litigation by *U.S. News & World Report* and has been included on its list of "Best Law Firms" from 2013 to 2022. *The National Law Journal (NLJ)* named Girard Sharp to its elite "Plaintiffs' Hot List," a selection of top U.S. plaintiffs' firms recognized for wins in high-profile cases. In 2020, Girard Sharp was honored with the *Daily Journal*'s "Top Boutiques in California" award. Girard Sharp also was honored as the 2019 Elite Trial Lawyers winner in the category of Insurance Litigation, and was recognized by Law360 in 2022 as a Practice Group of the Year in Product Liability Litigation. In 2021, the *Daily Journal* awarded Girard Sharp attorneys the "Top Plaintiff Verdicts: Impact" award.

Nine of the firm's attorneys have been recognized as Northern California Super Lawyers and Rising Stars. Name partners Daniel Girard and Dena Sharp have been selected by their peers as among the *Best Lawyers in America*. Daniel Girard has been recognized as among the "Top 100 Super Lawyers" in Northern California, and Dena Sharp as one of the Top 50 Women Attorneys in Northern California. *Best Lawyers* also designated Mr. Girard as the 2013 "Lawyer of the Year" in San Francisco for class action litigation. Mr. Girard has earned an *AV–Preeminent* rating from Martindale-Hubbell, placing him in the highest class of attorneys for professional ethics and legal skills.

### ATTORNEYS

**Partners**
| | |
|---|---|
| Daniel Girard | p. 2 |
| Dena Sharp | p. 3 |
| Adam Polk | p. 4 |
| Jordan Elias | p. 5 |
| Scott Grzenczyk | p. 6 |
| Simon Grille | p. 7 |

**Associates**
| | |
|---|---|
| Makenna Cox | p. 7 |
| Mani Goehring | p. 7 |
| Trevor Tan | p. 8 |
| Peter Touschner | p. 8 |
| Tom Watts | p. 8 |
| Erika Garcia | p. 9 |
| Nina Gliozzo | p. 9 |
| Mikaela Bock | p. 9 |
| Sean Greene | p. 10 |
| Kyle Quackenbush | p. 10 |
| Jessica Cook | p. 11 |
| Jordan Isern | p. 11 |
| Kimberly Macey | p. 11 |

**Of Counsel**
| | |
|---|---|
| Michael Danko | p. 12 |
| Kristine Meredith | p. 13 |

### SIGNIFICANT RECOVERIES

| | |
|---|---|
| Sexual Abuse & Women's Advocacy | p. 13 |
| Antitrust | p. 14 |
| Securities & Financial Fraud | p. 15 |
| Deceptive Trade Practices | p. 18 |
| Defective Products | p. 19 |
| Privacy Violations | p. 21 |
| Other Consumer Matters | p. 23 |
| Mass Tort | p. 26 |
| Government Reform | p. 26 |

**ATTORNEYS**

# Partners

**Daniel Girard** founded Girard Sharp in 1995 to offer dedicated, professional representation to everyday Americans. Dan believes that individuals who work hard and play by the rules deserve the same focused, dedicated representation enjoyed by corporations, banks, and insurance companies. Under Dan's leadership, Girard Sharp has become one of the most respected and experienced class action law firms in the United States.



Dan has been appointed by federal courts to lead class actions brought under a range of federal and state laws, often involving investments and consumer financial services matters. Most recently, he served as counsel for investors in the Woodbridge Investments, Jay Peak EB-5 Investments, Peregrine Financial Group and Provident Royalties cases, all of which involved parallel bankruptcy and criminal or regulatory proceedings against investment promoters. He has led successful class actions in such areas as securities, corporate governance, telecommunications, unfair competition, federal statutory rights, predatory lending, sexual abuse, product liability, and constitutional law.

In addition to individuals, Dan's past and present clients include municipal and state employee retirement systems, public employee unions, financial institutions, property and casualty insurers, and NYSE companies.

Dan has been privileged to serve the federal court system through his work on federal rule-making committees. He was appointed by Chief Justice William H. Rehnquist to the United States Judicial Conference Advisory Committee on Civil Rules in 2004 and served on the Civil Rules Committee through 2010. Chief Justice John G. Roberts appointed Dan to the Standing Committee on Rules of Practice and Procedure in 2015 and reappointed him to a second term in 2018. Dan's article, "Limiting Evasive Discovery: A Proposal for Three Cost-Saving Amendments to the Federal Rules," 87 Denver University Law Review 473 (2010), proposed several rule amendments that were ultimately adopted in Federal Rule of Civil Procedure 34(b)(2).

Dan also serves as a member of the Council of the American Law Institute, where he chairs the Audit Committee, and serves on the Membership and Development Committees.

He is a long-standing member of the American Bar Association, Section on Business Law, Corporate and Business Litigation Committee.

**Dena Sharp** is a problem-solver who gets results for her clients in even the most complex litigation. She currently serves as co-lead counsel in the *In re Juul Labs Inc.* multidistrict litigation, *In re Xyrem Antitrust Litigation*, and *In re California Gasoline Spot Market Antitrust Litigation*. She is co-lead counsel for a certified class of end-payers in the *In re Restasis Antitrust Litigation*, and a member of the End-Payer Steering Committee in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, a massive case alleging that the world's largest makers of generic drugs conspired to raise prices and prevent price competition for years. Dena is also privileged to represent clients of a fertility center whose eggs and embryos were compromised by a freezer tank malfunction. In June 2021, Dena and her team tried the first *In re Pacific Fertility Center Litigation* case in federal court in San Francisco, and won a groundbreaking $15 million jury verdict for the loss of four families' eggs and embryos.



As co-lead counsel in *In re Lidoderm Antitrust Litigation*, a "pay-for delay" antitrust case that settled for $104.75 million on the eve of trial, Dena worked with her team to win class certification, defeat summary judgment, and obtain the largest recovery for a class of end-payers in similar federal litigation in more than a decade. She has also played a key role in a variety of other high-profile cases, including work on behalf of the direct purchasers in the *In re Capacitors Antitrust Litigation,* and representing investors in litigation arising from Lehman Brothers' bankruptcy and in matters involving Ponzi schemes and accounting fraud.

Outside the courtroom, Dena is the current co-chair of the Lawyer Representatives to the Ninth Circuit Judicial Conference for the Northern District of California, and was elected to the American Law Institute in 2018. She sits on the board of directors of the Impact Fund, a public interest nonprofit, and has served as co-chair and faculty member of the annual Judicial Training Symposium for Federal Judges, hosted by the Federal Judicial Center and the Electronic Discovery Institute. She also sits on the board of advisors for the Center for Litigation and the Courts at UC Hastings. Dena co-authored a chapter in the ABA's "Class Action Strategy and Practice Guide," and the widely-cited Sedona Principles: Best Practices and Principles for Electronic Document Production (Third Edition).

The *National Law Journal* has recognized Dena as an "Elite Woman of the Plaintiffs' Bar" for two consecutive years, honoring her as one of only a handful of lawyers nationwide who has "consistently excelled in high-stakes matters on behalf of plaintiffs" over the course of her career. Dena was named one of the "Best Lawyers in America" for both 2021 and 2022, one of the "Top 50 Women Attorneys in Northern California" by *San Francisco* magazine in 2021, and one of the *Daily Journal*'s "Top Women Lawyers" in 2021. In 2022, the *Daily Journal* recognized Dena and her colleagues for their work on *In re Pacific Fertility Center Litigation* with the award for "Top Plaintiffs Verdicts" in the "Impact" category. Dena has also been recognized as a Northern California Super Lawyer or Rising Star every year since 2009.

Dena is a graduate, *cum laude*, of the University of California, Hastings College of Law, where she was a member of the Thurston Society and received the Best Oral Advocate and Witkin awards. She graduated magna cum laude from Brown University. During law school, Dena externed for the Honorable Phyllis J. Hamilton of the Northern District of California, and the Honorable John E. Munter of the San Francisco Superior Court. A first-generation American, Dena is fluent in Spanish and German.

**Adam Polk** is a partner at Girard Sharp who takes a client-focused approach to each matter he handles. A devoted and experienced advocate, Adam concentrates his practice on complex consumer, securities, and antitrust class actions. Adam's experience covers all aspects of civil litigation, from initial case investigation and complaint preparation through settlement or trial.



Adam currently serves as co-lead counsel in *In re Subaru Battery Drain Litigation* (an ongoing consumer protection action concerning defective batteries in Subaru vehicles); and *In re Maxar Technologies Inc. Shareholder Litigation* (an action alleging violations of the Securities Act of 1933). He also serves as part of the co-lead counsel teams in *In re California Gasoline Spot Market Antitrust Litigation* (an antitrust class action alleging manipulation of the spot market for gasoline in California); *In re Pacific Fertility Center Litigation* (a product defect related to the alleged failure of an IVF tank holding human eggs and embryos); and *In re PFA Insurance Marketing Litigation* (a consumer protection class action alleging the unfair and deceptive sale of life insurance). Adam also serves as a court-appointed executive committee member in *In re Allergan Biocell Textured Breast Implant Products Liability Litigation* (a multidistrict litigation centering on allegedly defective breast implants and pending in the District of New Jersey).

