**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
| IN RE GWG HOLDINGS, INC. | § | Case No. 3:22-cv-00410-B |
| SECURITIES LITIGATION | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**INDIVIDUAL DEFENDANTS DAVID F. CHAVENSON AND DAVID H.
DE WEESE'S JOINDER AND MOTION TO DISMISS**

Defendants David F. Chavenson and David H. de Weese move to dismiss all claims against them in Plaintiffs' Consolidated Amended Complaint ("CAC"). The claims against Messrs. Chavenson and de Weese should be dismissed because Plaintiffs lack standing to bring the Section 11 and 12 claims, and neither of these directors was a control person of the issuer as required for Section 15 liability[1].

## I.    RELEVANT FACTUAL BACKGROUND[2]

Mr. Chavenson and Mr. de Weese are former outside, independent directors of GWG Holdings, Inc. ("GWG" or the "Company"). (CAC ¶¶ 33, 35.) Mr. de Weese began his tenure as a GWG director on April 26, 2019, and Mr. Chavenson began on May 13, 2019. (*Id.*) These directors diligently served on the GWG Board of Directors for more than three years, with Mr. de Weese concluding his service on November 15, 2022, and Mr. Chavenson on November 16, 2022

---

[1]    The claims against Messrs. Chavenson and de Weese also should be dismissed for the reasons set forth in Defendants Brad K. Heppner, Peter T. Cangany, Jr., Thomas O. Hicks, Dennis P. Lockhart, Bruce W. Schnitzer, and the Beneficient Company Group's Motion to Dismiss. *See* Dkt. 68.

[2]    Dismissal of Messrs. Chavenson and de Weese is warranted even accepting the well pleaded allegations of the CAC as true. As a factual matter, however, Messrs. Chavenson and de Weese vehemently dispute the allegations, which discovery would show to be inaccurate.

(*Id*.).  Mr. de Weese is alleged to have briefly served on the Beneficient board of directors; Mr. Chavenson is not alleged to have ever served on the Beneficient board.  (CAC ¶ 33.)  As independent outside directors, Messrs. Chavenson and de Weese are not alleged to be – and were not – officers or insiders for either GWG or Beneficient.

According to the CAC, GWG funded a portion of its operational cash needs through the sale of L Bonds.  (CAC ¶ 2.)  In June 2020, as part of GWG's ongoing L Bond fundraising, GWG commenced a new offering of L Bonds pursuant to a registration statement and prospectus declared effective June 3, 2020 (the "2020 Registration Statement").  (*Id*. ¶ 5.)  The June 2020 offering was only one of multiple L Bonds offerings that GWG made over the years.  The various offerings were for L-Bonds with different maturities and different yields to maturity.  Further, certain of the L-Bonds represented refinancing of matured obligations while others did not. (*Id*. ¶¶ 2, 4, 5, 7 and Prospectus at pp.21-22.)  The CAC alleges that "[p]ursuant to the 2020 Registration Statement, GWG raised over $350 million in new L Bond sales, *and reissued or renewed L Bonds originally issued under previous registration statements*."  (CAC ¶ 7 (emphasis added).)  Importantly, however, the CAC fails to distinguish between (i) L Bonds that were issued or refinanced under *prior* registration statements, and (ii) L Bonds that were *newly* issued pursuant to the allegedly faulty 2020 Registration Statement.

The CAC alleges that Plaintiffs "acquired 'L Bonds' issued by GWG pursuant to a June 2020 registration statement" signed by GWG's then-directors, including Messrs. Chavenson and de Weese.  (CAC ¶ 1.)  Plaintiffs do not plead facts sufficient to trace their purported L Bond purchases to the 2020 Registration Statement, as required to state a Section 11 claim.  Plaintiffs likewise fail to plead that either Mr. Chavenson or de Weese is a statutory "seller" of the L Bonds,

as required to state a Section 12 claim, or a control person of GWG, as required to state a Section 15 claim.

Indeed, the CAC makes no allegation of wrongdoing by either director — no misstatements, no solicitation or communication with buyers, no improper receipt of funds, no involvement in any actionable decisions, no participation in the day-to-day management of GWG. The CAC only recites the positions and tenure of Messrs. Chavenson and de Weese and alleges that they signed the 2020 Registration Statement. That is insufficient to state a claim.