Recently, Adam served as part of the trial team in the first *In re Pacific Fertility Center Litigation* trial. In a landmark result, the jury awarded approximately $15 million for the loss of four families' eggs and embryos. Adam also served on the lead counsel teams in several recent cases that resolved favorably for his clients, including *Bentley v. LG Electronics U.S.A., Inc.* and *Sosenko v. LG Electronics U.S.A., Inc.* (class actions alleging that LG's refrigerators are defective and prone to premature failure); and *In re Nexus 6P Products Liability Litigation* and *Weeks v. Google LLC* (two consumer class actions against Google relating to defective mobile phones, which resolved for a combined $17 million). Adam was also instrumental in achieving substantial settlements for his clients in *In re Sears Holdings Corporation Stockholder and Derivative Litigation* ($40 million settlement) and *Daccache v. Raymond James Financial, Inc.* ($150 million partial settlement).

Before joining the firm, Adam externed for the Honorable Sandra Brown Armstrong and the Honorable Claudia Wilken, of the U.S. District Court for the Northern District of California.

Adam is chair of the American Bar Association's Class Action and Derivative Suits committee, for which he is a frequent contributor of content regarding emerging issues in class action litigation. As of 2021 he is a member of the Fellows of the American Bar Foundation. His articles include: *Ninth Circuit: Central District of California's 90-Day Deadline to Move for Class Certification Incompatible with Rule 23*, ABA Practice Points, October 2018, *Fourth Circuit, No Presumption of Timeliness Where One Class Action Plaintiff Moves to Intervene in Another Class Action Prior to the Opt-Out Deadline*, ABA Practice Points, July 2018, *California Supreme Court: Unnamed Class Members Must Intervene or Move to Vacate to Gain Right to Appeal Class Settlements*, ABA Practice Points, May 2018, *Tilting at Windmills: Nationwide Class Settlements After In re Hyundai and Kia Fuel Economy Litigation*, ABA Section of Litigation, Class Actions & Derivative Suits, February 2018 (co-author), *"Ninth Circuit." Survey of Federal Class Action Law*, ABA 2018 (co-author), *Ninth Circuit: No Formal Motion for Reconsideration Needed to Toll 23(f) Deadline*, ABA Practice Points, September 2017, *Eighth Circuit Clarifies CAFA's Local-Controversy Exception Applies to Local Citizens,*

*Not Mere Residents*, ABA Practice Points, May 2017, *Shrink-Wrap Arbitration Clauses Must Be Conspicuously Displayed: Ninth Circuit*, ABA Practice Points, April 2017, *Predispute Arbitration Clauses Targeting Public Injunctive Relief Are Unenforceable: CA Supreme Court*, ABA Practice Points, April 2017, *Ninth Circuit: Cy Pres Awards Must be Tailored to Plaintiffs' Claims to Justify a Class Action Release*, ABA Practice Points, February 2017, *Rule 23 Does Not Include an 'Administrative Feasibility Requirement: Ninth Circuit*, ABA Practice Points, January 2017.

Adam was elected in 2021 as a Fellow of the American Bar Foundation. He has been selected by his peers as a Northern California Super Lawyer, Rising Star every year since 2013. Adam has been named to the National Trial Lawyers' "Top 40 Under 40" for three consecutive years. He was named to *Best Lawyers*' "Ones to Watch" list in 2021 and 2022.

**Jordan Elias**, a partner in the firm, represents consumers and small businesses harmed by corporate violations. He has pursued civil claims against monopolists, price-fixing cartels, oil and tobacco companies, and the nation's largest banks. Over the past decade, Jordan has also taken on pharmaceutical companies for collusion leading to inflated prescription drug prices.



Jordan argued the first substantive motion in the digital advertising monopoly litigation against Google. He previously served as head writer for the plaintiffs in the wrongful death cases arising from sudden unintended acceleration of Toyota vehicles. He was the primary author of the plaintiffs' briefs in the California Supreme Court in the landmark Cipro "pay-for-delay" antitrust case, and gained a reversal for the plaintiff in *Pavoni v. Chrysler Group, LLC*, 789 F.3d 1095 (9th Cir. 2015). Jordan also led the appeal in *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42 (D.C. Cir. 2019), where the court reversed the dismissal of a case brought on behalf of 21.5 million federal government employees whose sensitive private information was hacked. More recently, Jordan represented the League of Women Voters in an amicus brief urging the Ninth Circuit to preserve an extension of the State of Arizona's voter registration deadline in light of the Covid-19 pandemic and the remote location of many Native American voters. He also argued the successful appeal in *Velasquez-Reyes v. Samsung Electronics America, Inc.*, No. 17-56556 (9th Cir. Sept. 17, 2019), where the Ninth Circuit held that Samsung could not compel individual arbitration of fraud claims even though its smartphone packaging had an arbitration clause. Federal judges have described his advocacy as "very thorough" and "clearly in the public interest."

Jordan received a California Lawyer Attorney of the Year (CLAY) award in 2016. He has been recognized as a Northern California Super Lawyer, Appellate, since 2014. A former chief arbitrator for the San Francisco Bar Association's attorney-client fee disputes program, Jordan now serves as the program's vice-chair.

In 2017, Jordan was elected to the American Law Institute. He is also a Fellow of the American Bar Foundation. He authored the Supreme Court chapter, and co-authored the Ninth Circuit chapter, in the American Bar Association's *Survey of Federal Class Action Law*. He also co-authored the chapter on antitrust standing, causation and remedies in *California State Antitrust and Unfair Competition Law* (Matthew Bender 2019), the chapter on CAFA exceptions in *The Class Action Fairness Act: Law and Strategy* (ABA 2d ed. 2021), and the chapter on jurisdiction and preemption in *California Class Actions and*

*Coordinated Proceedings* (Matthew Bender 2015). Jordan wrote the law review articles "*More Than Tangential": When Does the Public Have a Right to Access Judicial Records?*, 29 J. Law & Pol'y 367 (2021); *Course Correction—Data Breach as Invasion of Privacy*, 69 Baylor L. Rev. 574 (2018), *Cooperative Federalism in Class Actions*, 86 Tenn. L. Rev. 1 (2019), and *The Ascertainability Landscape and the Modern Affidavit*, 84 Tenn. L. Rev. 1 (2017). His bar journal articles include "Putting *Cipro* Meat on *Actavis* Bones," 24 No. 2 Competition 1, *State Bar of California* (2015), "Does *Bristol-Myers Squibb Co. v. Superior Court* Apply to Class Actions?" *ABA Section of Litigation, Class Actions & Derivative Suits* (Feb. 25, 2020) (co-author), and "Tilting at Windmills: Nationwide Class Settlements After *In re Hyundai and Kia Fuel Economy Litigation*," *ABA Section of Litigation, Class Actions & Derivative Suits* (Feb. 28, 2018) (co-author).

Jordan was awarded the Field Prize in the humanities at Yale College, where he was an all-Ivy League sprinter. While attending Stanford Law School, he served on the law review and externed for the Honorable Charles R. Breyer of the Northern District of California. After law school, Jordan clerked for the late Judge Cynthia Holcomb Hall of the Ninth Circuit Court of Appeals. He then defended technology companies in securities and intellectual property cases at Wilson Sonsini Goodrich & Rosati, which honored him with the John Wilson Award for winning asylum for refugees from Haiti and Indonesia. Before joining Girard Sharp in 2015, Jordan practiced for seven years at Lieff Cabraser Heimann & Bernstein.



**Scott Grzenczyk** dedicates his practice to representing plaintiffs in antitrust and consumer protection matters. He has wide-ranging experience in all aspects of complex litigation and has served as a member of leadership teams that have recovered hundreds of millions of dollars for the firm's clients. Scott brings a tireless work ethic and a practical, results-oriented approach to his cases.

For several years, Scott has represented union health and welfare funds in cases alleging that large, multinational drug companies illegally inflated the price of prescription drugs. Scott has helped achieve precedent-setting recoveries, including a $104.75 million settlement shortly before trial in a case concerning the prescription drug Lidoderm. He also plays a key role in the firm's work in the *In re Restasis Antitrust Litigation* and *In re Generic Pharmaceuticals Antitrust Litigation* matters.

Scott led the firm's litigation efforts in a class action filed by native inhabitants of Guam bringing due process and equal protection claims against the government of Guam. He also has a track record of successfully representing consumers, including car and cell phone purchasers, in cases involving fraud and unfair business practices. During law school, Scott successfully argued a precedent-setting immigration case before the U.S. Court of Appeals for the Ninth Circuit. He has been honored as a Rising Star by Northern California Super Lawyers every year since 2013. In 2020, Scott was honored as a recipient of the American Antitrust Institute's "Outstanding Antitrust Litigation Achievement by a Young Lawyer" award. Scott was named to *Best Lawyers*' "Ones to Watch" list in 2022.

**Simon Grille**, a partner in the firm, is committed to seeking justice for individuals harmed by corporate wrongdoing. He represents plaintiffs in class and complex litigation concerning consumers' rights and financial fraud. He has taken a lead role in consumer class actions against some of the largest technology companies in the world. Simon has been named a Rising Star by Super Lawyers since 2017, and was named to *Best Lawyers*' "Ones to Watch" list in 2021 and 2022.



Simon approaches each case with an unwavering commitment to obtaining the best possible outcome for his clients. A creative problem-solver, Simon welcomes challenges and has substantial experience in all aspects of civil litigation—from case intake through trial or settlement.

Before joining Girard Sharp, Simon worked at a prominent Bay Area law firm, where he represented victims of toxic exposure in complex civil litigation. He also has experience working in-house at a multinational company and as an extern for the Honorable Arthur S. Weissbrodt of the United States Bankruptcy Court for the Northern District of California.