## II.    ARGUMENT

Plaintiffs Section 11 and 12(a)(2) claims against Messrs. Chavenson and de Weese should be dismissed because Plaintiffs have not pleaded facts demonstrating their standing to bring these claims. Plaintiffs' Section 15 claim as to Messrs. Chavenson and de Weese should also be dismissed because Plaintiffs rely merely on conclusory and unsubstantiated allegations (that also are inaccurate); conclusory allegations are insufficient as a matter of law to plead control person liability.

### A.    <u>Plaintiffs Do Not Have Standing for the Section 11 Claim.</u>

The reach of Section 11 is limited by a restrictive standing requirement. Section 11 creates "virtually absolute liability for corporate issuers for even innocent material misstatements" in a registration statement. *Krim v. pcOrder.com*, 402 F.3d 489, 495 (5th Cir. 2005) (citations omitted). The standing provisions of Section 11 balance this expansive liability by strictly limiting plaintiffs to a "narrow class of persons" consisting only of those purchasers who demonstrate the ability to trace their shares to the allegedly faulty registration statement. *Id.* at 495–96. In other words, the plaintiff "must have purchased [a security issued] under the registration statement at issue, <u>as opposed to another registration statement</u>." *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 585 (W.D.

Tex. 2002) (citation omitted, emphasis added), *aff'd Krim*, 402 F.3d at 489 (to satisfy the Section 11 standing requirement, plaintiffs must "demonstrate that their shares are traceable to the registration statement in question"); *see Abbey v. Comput. Memories, Inc.*, 634 F. Supp. 870, 872 (N.D. Cal. 1986) (citation omitted) ("In order to have a valid § 11 cause of action, [a plaintiff] must plead and prove that his stock was issued pursuant to the particular registration statement alleged to be defective.").

In this situation, where a company has issued securities under more than one registration statement (*i.e.*, multiple L Bonds through various bond offerings), the tracing requirement is "often impossible" for a plaintiff to satisfy. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013). Amplifying that near impossibility, the tracing requirement is "strict[ly] . . . appli[ed]." *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *5 (S.D. Tex. Jul. 6, 2016).[3]

Courts in the Fifth Circuit repeatedly have dismissed Section 11 claims for failure to meet the strict tracing requirement; several decisions specifically have noted the near impossibility of meeting the requirement where the company has made more than one offering. *See, e.g.*, *Johnson*, 2016 WL 3654657, at *5; *Krim*, 402 F.3d at 498, 502 (affirming dismissal of section 11 claim for lack of standing and noting that "the fungible nature of stocks" makes tracing "virtually impossible"). *Johnson v. CBD Energy* is particularly instructive as L Bonds issued by GWG, like stocks, are fungible. The court examined whether plaintiffs' conclusory allegation of purchasing "shares of [defendant] common stock pursuant to or traceable to [defendant's] [o]ffering" plausibly traced plaintiffs' shares to the challenged registration statement; in that case the company had issued

---

[3]     The U.S. Supreme Court recently confirmed the strict tracing requirement for Section 11 claims. *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 762, 770 (2023). In agreeing with "every court of appeals to consider the issue," the Supreme Court held that to bring a claim under Section 11, plaintiffs must "plead and prove" that they purchased shares that were registered for sale pursuant to, *or traceable to*, an "allegedly defective registration statement." *Id.*

4

more than one registration statement covering more than one share offering. *Id.* at \*3. The court held plaintiffs lacked standing because they failed to allege that the purchased shares were issued pursuant to a single allegedly faulty registration statement as part of a single offering. *Id.* at \*5. To clarify, because the defendant issued stock pursuant to multiple registration statements, plaintiffs' could not plausibly allege the purchased shares were traceable to a single registration statement issued as part of a single offering. The court held that even including such allegations would not have been enough because the challenged offering was not the single source of outstanding shares. *Id.*

The court in *Johnson* also held that plaintiffs could not establish standing by alleging that there was a statistically high probability that at least some of their shares were issued pursuant to the challenged offering, since the Fifth Circuit has expressly rejected that type of statistical pleading in *Krim*. *Id.* at \*6 (citing *Krim*, 402 F.3d at 498 (rejecting the theory that a plaintiff can "demonstrate standing by showing a very high probability that they have at least one" share from the challenged offering).) Because plaintiffs could not proceed under either the single offering theory or statistical theory, the court dismissed the Section 11 claim for lack of standing, with prejudice. *Id.*