## Associates

**Makenna Cox** handles all aspects of complex class action litigation, including securities and consumer protection cases against some of the nation's largest corporations. She was the primary associate responsible for handling the *Woodbridge Investments Litigation*, involving Comerica Bank's alleged abetting of a large Ponzi scheme. The court approved a $54.2 million settlement with Comerica benefiting the defrauded investors.



Before joining Girard Sharp, Makenna advocated for musicians' rights and co-authored comments filed with the FCC. She worked during law school at an appellate firm in Los Angeles.

Makenna served as Senior Production Editor on the *Loyola of Los Angeles Entertainment Law Review*. She received her B.A. with honors from the University of San Francisco.



**Mani Goehring** strives to provide clients with prompt attention, reliable guidance, and excellent outcomes. She represents consumers in class action and other complex litigation seeking to hold companies and institutions accountable for misconduct. From intake to resolution, Mani knows that responsiveness and tenacity are key to obtaining favorable results.

Mani previously worked on criminal matters at the Antitrust Division of the U.S. Department of Justice. She also interned for the U.S. Attorney's Office, the San Francisco District Attorney's Office, and the American Civil Liberties Union of Northern California.

**Trevor Tan** focuses on consumer protection class actions and other complex civil litigation, specializing in legal research and writing. He was honored as a Rising Star by Super Lawyers beginning in 2019 and was named to *Best Lawyers*' "Ones to Watch" list in 2022.

Trevor has considerable experience working in judicial chambers. Before joining Girard Sharp, he clerked for the Honorable Fernando M. Olguin of the U.S. District Court for the Central District of California. Trevor also clerked for Judges of the Los Angeles County Superior Court and the court's Appellate Division.

Trevor received his J.D. from the University of Chicago Law School in 2011. During law school, he was an extern for the Honorable George H. Wu in the Central District of California and a law clerk with the Illinois Attorney General. In addition, he served as a child advocate with the school's immigrant child advocacy clinic and worked on behalf of immigrant children from China. After law school, Trevor represented unaccompanied minors in removal proceedings as a fellow at the Young Center for Immigrant Children's Rights.

Trevor received his undergraduate degree with honors in political science from the University of California, Irvine in 2006.

**Peter Touschner** handles complex class action e-discovery matters for the firm. Before joining Girard Sharp, Peter represented class members harmed by Volkswagen's emissions-related fraud, as well as insureds who were charged inflated premiums due to the anticompetitive practices of a hospital conglomerate.



Peter previously worked as a Research Attorney at the Center for Democracy and Technology, where he investigated deceptive online advertising practices and evaluated proposed cybersecurity legislation. During law school, Peter externed for U.S. District Judge Charles R. Breyer and served as Senior Articles Editor for the Hastings Science and Technology Law Journal.

**Tom Watts** focuses his practice on complex antitrust litigation against monopolists and other wrongdoers. Before joining the firm, Tom clerked for the Honorable Jane Roth on the Third Circuit and the Honorable Robert McDonald of the Maryland Court of Appeals, assisting in a wide variety of appellate and state supreme court matters.



Tom earned a J.D. and master's in public policy *magna cum laude* from Harvard Law School and Harvard Kennedy School. During law school, he gained experience in litigation, appeals, and policy advocacy by interning with the U.S. Department of Justice's Civil Appellate Section, Santa Clara County's Impact Litigation and Social Justice Section, and Public Advocates.

Tom received his B.A. from the University of California, Berkeley, with High Distinction in General Scholarship. He double majored in Classical Languages, in which he received High Honors, and Astrophysics, for which he was the undergraduate commencement speaker.

**Erika Garcia** handles complex e-discovery matters for the firm. She is admitted to practice in California and New York.

Before joining Girard Sharp, Erika worked at a large international law firm with a focus on class action and commercial litigation as well as regulatory investigations. She has negotiated and drafted numerous confidentiality agreements in the mergers and acquisitions setting.

Erika is fluent in Spanish and previously served as a volunteer advocate in Ecuador for refugees from other Latin American countries.



**Nina Gliozzo** works to seek justice for plaintiffs in complex litigation nationwide. Before joining Girard Sharp, Nina clerked for the Honorable Marsha S. Berzon of the U.S. Court of Appeals for the Ninth Circuit.

Nina earned her J.D., *magna cum laude*, from the University of California, Hastings College of Law. During law school she externed for the Honorable Charles R. Breyer, U.S. District Judge for the Northern District of California. She also served as Executive Symposium Editor for the *Hastings Law Journal,* organizing a symposium featuring a conversation with former Supreme Court Justice Anthony M. Kennedy.



**Mikaela Bock** advocates for injured consumers and other purchasers in complex civil litigation.

During law school, Mikaela externed in the Northern District of California and was the national champion of the Evan A. Evans Constitutional Law Moot Court Competition. She previously worked for Teach for America, teaching 7th graders in East Palo Alto, California.



**Sean Greene** advocates for injured consumers and policyholders. He brings a unique perspective to his work, as he defended insurance companies before joining Girard Sharp.

During law school, Sean earned Moot Court Honorable Mention in Oral Advocacy and was an Officer of the Hastings Health Law Organization. Before law school, he gained extensive knowledge of insurance from working on public health initiatives to provide health care to underprivileged schoolchildren in Northeast Pennsylvania.



**Kyle Quackenbush** prosecutes class actions and other complex civil litigation, with a focus on antitrust. He has participated in all stages of litigation, including drafting pleadings, coordinating document discovery, taking depositions, preparing dispositive motions, and trial. Among other work, Kyle has contributed his skills to several antitrust cases involving the pharmaceutical industry, focusing on the interplay between antitrust and intellectual property law as well as market concentration within payor and provider networks. He was named a Northern California Super Lawyers "Rising Star" in 2020 and 2021.



Kyle also volunteers with the Federal Pro Bono Project of the Bar Association of San Francisco. In one case, he represented a plaintiff who alleged employees at Salinas Valley State Prison were deliberately indifferent to the plaintiff's serious medical needs, in violation of the Eighth Amendment. In another case, he represented a homeowner plaintiff in settlement negotiations with Wells Fargo.

During law school, Kyle was a Summer Honors Legal Intern at the Federal Trade Commission's San Francisco office, and a Legal Extern at the Washington State Attorney General's Office. While at the FTC, he co-authored *The Efficiencies Defenestration, Are Regulators Throwing Valid Healthcare Efficiencies Out The Window?*, published in the winter 2017 issue of the Journal of the Antitrust and Unfair Competition Law Section of the California Lawyers Association.

In addition to his membership in the American Bar Association and the Bar Association of San Francisco, Kyle participates in the Barristers Association of San Francisco, working to provide information and resources to lawyers in their first ten years of practice.

**Jessica Cook** focuses on a variety of class actions and other complex litigation matters. Jessica is a graduate of Golden Gate University School of Law. She attended the law school evening program while working full-time at Girard Sharp.

During law school Jessica competed on multiple moot court teams and in her last year she was co-chair of the Moot Court Board. She also served as an elected representative on the Student Bar Association.



**Jordan Isern** advocates for plaintiffs in class actions and other complex litigation, with a focus on antitrust. Jordan is a graduate of Harvard Law School. There, she served as Executive Technical Editor of the Civil Rights–Civil Liberties Law Review and published several articles for the Covid-19 and the Law Series Blog.

Before joining Girard Sharp, Jordan worked for the Department of Justice, Antitrust Division, and externed for the Honorable Michael Baylson of the Eastern District of Pennsylvania. She also interned at several nonprofit legal organizations, including the Asian American Legal Defense and Education Fund and the Pennsylvania Innocence Project.



Outside of the courtroom, Jordan is an avid outdoor enthusiast. She enjoys rock climbing and has backpacked parts of the Appalachian, Continental Divide, and Pacific Crest trails.

**Kimberly Macey** advocates for clients in consumer, antitrust, and other complex civil cases.

Kimberly graduated from the University of California, Hastings in 2021. During law school, she competed on and coached multiple Moot Court teams, and during her third year, she served as Co-Chair for the UC Hastings Moot Court team.



Before law school, Kimberly worked as a legal assistant at a full-service law firm. She received her B.S. in Criminal Justice from Northern Arizona University in 2016.

**Of Counsel**

**Michael S. Danko** is a renowned trial lawyer with more than 25 years of legal experience. Mike represents individuals who have suffered catastrophic personal injuries, as well as families of wrongful death victims in cases involving product defects, defective medications and medical devices, airplane and helicopter accidents, and dangerous structures. He has tried cases in state and federal courts throughout the country and has won numerous eight-figure verdicts on behalf of his clients.



Mike represents dozens of victims of a Pacific Gas & Electric gas line explosion and serves on the Plaintiffs' Steering Committee in a California state coordinated proceeding *San Bruno Fire Cases,* JCCP No. 4648. He also serves on the Science Committee for Plaintiffs in *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2100.

In 2009, Mike won a $15 million jury verdict for a client injured by a defective aircraft part, which earned him a nomination for 2009 California Trial Lawyer of the Year by the Consumer Attorneys of California.