Like the defective complaint in *Johnson*, the CAC in this case fails to plead sufficient allegations tracing Plaintiffs' L Bond purchases to the challenged registration statement. Plaintiffs have not pleaded and cannot plead that their L Bonds were the result of a single offering. The CAC admits that GWG made multiple L Bond offerings and that "[p]ursuant to the 2020 Registration Statement, GWG raised over \$350 million in new L Bond sales *and reissued or renewed L Bonds originally issued under previous registration statements*." (CAC ¶ 7 (emphasis added); *see also* Prospectus at p. 22.) By failing to distinguish between L-Bonds issued to

5

refinance maturing obligations and L Bonds that were newly issued under the allegedly faulty 2020 Registration Statement, Plaintiffs have failed to "exclude the possibility" that Plaintiffs' L Bonds came from a pool of previously issued L Bonds. *In re Century Alum.*, 729 F.3d at 1108. Such a failure precludes Plaintiffs' Section 11 claim. *Id.*

### B.    Plaintiffs Lack Standing for the Section 12(a)(2) Claim.

Standing exists under Section 12(a)(2) only "when a plaintiff can plead and prove that a seller actually passed title to a buyer." *In re Fleming Co. Inc. Sec. & Deriv. Litig.*, 2004 WL 5278716, at *50 (E.D. Tex. June 16, 2004); 15 U.S.C. § 77l(a)(2). The Supreme Court has interpreted "seller" to mean either (1) the person who actually passes title to the buyer, or (2) "the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). Neither Mr. Chavenson nor Mr. de Weese were sellers of the L-Bonds and Plaintiffs concede as much. Because Plaintiffs fail to plead that Messrs. Chavenson and de Weese were statutory sellers of L Bonds under either definition, Plaintiffs' Section 12(a)(2) claim fails as to those defendants.

First, the CAC does not allege that Mr. Chavenson or Mr. de Weese "passed title" of any L Bonds to any L Bonds purchaser. In fact, Plaintiffs concede that none of the L Bond purchasers obtained title to the L Bonds directly from Messrs. Chavenson or de Weese. As the CAC alleges, the L Bonds offered pursuant to the 2020 Registration Statement were "sold through participating dealers and licensed financial advisors and representatives." (CAC ¶ 55.) Mr. Chavenson and Mr. de Weese cannot be statutory sellers under the Supreme Court's "title-passing definition" since, according to Plaintiffs' own allegations, the L Bond investors did not purchase the securities from either former director.

As to the second definition of "seller," the CAC fails to allege that Messrs. Chavenson and de Weese "solicited" the purchase of securities pursuant to the 2020 Registration Statement. In the Fifth Circuit, Section 12(a)(2) liability under the second definition is very narrow; "to count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870–71 (5th Cir. 2003) (citation omitted). The CAC is bereft of any allegations that Messrs. Chavenson or de Weese communicated with or contacted any L Bond purchaser (nor could Plaintiffs responsibly make those allegations because Messrs. Chavenson and de Weese made no such communications or contact). Instead, Plaintiffs rely on unsupported and conclusory allegations that the defendants "were sellers to and direct solicitors of purchases of L Bonds offered pursuant to the Offering" and "signed or authorized the signing of the Prospectus in connection with the Offering." (CAC ¶ 175.) These allegations, which simply mirror the statute, do not state a claim under Section 12(a)(2) because they do not assert that Mr. Chavenson or Mr. de Weese "solicited the purchase" of the L Bonds by directly communicating with the buyers. Plaintiffs' Section 12 claim should be dismissed for lack of standing.