Mike's trial advocacy has helped bring about significant reforms and changes to corporate policies. As lead counsel in *In re Deep Vein Thrombosis Litigation,* MDL No. 1606 (N.D. Cal.), he represented more than one hundred air travelers who suffered strokes, pulmonary emboli, or heart attacks as a result of airline-induced blood clots. He developed theories of liability and proof regarding the cause of his clients' injuries that led to virtually every major air carrier advising air travelers of the risks of deep vein thrombosis and measures to mitigate those risks. Mike also represented parents of children who were injured or killed by a popular candy made by a foreign manufacturer. His work in proving that the candy's unusual ingredients and consistency made it a choking hazard resulted in the candy being removed from Costco and Albertson's stores nationwide, and helped persuade the FDA to ban the candy from further import into the United States.

Mike has been named a Northern California Super Lawyer each year since the award's inception in 2004. He is a *Lawdragon 500* finalist. In 2010, Mike was named one of the Best Lawyers in America. He is a member of the American Association for Justice, the Lawyer Pilots Bar Association and the Consumer Attorneys of California, where he serves on the board of governors. Mike received his A.B. degree from Dartmouth College, *magna cum laude*, in 1980, and earned his J.D. from the University of Virginia School of Law in 1983.

**Kristine Keala Meredith** is a trial attorney specializing in product liability litigation. Kristine served as co-lead counsel with Michael Danko representing more than one hundred air travelers who suffered strokes, pulmonary emboli, or heart attacks as a result of airline-induced blood clots in *In re Deep Vein Thrombosis Litigation*, MDL No. 1606.



Kristine served on the Law and Motion committee in *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2100, where she assisted in the successful opposition to 15 *Daubert* motions in fewer than three weeks. Before she began representing plaintiffs, Kristine worked on the national defense counsel teams for medical device manufacturers in multi-district litigation including *In re Silicone Gel Breast Implants Product Liability Litigation*, MDL No. 926, and *In re Orthopedic Bone Screw Product Liability Litigation*, MDL No. 1014. She also represented doctors and hospitals in defense of medical malpractice actions, where she worked with some of the world's leading medical experts.

In 2010, Kristine was named a Northern California Super Lawyer. She is currently an officer of the American Association for Justice and the San Mateo County Trial Lawyers Association. She is also a member of the San Francisco Trial Lawyers Association and the Consumer Attorneys of California. She is a former chair of the Minority Issues Committee of the San Francisco Bar Association Barrister Club.

Kristine obtained her B.S. with honors from the University of California at Davis and was awarded a scholarship to attend Brigham Young University's J. Reuben Clark Law School. While in law school, she was awarded the Distinguished Student Service Award and spent a semester at Howard University Law School in Washington, D.C., as a member of the faculty/student diversity exchange.

## Favorable Outcomes and Significant Recoveries

## Sexual Abuse & Women's Advocacy

*In re Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC (N.D. Cal.). Girard Sharp represented IVF patients of Pacific Fertility Center whose eggs and embryos were damaged or destroyed in a cryopreservation tank failure. On June 11, 2021, after a three-week trial, a jury found the tank manufacturer, Chart Industries Inc., liable for a defect in the tank and for its negligent failure to recall a part that malfunctioned—a "controller" meant to monitor liquid nitrogen levels. The jury awarded more than $14 million in damages to three women who lost eggs and a married couple who lost embryos in the catastrophic March 2018 tank failure. The three women were each awarded between $2 million and $3 million, and the couple was awarded $7.2 million. Girard Sharp represents over 80 families who lost reproductive material in the tank failure.

*In re USC Student Health Center Litigation*, No. 2:18-cv-06115 (C. D. Cal.). Girard Sharp served as co-lead counsel in a class action against the University of Southern California and campus gynecologist Dr. George Tyndall on behalf of women who were sexually abused by

Tyndall during his long tenure at USC. A federal judge approved a class action settlement with USC that establishes a $215 million fund and gives every survivor a choice in how to participate. The claims process received wholehearted praise from class members for the compassionate and generous approach. The settlement also requires USC to adopt and implement procedures for identification, prevention and reporting of sexual and racial misconduct, as well as to recognize the harm done to all of Tyndall's patients.

*A.B. v. The Regents of the University of California*, No. 2:20-cv-09555-RGK-E (C.D. Cal.). Girard Sharp lawyers filed and successfully resolved a class action lawsuit against UCLA on behalf of women treated by UCLA gynecologist Dr. James Heaps. Heaps was charged with sexual battery and exploitation of patients while working as a staff gynecologist at UCLA—a position he held for almost 30 years. The UC Regents agreed to resolve the claims for $73,000,000, plus substantial injunctive-relief measures, and the District Court granted final approval of the settlement.

## Antitrust

*In re Restasis Antitrust Litigation,* No. 1:18-md-02819 (E.D.N.Y.). Girard Sharp serves as co-lead counsel in this indirect purchaser class action alleging suppression of generic competition to the dry-eye prescription drug Restasis. The plaintiffs alleged that Allergan fended off more affordable generic alternatives through a multi-faceted scheme; among other conduct, Allergan sold Restasis patent rights to the St. Regis Mohawk Tribe, which licensed them back to Allergan, which then invoked tribal sovereign immunity in response to a patent challenge. After certifying both third-party payer and consumer classes against headwinds stirred up by the First Circuit's *Asacol* decision, Girard Sharp helped secure a $30 million settlement, which is pending final approval, for the end-payer class. U.S. District Judge Nina Gershon found that Girard Sharp and its co-counsel were "extremely qualified and able to represent the certified class."

*In re Lidoderm Antitrust Litigation*, No. 14-md-02521 (N.D. Cal.). Girard Sharp lawyers were appointed co-lead counsel in a class action on behalf of end-purchasers of the prescription drug Lidoderm who alleged that two drug companies, Endo Pharmaceuticals and Teikoku Pharma, unlawfully paid a third, Watson Pharmaceuticals, to delay the launch of more affordable generic Lidocaine patches. The firm secured a $104.75 million settlement on the eve of trial.

*In re Capacitors Antitrust Litigation,* No. 3:17-md-02801-JD (N.D. Cal.). Girard Sharp serves on the plaintiffs' executive committee for the certified direct purchaser class in this MDL against a large group of defendant manufacturers that allegedly conspired to raise, fix, maintain and stabilize prices of aluminum, tantalum and film capacitors—products commonly found in computers, vehicles, smart devices and other electronics. The defendants' global conspiracy was centered in East Asia. Girard Sharp was responsible for developing the case against U.S. defendant KEMET, which ultimately agreed to pay $62 million—over 12% of non-trebled damages.

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.). The firm served as liaison counsel for the direct purchaser plaintiffs and certified direct purchaser class in this multidistrict antitrust litigation against makers of LCD screens alleging a far-reaching conspiracy to raise, fix, maintain and stabilize prices. The direct purchasers achieved settlements of more than

$400 million.

*In re Aggrenox Antitrust Litigation*, No. 14-md-2516 (D. Conn.). Girard Sharp served on the Plaintiffs' Executive Committee in this "pay-for-delay" litigation accusing Teva Pharmaceuticals USA, Inc. and Boehringer Ingelheim Pharmaceuticals, Inc. of illegally agreeing to keep generic Aggrenox off the market. The case settled for $54 million.

*In re Solodyn Antitrust Litigation*, No. 14-md-2503 (D. Mass.). The firm served on the Plaintiffs' Executive Committee in this action alleging that Medicis Pharmaceuticals and several generic drug manufacturers conspired to monopolize the market for the acne drug Solodyn. The case settled for over $40 million in cash.

*In re Natural Gas Antitrust Cases I, II, III and IV*, J.C.C.P. No. 4221 (Cal. Super. Ct. San Diego Cty.). Girard Sharp served on the leadership team in coordinated antitrust litigation against numerous natural gas companies for manipulating the California natural gas market. The firm helped achieve settlements of nearly $160 million.

## Securities and Financial Fraud

*In re Woodbridge Investments*, No. 2:18-cv-00103 (C.D. Cal.). Girard Sharp served as lead counsel representing investors in securities issued by the Woodbridge Group of Companies. Woodbridge and its founder Robert Shapiro operated a massive Ponzi scheme from 2012 through 2017; Shapiro is currently serving a 25-year sentence at Lompoc federal prison. Plaintiffs alleged that Comerica Bank, which serviced all the Woodbridge accounts, knew of and substantially assisted the fraud. Acting as lead counsel, Girard Sharp worked closely with the Woodbridge bankruptcy trustee and prevailed in large part against Comerica's motion to dismiss. After substantial discovery, and with class certification fully briefed, the parties (including the trustee) negotiated a $54.2 million settlement, which U.S. District Judge Dolly M. Gee approved in 2021.

*Magowski v. The Parking REIT, Inc.*, No. 24-C-19-003125; *Barene v. The Parking REIT, Inc.*, No. 24-C-19-003527 (Circuit Court for Baltimore City). Girard Sharp and co-counsel sued The Parking REIT's CEO and Chairman, Michael Shustek, along with the REIT's directors, on behalf of investors who faced a complete loss on their investments after Shustek carried out a series of alleged self-dealing transactions in connection with internalizing the company's external manager. After deposing whistleblowers, Girard Sharp coordinated negotiations among The Parking REIT, the individual defendants, plaintiffs in a separate suit in federal court in Nevada, and a potential acquirer to arrive at a settlement that provided for cash payments to the stockholders, an injection of new capital into the company, and forfeiture of Shustek's right to receive additional shares. The court described this result as "well more than adequate" as it delivered more than half the maximum potential recovery in the case.