C.      **Plaintiffs Fail to State a Section 15 Claim Because They Do Not Plead That Messrs. Chavenson and de Weese Controlled GWG.**

Plaintiffs' Section 15 claim fails because the CAC does not plead that Messrs. Chavenson and de Weese are "control persons" of GWG. Pursuant to Section 15, one who controls a person that is liable under Sections 11 and 12 can be held jointly and severally liable as a "control person" to the same extent as the person they control. *See* 15 U.S.C. § 77o. To state a claim for control person liability in the Fifth Circuit, a plaintiff must plead (1) an underlying primary violation of the securities laws (such as Section 11 or Section 12) by a controlled person (such as a company); and (2) "particularized facts as to the controlling person's culpable participation" in exercising control over the controlled person, *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 235 F.Supp.2d

7

549, 598 (S.D. Tex. 2002), or the "power to control the controlled person or to influence corporate policy." *In re Dynegy, Inc. v. Secs. Litig.*, 339 F.Supp.2d 804, 877 (S.D. Tex. 2004). Plaintiffs have failed to state a Section 15 claim against either Mr. Chavenson or Mr. de Weese because they have not alleged facts demonstrating that Messrs. Chavenson or de Weese controlled or had the power to control any alleged primary violator.

The entirety of Plaintiffs' control person allegations as to Messrs. Chavenson and de Weese are set forth in a single paragraph, which states:

> The Individual Defendants were controlling persons of GWG by virtue of their positions as Directors or senior officers of GWG. The Individual Defendants each had a series of direct or indirect business or personal relationships with other Directors or officers or major shareholders of GWG. At all relevant times, the Individual Defendants participated in the operation and management of GWG, and conducted and participated, directly and indirectly, in the conduct of GWG's business affairs.

(CAC ¶ 183.) Rather than alleging any facts about Messrs. Chavenson or de Weese specifically, Plaintiffs indiscriminately aggregate the individual defendants together, summarily labeling them all control persons. In doing so, Plaintiffs fail to allege anything about Mr. Chavenson's or Mr. de Weese's activities or circumstances. For instance, Plaintiffs do not identify any "business or personal relationships" of either Mr. Chavenson or Mr. de Weese that supposedly support a claim of control (nor could Plaintiffs truthfully make such allegations). Nor do Plaintiffs distinguish between the CEO and other "insiders," on the one hand, and outside, independent directors Chavenson and de Weese on the other.

Plaintiffs' unsupported, conclusory allegations are insufficient to state a claim under Section 15 because Plaintiffs fail to adequately allege facts, which, if true, would establish that Messrs. Chavenson or de Weese controlled or had the power to control GWG. *See Enron*, 235 F.Supp.2d at 598 ("dismissal is appropriate where the plaintiff fails to plead any facts from which it can reasonably be inferred that the *particular defendant* was a control person") (emphasis

added).  Their position as outside directors of GWG is not enough to give rise to a Section 15 claim.  *See In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 258 F.Supp.2d 576, 642 (S.D. Tex. 2003) ("a director's status alone would not subject him to liability under § 15").  Nor is it enough to allege that the former directors "participated in the operation and management" and "participated . . . in the conduct of GWG's business affairs."  These are not facts; they are unsupported conclusions and do nothing more than recite director status, which is insufficient under the case law.  Plaintiffs' sparse, unsubstantiated allegations do not adequately allege control-person liability as to Messrs. Chavenson and de Weese.  Plaintiff's Section 15 claim against these defendants should be dismissed.

### III.   CONCLUSION

Plaintiffs lack standing to pursue their Section 11 and 12 claims and have not alleged facts sufficient to plead that Messrs. Chavenson or de Weese were control persons under Section 15. Accordingly, all three of Plaintiffs' claims against Mr. Chavenson and Mr. de Weese should be dismissed.

Dated:  January 4, 2024                    Respectfully submitted,


                                           **O'MELVENY & MYERS, LLP**

                                           By: */s/ Timothy S. Durst*
                                           Timothy S. Durst (TX Bar No. 00786924)
                                           Kristin Alvarado (TX Bar No. 24116024)
                                           2801 North Harwood Street, STE 1600
                                           Dallas, TX 75201
                                           Telephone: 972-360-1923
                                           Email: tdurst@omm.com
                                           Email: kalvarado@omm.com

                                           Amy S. Park (*admitted pro hac vice*)
                                           2765 Sand Hill Road
                                           Menlo Park, CA 94025
                                           Telephone: 650-473-2600
                                           Email: apark@omm.com

                                           **Attorneys for Individual Defendants
                                           David F. Chavenson and David H. de
                                           Weese**