*Daccache v. Raymond James Financial, Inc.*, No. 1:16-cb-21575-FAM (S.D. Fla.). Girard Sharp served as a member of the leadership team representing investors in various Jay Peak EB-5 Immigrant Investor Program project offerings. The investors' funds were diverted and misappropriated instead of being applied to the intended project to develop the area surrounding the Jay Peak Ski Resort. In June 2017, the court approved a settlement of $150 million for the investors.

*In re Oppenheimer Rochester Funds Group Securities Litigation*, No. 09-md-02063-JLK (D. Colo). Girard Sharp represented investors who were misled by the Oppenheimer California Municipal Bond Fund about the investment risks associated with the fund's holdings. On November 6, 2017, the Honorable John L. Kane approved a $50.75 million settlement for the investors.

*In re Sears Holdings Corporation Stockholder and Derivative Litigation*, Consolidated C.A. No. 11081-VCL (Del. Ch.). Girard Sharp served as co-lead counsel on behalf of the company in this derivative suit charging CEO and majority owner Edward S. Lampert and other directors with depriving stockholders of the full value of 266 of Sears Holdings' most valuable properties. Girard Sharp obtained a $40 million settlement for Sears Holdings Corporation in the Court of Chancery.

*In re Digex, Inc. Shareholder Litigation*, Consol. No. 18336 (Del. Ch.). Girard Sharp represented the Kansas Public Employees Retirement System, one of two institutional lead plaintiffs in this lawsuit; minority stockholders of Digex, Inc. sued to enjoin MCI WorldCom's planned acquisition of a controlling interest in Digex via a merger with Intermedia Communications, Inc. A settlement approved by the Delaware Chancery Court secured $165 million in MCI WorldCom stock and $15 million in cash for Digex shareholders, as well as non-cash benefits valued at $450 million.

*Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F (N.D. Tex.). Girard Sharp served as lead counsel in an action against broker-dealer Securities America, Inc. and its corporate parent, Ameriprise, Inc. in connection with sales of investments in the Provident Royalties and Medical Capital investment schemes. Daniel Girard coordinated negotiations resulting in a $150 million settlement, with $80 million allocated to class plaintiffs represented by Girard Sharp and $70 million allocated to individual investors who had initiated arbitration proceedings. The settlements returned over 40% of investment losses. In approving the settlement, the court found that Girard Sharp attorneys "possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of Class Counsel throughout this litigation."

*In re Lehman Brothers Equity/Debt Securities Litigation*, No. 08-Civ-5523 (S.D.N.Y.). Girard Sharp was appointed class counsel for a certified class of retail investors in structured products sold by UBS Financial Services, Inc., following the collapse of Lehman Brothers Holdings, Inc. in the largest bankruptcy in American history. The plaintiffs alleged that UBS misrepresented Lehman's financial condition and failed to disclose that the "principal protection" feature of many of the notes depended upon Lehman's solvency. Girard Sharp negotiated a settlement that established a $120 million fund to resolve these claims.

*In re Prison Realty Securities Litigation*, No. 3:99-0452 (M.D. Tenn.). Girard Sharp served as co- lead counsel in this securities class action brought against a real estate investment trust and its officers and directors relating to a merger between Corrections Corporation of America and CCA Prison Realty Trust. The court approved a settlement for over $120 million in cash and stock.

*In re American Express Financial Advisors Securities Litigation*, No. 04-cv-01773-DAB (S.D.N.Y.). Girard Sharp served as co-lead counsel in this class action on behalf of individuals who bought financial plans and invested in mutual funds from American Express Financial Advisors. The case alleged that American Express steered its clients into underperforming "shelf

space funds" to reap kickbacks and other financial benefits. The court granted final approval of a settlement providing $100 million in cash and other relief.

*Scheiner v. i2 Technologies, Inc.*, No. 3:01-CV-418-H (N.D. Tex.). Girard Sharp represented the lead plaintiff—the Kansas Public Employees Retirement System—and served as co-lead counsel on behalf of investors in i2 Technologies. The Honorable Barefoot Sanders approved cash settlements for $88 million from the company, its officers, and its former auditor Arthur Andersen. As part of the settlement, i2 agreed to significant corporate governance reforms.

*In re Peregrine Financial Group Customer Litigation*, No. 1:12-cv-5546 (N.D. Ill.). As one of two co-lead counsel, Girard Sharp prosecuted this litigation under the Commodities Exchange Act and state law on behalf of investors who lost millions in the collapse of a commodities futures merchant. The litigation generated recoveries of more than $75 million. The court wrote that counsel "conferred an impressive monetary benefit on the Settlement Class: the funds recovered from U.S. Bank are substantial—both in absolute terms and when assessed in light of the risks of establishing liability and damages" [ECF No. 441].

*CalSTRS v. Qwest Communications*, No. 415546 (Cal. Super. Ct. S.F. Cty.). Girard Sharp represented the California State Teachers Retirement System in this opt-out securities fraud case against Qwest Communications, Inc. and certain of its officers and directors, as well as its outside auditor Arthur Andersen. The case resulted in a precedent-setting $45 million settlement for California schoolteachers.

*In re SLM Corp. Securities Litigation*, No. 08-Civ-1029-WHP (S.D.N.Y). Girard Sharp served as lead counsel representing investors of SLM Corporation who alleged Sallie Mae, the leading provider of student loans in the United States, misled the public about its financial performance in order to inflate the company's stock price. After achieving nationwide class certification, Girard Sharp negotiated a settlement that established a $35 million fund to resolve the investors' claims.

*In re Winstar Communications Securities Litigation*, No. 01 Civ. 11522 (S.D.N.Y.). Girard Sharp represented Allianz of America, Inc., Fireman's Fund and other large private institutional investors against Grant Thornton and other defendants on claims arising out of plaintiffs' investments in Winstar Communications, Inc. The firm achieved a settlement on the eve of trial that provided a recovery rate over 30 times higher than what class members received in a related class action. After deduction of attorneys' fees, the fund returned 78.5% of potentially recoverable losses.

*In re Oxford Tax Exempt Fund Securities Litigation*, No. WMN-95-3643 (D. Md.). Girard Sharp served as co-lead counsel in class and derivative litigation brought on behalf of a real estate limited partnership with assets of over $200 million. The parties reached a settlement providing for exempt issuance of securities under section 3(a)(10) of the Securities Act of 1933, public listing of units, and additional benefits valued at over $10 million.

*Calliott v. HFS, Inc.*, No. 3:97-CV-0924-L (N.D. Tex.). Girard Sharp intervened on behalf of an institutional client in this securities class action arising out of the bankruptcy of Amre, Inc., a seller of home remodeling and repair services. After being designated lead counsel under the Private Securities Litigation Reform Act, Girard Sharp negotiated and obtained court approval of

settlements totaling $7.3 million.

*In re Towers Financial Corporation Noteholders Litigation*, MDL No. 994 (S.D.N.Y.). This class action was brought against promoters and professionals linked to a failed investment scheme that the SEC described at the time as being the "largest Ponzi scheme in U.S. history." The case resulted in $6 million in partial settlements and a $250 million judgment entered against four senior Towers executives. Girard Sharp served as liaison counsel and as a Plaintiffs' Executive Committee member. The court stated that "class counsel—particularly plaintiffs' liaison counsel, Daniel Girard—has represented the plaintiffs diligently and ably in the several years that this litigation has been before me." 177 F.R.D. 167, 171 (S.D.N.Y. 1997).

## Deceptive Trade Practices

*In re Hyundai and Kia Horsepower Litigation*, No. 02CC00287 (Cal. Super. Ct. Orange Cty.). Girard Sharp served as lead counsel in this coordinated nationwide class action against Hyundai for falsely advertising the horsepower ratings of more than 1 million vehicles over a ten-year period. The case was aggressively litigated on both sides over several years. In all, over 850,000 Hyundai vehicle owners received notice of the settlement, which was valued at $125 million and which provided cash and other benefits to class members.

*In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09-2032 (N.D. Cal.). Girard Sharp and several other firms led this nationwide class action alleging deceptive marketing and loan practices by Chase Bank USA, N.A. After certifying a nationwide class, the Honorable Maxine M. Chesney granted final approval of a $100 million settlement benefiting Chase cardholders.

*In re Hyundai and Kia Fuel Economy Litigation*, No. 2:13-ml-2424 (C.D. Cal.). In a lawsuit alleging false advertising in connection with the fuel efficiency of various Hyundai and Kia models, the firm served as liaison counsel and in that capacity regularly reported to the court and coordinated a wide-ranging discovery process. The case resulted in a nationwide class action settlement with an estimated value of up to $120 million.

*In re Providian Credit Card Cases*, J.C.C.P. No. 4085 (Cal. Super. Ct. San Francisco Cty.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action brought on behalf of Providian credit-card holders. The suit alleged that Providian engaged in unlawful, unfair and fraudulent business practices in connection with marketing and assessing fees for its credit cards. The Honorable Stuart Pollack approved a $105 million settlement, plus injunctive relief—one of the largest class action recoveries in consumer credit-card litigation.

*In re MCI Non-Subscriber Telephone Rates Litigation*, MDL No. 1275 (S.D. Ill.). Girard Sharp served as co-lead counsel and recovered an $88 million settlement for MCI telephone subscribers who were charged rates and surcharges applicable to non-subscribers instead of the lower advertised rates. In approving the settlement, the Honorable David Herndon highlighted "the complexity of the issues involved; the vigorous opposition Plaintiffs' counsel faced from sophisticated and well-funded Defendants represented by skilled counsel; the achievement of a very large cash settlement fund under these conditions"; and the "design and implementation of a computerized claims process,

which appears to have been highly successful." Daniel Girard argued the key motions in the case and designed the claim procedure.

*Skold v. Intel Corp.*, No. 1-05-CV-039231 (Cal. Super. Ct., Santa Clara Cty.). Girard Sharp represented Intel consumers through a decade of hard-fought litigation, ultimately certifying a nationwide class under an innovative "price inflation" theory and negotiating a settlement that provided refunds and $4 million in cy pres donations. In approving the settlement, Judge Peter Kirwan wrote: "It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail. . . . Simply put, Class Counsel earned their fees in this case."

*Steff v. United Online, Inc.*, No. BC265953, (Los Angeles Super. Ct.). This nationwide class action was brought against NetZero, Inc. and its parent, United Online, Inc. by former NetZero customers. Plaintiffs alleged that defendants falsely advertised their internet service as unlimited and guaranteed for a specific period of time. The Honorable Victoria G. Chaney of Los Angeles Superior Court granted final approval of a settlement that provided full refunds to customers whose services were cancelled, and which also placed restrictions on Defendants' advertising.

*Stoddard v. Advanta Corp.*, No. 97C-08-206-VAB (Del. Super. Ct.). This nationwide class action was brought on behalf of cardholders who were promised a fixed APR for life in connection with balance transfers, but whose APR was then raised pursuant to a notice of change in terms. The Honorable Vincent A. Bifferato appointed the firm as co-lead counsel and approved a $7.25 million settlement.

*Khaliki v. Helzberg's Diamond Shops, Inc.*, No. 11-0010-CV-W-NKL (W.D. Mo.). Girard Sharp and co-counsel represented consumers who alleged deceptive marketing in connection with the sale of princess-cut diamonds. The court approved a favorable settlement, recognizing "that Class Counsel provided excellent representation" and obtained "a favorable result relatively early in the case, which benefits the Class while preserving judicial resources." The court further recognized that "Class Counsel faced considerable risk in pursuing this litigation on a contingent basis, and obtained a favorable result for the class given the legal and factual complexities and challenges presented."

*In re Tyson Foods Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. RDB- 08-1982 (D. Md.). Girard Sharp served as Class Counsel on behalf of consumers who purchased chicken products misleadingly labeled as having been "raised without antibiotics." After discovery, counsel negotiated a cash settlement that required Tyson Foods to pay class members and make substantial cy pres contributions to food banks.

## Defective Products

*Bentley v. LG Electronics U.S.A., Inc.*, No. 2:19-cv-13554-MCA-MAH (D.N.J.). Girard Sharp served as co-lead counsel representing consumers who paid premium prices for LG refrigerators prone to stop cooling, resulting in spoiled food and medicine, due to a malfunctioning linear compressor part. The plaintiffs reached a settlement under which every refrigerator owner could receive several thousand dollars in compensation, and those without documentation could recover

up to $450. The class members also received a five-year extended warranty covering the full cost of repairs for cooling failures. In approving the settlement, U.S. District Judge Madeline Cox Arleo noted that "the settlement is available to over a million and a half Americans who purchased allegedly defective refrigerators; there is absolutely no -- there is no cap on the award that a claimant can get. Claimants will be made whole, plus the additional warranty."

*Weeks v. Google LLC*, No. 18-cv-00801-NC (N.D. Cal.). Girard Sharp served as co-lead counsel representing owners of Google Pixel and Pixel XL smartphones. The lawsuit alleged that a defect in the Google phones caused the microphones to fail; as a result, users were unable to make calls, dictate texts, record audio, search the web with voice command, or use the advertised Google Assistant feature. On December 6, 2019, the court approved a $7.25 million settlement for the class that it deemed "excellent."

*In re Nexus 6P Products Liability Litigation*, No. 5:17-cv-02185-BLF (N.D. Cal). Girard Sharp was appointed as co-lead counsel in a class action alleging that Nexus 6P smartphones suffer from a defect that renders the phones inoperable through an endless boot-loop cycle and an accelerated battery drain that causes the phones to shut off prematurely. On November 11, 2019, the Honorable Beth L. Freeman approved a $9.75 million class settlement, stating in part that "Class counsel has extensive experience representing plaintiffs and classes in complex litigation and consumer class actions.… [T]he quality of their work is reflected in the results achieved for the class." 2019 WL 6622842, at *10, *12 (N.D. Cal. Nov. 12, 2019).

*In re iPod Cases*, JCCP No. 4355 (Cal. Super. Ct. San Mateo Cty.). Girard Sharp, as court-appointed co-lead counsel, negotiated a settlement that provided warranty extensions, battery replacements, cash payments, and store credits for class members who experienced battery failure. In approving the settlement, the Honorable Beth L. Freeman wrote that Girard Sharp attorneys are "extremely well qualified" and negotiated a "significant and substantial benefit" for the class.

*Sugarman v. Ducati North America, Inc.*, No. 5:10-cv-05246-JF (N.D. Cal.). The firm served as class counsel on behalf of owners of Ducati motorcycles whose fuel tanks degraded and deformed due to incompatibility with the motorcycles' fuel. In January 2012, the Honorable Jeremy D. Fogel approved a settlement that provided an extended warranty and repairs, commenting: "The Court recognizes that class counsel assumed substantial risks and burdens in this litigation. Representation was professional and competent; in the Court's opinion, counsel obtained an excellent result for the class." 2012 WL 113361, at *6 (N.D. Cal. Jan. 12, 2012).

*Parkinson v. Hyundai Motor America*, No. CV 8:06-0345 (C.D. Cal.). Girard Sharp served as class counsel in this class action involving allegations that the flywheel and clutch system in certain Hyundai vehicles was defective. After achieving nationwide class certification, Girard Sharp negotiated a settlement that provided from 50% to 100% in reimbursement to class members for their repairs, depending on their vehicle's mileage at the time of repair. The settlement also provided full reimbursement for rental car expenses for class members who rented a vehicle while flywheel or clutch repairs were being performed. After approving the settlement, the court wrote, "Perhaps the best barometer of . . . the benefit obtained for the class . . . is the perception of class members themselves. Counsel submitted dozens of letters from class members sharing their joy, appreciation, and relief that someone finally did something to help them." 796 F. Supp. 2d 1160, 1175 (C.D. Cal. 2010).

*In re Medtronic, Inc. Implantable Defibrillators Products Liability Litigation*, MDL No. 1726 (D. Minn.). Girard Sharp served on the discovery and law committees and performed briefing, discovery, and investigative work in this lawsuit that followed a February 2005 recall of certain models of Medtronic implantable cardioverter defibrillator devices. The controversy was resolved for $75 million.

*Browne v. American Honda Motor Co., Inc.*, No. CV 09-06750 (C.D. Cal.). Girard Sharp served as co-lead counsel representing plaintiffs who alleged that about 750,000 Honda Accord and Acura TSX vehicles had brake pads that wore out prematurely. Girard Sharp negotiated, and the court approved, a settlement valued at $25 million that provided reimbursements to class members and made improved brake pads available.

*In re General Motors Dex-Cool Cases*, No. HG03093843 (Cal. Super Ct. Alameda Cty.). These class actions alleged that General Motors' Dex-Cool engine coolant damaged certain vehicles' engines and formed a rusty sludge that caused vehicles to overheat. After consumer classes were certified in both Missouri and California, General Motors agreed to pay cash to class members nationwide. On October 27, 2008, the California court granted final approval of the settlement.

*Roy v. Hyundai Motor America*, No. SACV 05-483-AHS (C.D. Cal.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action alleging a defect in the air-bag system in Hyundai Elantra vehicles. Girard Sharp helped negotiate a settlement under which Hyundai agreed to repair the air-bag systems in the vehicles it sold and leased to class members. Hyundai also agreed to reimburse class members for transportation expenses and administer an alternative dispute resolution program for trade-ins and buy-backs. In approving the settlement, the Honorable Alicemarie H. Stotler described the settlement as "pragmatic" and a "win-win" for all concerned.

## Privacy Violations

*In re Lenovo Adware Litigation*, MDL No. 2624 (N.D. Cal.). Girard Sharp is co-lead counsel for a class of computer purchasers whose online activities were surreptitiously monitored by pre-installed software. The undisclosed spyware degraded the computers' performance, operating continuously in the background as it analyzed browsing activity and injected ads into visited webpages. The Honorable Ronald M. Whyte certified a nationwide indirect purchaser class for trial. 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016). After the defendants agreed to a non-reversionary cash settlement, Girard Sharp helped design a claims process that allowed each participating class member to choose between (1) completing a short online claim form to receive an estimated $40 cash payment for every purchased computer, or (2) submitting receipts or other documentation to recover sums actually expended as a result of the spyware being on the computer, up to $750. The Honorable Haywood S. Gilliam granted final approval of the settlement, *see* 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019), and Girard Sharp continues to supervise distribution of the fund.

*Corona v. Sony Pictures Entertainment*, No. 2:14-cv-09600-RGK-SH (C.D. Cal.). Girard Sharp served as co-lead counsel in a class action brought on behalf of 15,000 current and former employees of Sony Pictures Entertainment following a cyberattack attributed to North Korean

intelligence as retaliation for release of the film *The Interview*. In April 2016, the court approved a class settlement that reimbursed actual losses in full and provided extended credit monitoring—a structure adopted in many subsequent data breach settlements.

*In re Yahoo Mail Litigation*, No. 5:13-cv-04980-LHK (N.D. Cal.). Girard Sharp represented non-Yahoo email subscribers whose emails with Yahoo email subscribers were illegally intercepted and scanned by Yahoo. The court, in a widely-cited opinion, certified a nationwide class for injunctive-relief purposes. 308 F.R.D. 577 (N.D. Cal. 2015). With cross-motions for summary judgment fully briefed, the parties settled. Yahoo agreed to restructure its email delivery architecture to ensure that incoming and outgoing email would no longer be intercepted while in transit—bringing its email scanning practices into compliance with applicable law—and to disclose its email scanning practices on its website. The court noted that "Class Counsel achieved these benefits only after several years of litigation," which was conducted "in an effective and cost-efficient manner." 2016 WL 4474612, at *10 (N.D. Cal. Aug. 25, 2016).

*In re The Home Depot, Inc. Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.). The Honorable Thomas W. Thrash, Jr. appointed Girard Sharp to the Plaintiffs' Executive Committee in this MDL arising from a breach of Home Depot customers' credit and debit card information. Under the court-approved settlement, class members with documented claims could receive up to $10,000, and the defendant paid an additional $6.5 million to provide 18 months of identity monitoring services for the benefit of class members. 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016). Judge Thrash described the settlement as "an outstanding result for the Class in a case with a high level of risk," *id.* at *5, and further noted that "Class Counsel obtained an exceptional result . . . ." 2017 WL 9605208, at *1 (N.D. Ga. Aug. 1, 2017).

*In re Target Corp. Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.). Girard Sharp served on the Plaintiffs' Steering Committee representing consumers whose personal and financial information was compromised in a breach of Target's point-of-sale systems. After plaintiffs defeated Target's motion to dismiss, *see* 66 F. Supp. 3d 1154 (D. Minn. 2014), the parties agreed to a class settlement that was approved by the MDL court and upheld on appeal, *see* 892 F.3d 968 (8th Cir. 2018). The settlement requires changes to Target's information security practices and delivered cash recoveries to class members under a simplified claim procedure.

*In re Experian Data Breach Litigation*, No. 15-01592 (C.D. Cal.). Girard Sharp served on the Plaintiffs' Steering Committee in this litigation arising out of a breach of Experian's electronic systems than compromised names, addresses, and social security numbers of T-Mobile subscribers. The Honorable Andrew J. Guilford in 2019 granted final approval of a settlement that established a $22 million fund and provided identity theft protection services for the benefit of class members, commenting in part: "You folks have truly done a great job, both sides. I commend you."

*In re Adobe Systems, Inc. Privacy Litigation*, No. 5:13-cv-05226-LHK (N.D. Cal.). Girard Sharp was appointed as lead counsel in this consolidated litigation on behalf of consumers asserting privacy and consumer fraud claims arising from a 2013 data breach. Girard Sharp obtained a pivotal ruling when the court denied Adobe's motion to dismiss for lack of standing, ruling that the Supreme Court's decision in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), did not change existing standing jurisprudence. 66 F. Supp. 3d 1197 (N.D. Cal. 2014). Before this ruling, many data breach defendants had obtained dismissals for lack of standing based on *Clapper*. The *Adobe* ruling has been followed by a number of courts, including the Seventh Circuit Court of

Appeals in *Remijas v. Neiman Marcus Group, LLC*. 794 F.3d 688, 693–94 (7th Cir. 2015).

*Prather v. Wells Fargo Bank, N.A.*, No. 17-cv-00481 (N.D. Ill.). Girard Sharp served as co-lead counsel in an action alleging that Wells Fargo used an automatic telephone dialing system to repeatedly call the cellular phone numbers of persons with no prior affiliation with Wells Fargo. On December 10, 2019, the Honorable Manish S. Shah of the Northern District of Illinois granted final approval of a settlement that established a fund of $17,850,000 for class members.

*Whitaker v. Health Net of California, Inc.*, No. 2:11-cv-00910-KJM-DAD (E.D. Cal.); *Shurtleff v. Health Net of California, Inc.*, No. 34-2012-00121600-CU-CL (Cal. Super Ct. Sacramento Cty.). Girard Sharp served as co-lead counsel in this patient privacy action. On June 24, 2014, the court granted final approval of a settlement that provided class members with credit monitoring, established a $2 million fund to reimburse consumers for related identity theft incidents, and required material upgrades to and monitoring of Health Net's information security protocols.

*In re Sony BMG CD Technologies Litigation*, No.1:05-cv-09575-NRB (S.D.N.Y.). Girard Sharp served as co-lead counsel for a class of consumers who alleged that Sony BMG incorporated "Digital Rights Management" software into its music CDs, violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and rendering the consumers' computers vulnerable to viruses and spyware. The firm negotiated a settlement that required Sony BMG to promptly recall all affected CDs and provide "clean" CDs and cash to class members.

*In re Countrywide Financial Corp. Customer Data Security Breach Litigation*, MDL No. 1988 (W.D. Ky.). Girard Sharp served on the Plaintiffs' Executive Committee representing a class of millions of actual and potential customers of Countrywide whose personal information was stolen by a former Countrywide employee and then sold to other mortgage lenders. The class settlement approved by the court provided for free credit monitoring, reimbursement of out-of-pocket expenses incurred as a result of the theft, and reimbursement of up to $50,000 per class member for identity theft losses.

*Smith v. Regents of the University of California, San Francisco*, No. RG-08-410004 (Cal. Super Ct. Alameda Cty.). Girard Sharp represented a patient who alleged that UCSF's disclosure of its patients' medical data to outside vendors violated California's medical privacy law. The firm succeeded in negotiating improvements to UCSF's privacy procedures on behalf of a certified class of patients of UCSF Medical Center. In approving the stipulated permanent injunction, the Honorable Stephen Brick found that "Smith has achieved a substantial benefit to the entire class and the public at large."

## Other Consumer Protection Matters

*Spegele v. USAA Life Insurance Co.*, No. 5:17-cv-967-OLG (W.D. Tex.). After obtaining nationwide class certification under Texas law, Girard Sharp and co-counsel reached a $90 million settlement of claims that USAA Life Insurance systematically overcharged policyholders under their policies' "cost of insurance" terms. The settlement was approved as fair, reasonable, and adequate in 2021 and benefited owners of 122,000 universal life insurance policies in effect since March 1, 1999.

*Larson v. John Hancock Life Insurance Company (U.S.A.)*, No. RG16813803 (Cal. Super. Ct. Alameda Cty.). Girard Sharp served as liaison counsel in this certified class action on behalf of universal life insurance policyholders alleging John Hancock overcharged more than 100,000 of its insureds, depriving them of the full value of the premiums they paid over time. On May 8, 2018, the Honorable Brad Seligman granted final approval of a $59 million settlement.

*In re America Online Spin-Off Accounts Litigation*, MDL No. 1581 (C.D. Cal.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action on behalf of America Online subscribers who were billed for a second account without their knowledge or consent. The litigation settled for $25 million and changes in AOL's billing and account practices.

*Mitchell v. American Fair Credit Association*, No. 785811-2 (Cal. Super. Ct. Alameda Cty.); *Mitchell v. Bankfirst, N.A.*, No. C-97-1421-MMC (N.D. Cal.). This class action was brought on behalf of California members of the American Fair Credit Association (AFCA). Plaintiffs alleged that AFCA operated an illegal credit repair scheme. The Honorable James Richman certified the class and appointed the firm as class counsel. In February 2003, the Honorable Ronald Sabraw of Alameda County Superior Court and the Honorable Maxine Chesney of the Northern District of California granted final approval of settlements valued at over $40 million.

*In re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914, CV No. 07-2720-DRD (D.N.J.). Girard Sharp served as co-lead class counsel on behalf of consumers whose vehicles' navigation systems were on the verge of becoming obsolete. Counsel obtained nationwide class certification before negotiating a settlement valued at up to $50 million. In approving the settlement, the court acknowledged that the case "involved years of difficult and hard-fought litigation by able counsel on both sides" and that "the attorneys who handled the case were particularly skilled by virtue of their ability and experience." 2011 WL 4020862, at *4, *8 (D.N.J. Sept. 9, 2011).

*In re LookSmart Litigation*, No. 02-407778 (Cal. Super. Ct. San Francisco Cty.). This nationwide class action was brought against LookSmart, Ltd. on behalf of consumers who paid an advertised "one time payment" to have their websites listed in LookSmart's directory, only to be charged additional fees to continue service. The court granted final approval of a class settlement valued at approximately $20 million that provided cash and other benefits.

*In re America Online, Inc. Version 5.0 Software Litigation*, MDL No. 1341 (S.D. Fla.). Girard Sharp served as co-lead counsel in this MDL involving 45 centralized actions. The case alleged violations of state consumer protection statutes, the Computer Fraud and Abuse Act, and federal antitrust laws arising from AOL's distribution of its Version 5.0 software upgrade. The Honorable Alan S. Gold granted final approval of a $15.5 million settlement.

*In re PayPal Litigation*, No. C-02-1227-JF (PVT) (N.D. Cal.). Girard Sharp served as co-lead counsel in this nationwide class action alleging violations of California consumer protection statutes and the Electronic Funds Transfer Act (EFTA). Plaintiffs alleged that PayPal unlawfully restricted access to consumers' PayPal accounts. On September 24, 2004, Judge Fogel granted final approval of a settlement valued at $14.35 million in cash and returned funds, plus injunctive relief to ensure compliance with the EFTA.

*Powers Law Offices, P.C. v. Cable & Wireless USA, Inc.*, No. 99-CV-12007-EFH (D. Mass). Girard Sharp prosecuted this class action on behalf of cable and wireless subscribers who were overcharged for recurring fees. The court granted final approval of an $8 million settlement, and the bankruptcy court approved a 30% distribution from the unsecured creditors' fund of bankruptcy liquidation proceeds.

*Lehman v. Blue Shield of California*, No. CGC-03-419349 (Cal. Super. Ct. San Francisco Cty.). In this class action charging Blue Shield with having illegally modified the risk-tier structure of its individual and family health care plans, Girard Sharp negotiated a $6.5 million settlement on behalf of current and former Blue Shield subscribers in California. The Honorable James L. Warren granted final approval of the settlement in March 2006.

*Telestar v. MCI, Inc.*, No. C-05-Civ-10672-JGK (S.D.N.Y). This class action was brought on behalf of MCI commercial subscribers who were charged both interstate and intrastate fees for the same frame relay on prorate line service during the same billing period. On April 17, 2008, the Honorable John G. Koeltl approved a favorable cash settlement.

*Wixon v. Wyndham Resort Development Corp.*, No. C-07-02361 JSW (BZ) (N.D. Cal.). Girard Sharp served as class and derivative counsel in this litigation against a timeshare developer and the directors of a timeshare corporation for violations of California law. Plaintiffs alleged that the defendants violated their fiduciary duties by taking actions for the financial benefit of the timeshare developer to the detriment of the owners of timeshare interests. On September 14, 2010, the district court approved a settlement of the derivative claims.

*Berrien v. New Raintree Resorts, LLC*, No. CV-10-03125 CW (N.D. Cal.); *Benedict v. Diamond Resorts Corporation*, No. CV 12-00183-DAE (D. Hawaii). Girard Sharp pursued these actions on behalf of timeshare owners, challenging the imposition of unauthorized "special assessment" fees. The court in each case approved a favorable settlement of the claims asserted on behalf of class members who were charged the fee.

*Allen Lund Co., Inc. v. AT&T Corporation*, No. C 98-1500-DDP (C.D. Cal.). This class action was brought on behalf of small businesses whose long-distance service was switched to Business Discount Plan, Inc. The Honorable Dean D. Pregerson appointed Girard Sharp as class counsel, and thereafter approved a settlement providing full cash refunds and free long-distance telephone service.

*Mackouse v. The Good Guys – California, Inc.*, No. 2002-049656 (Cal. Super Ct. Alameda Cty.). This nationwide class action against The Good Guys and its affiliates alleged violations of the Song-Beverly Consumer Warranty Act and other California consumer protection laws. Plaintiff alleged that The Good Guys failed to honor contracts that it offered for sale to customers in exchange for protection of a purchase after the manufacturer's warranty expired. On May 9, 2003, the Honorable Ronald M. Sabraw granted final approval of a settlement providing cash refunds or services at a class member's election.

*In re H&R Block Express IRA Litigation*, MDL No. 1786 (W.D. Mo.). Girard Sharp served as co-lead counsel in this MDL involving H&R Block's marketing and sale of its "Express IRA" investment products. The firms negotiated a settlement in coordination with the New York Attorney General that delivered more than $19 million in cash to class members—resulting in a full

recovery for consumers—as well as non-cash benefits entitling Express IRA holders to convert their investments to alternative IRAs with lower fees.

## Mass Tort

*In re USC Student Health Center Litigation*, No. 2:18-cv-04258-SVW-GJS (C.D. Cal.). Girard Sharp served as co-lead counsel for a class of women who alleged they were sexually assaulted or molested by a USC gynecologist. The court in February 2020 approved a settlement for $215 million that also secured comprehensive injunctive relief at the university.

*In re Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299 (W.D. La.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee and served on the *Daubert* and Legal Briefing Committees in this MDL. A $2.37 billion global settlement was achieved.

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales, Practices and Products Liability Litigation*, MDL No. 2385 (S.D. Ill.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee and served as Co-Chair of the Plaintiffs' Law and Briefing Committee in this MDL that produced settlements worth approximately $1.6 billion.

*In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385 (S.D. Ill.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee in mass tort litigation that culminated in settlements worth approximately $650 million.

## Government Reform

*Paeste v. Government of Guam*, No. 11-cv-0008 (D. Guam) (Marshall, J.). Girard Sharp and co-counsel served as class counsel in litigation against the Government of Guam on behalf of Guam taxpayers for chronic late payment of income tax refunds. After obtaining certification of a litigation class, the plaintiffs prevailed at summary judgment and obtained a permanent injunction reforming Guam's administration of tax refunds. The Ninth Circuit affirmed the injunction. 798 F.3d 1228 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2508 (2016).

*Ho v. San Francisco Unified School District*, No. C-94-2418-WHO (N.D. Cal.). This civil rights action was brought on behalf of a certified class of San Francisco public school students of Chinese descent to terminate racial and ethnic quotas imposed under a 1983 desegregation consent decree. *See Ho v. San Francisco Unified Sch. Dist.*, 965 F. Supp. 1316 (N.D. Cal. 1997), *aff'd*, 147 F.3d 854 (9th Cir. 1998); *see also* 143 Cong. Rec. S6097, 6099 (1997) (statement of Senator Hatch noting testimony of a class representative before the Senate Judiciary Committee).

EXHIBIT E

# MALMFELDT LAW GROUP P.C.
## 120 N. LaSalle Street, Suite 2000
## Chicago, IL 60602

### FIRM PROFILE

Malmfeldt Law Group P.C.'s nationwide law practice is concentrated in securities, commodity futures, and commercial litigation.

**PAUL D. MALMFELDT** has substantial experience representing investors in securities class action and shareholder derivative cases. He is admitted to practice in Illinois.

In *Magowski v. The Parking REIT, Inc. et al.* (Circuit Court for Baltimore City No. 24-C-19-003125 (consolidated)), he represented a stockholder of a non-traded REIT, challenging the amount of consideration that the REIT paid to the owners of its former external advisor in connection with an internalization transaction, which consideration was paid in the form of common stock. He prosecuted class and derivative claims for dilution, achieving a settlement with a value over $9.25 million. Mr. Malmfeldt was appointed by the Court as co-lead counsel for the settlement class.

In *Milliken v. American Realty Capital Realty Capital Hospitality Advisors, LLC, et al.*, No. 18-CV-1757 (S.D.N.Y.), he represented a stockholder in Hospitality Investors Trust, Inc. (f/k/a American Realty Capital Hospitality Trust, Inc.), challenging the REIT's property management arrangements with its affiliated property managers, payment of certain advisory fees to its affiliated advisor, and its payment of compensation in connection with the termination of those management and advisory arrangements. The case resulted in a derivative settlement of over $15 million.

In *Gamburg et al. v. Hines Real Estate Investment Trust, Inc. et al.* (Circuit Court for Baltimore City No. 24CV16004496), Mr. Malmfeldt prosecuted class and derivative claims on behalf of stockholders of Hines Real Estate Investment Trust, Inc., challenging the calculation of a profits interest in the REIT's operating partnership held by the owners of its affiliated advisor. The case resulted in a $3.25 million settlement.

In *Trumbo et al. v. The Inland Group, et al.* (Circuit Court of Cook County, IL No. 13-CH-07790), he represented stockholders of InvenTrust Properties Corp. (f/k/a Inland American Real Estate Trust, Inc.), prosecuting derivative claims relating to the REIT's payment of performance-based asset management fees to its affiliate advisor. The case resulted in a $11.1 million settlement.

In *Lang et al. v. Last Atlantis Capital Management LLC et al.* (Circuit Court of Cook County, IL No. 08-CH-46044), Mr. Malmfeldt originated a derivative action on behalf of investors in a commodity pool, prosecuting claims against the fund's introducing and clearing brokers, the fund's manager, and the manager's officers. He subsequently became lead counsel for the fund's court-appointed receiver, achieving a substantial recovery for the receivership estate and successfully defending against the clearing broker's counterclaims.

Mr. Malmfeldt also has substantial experience in complex commodity futures litigation. For example, he represented a commodity pool in the MF Global, Inc. bankruptcy proceeding (*In Re MF Global, Inc.,* U.S. Bankruptcy Court S.D.N.Y. No. 11-2790), prosecuting a claim for wrongful liquidation in violation of the Commodity Exchange Act, and obtaining court approval of the claim in the amount of $2.1 million which made his client one of the largest non-affiliate general creditors.

Mr. Malmfeldt has an A.B *magna cum laude* in Economics from Bowdoin College (1998) and a J.D. *cum laude* from the University of Illinois College of Law (2005).

**LESLIE A. BLAU** is Of Counsel to the firm. Mr. Blau is admitted to practice in New York and Illinois.  He has over 45 years of experience in commodity futures and securities law. He has defended numerous regulatory proceedings before the Commodity Futures Trading Commission and before various exchanges and state agencies. In addition, he regularly represents commodity futures industry members in civil matters.

Mr. Blau was previously Head of Enforcement for the CFTC, New York office; Vice President of Compliance for the AMEX Commodities Exchange; and Chief General Counsel of Donaldson, Lufkin & Jenrette Futures. Mr. Blau has an A.B. from Middlebury College with honors (1969) and a J.D. from Columbia Law School (1972) where he was a Harlan Fiske Stone Scholar and served as an editor of the Columbia Journal of Law and Social Problems.