**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE GWG HOLDINGS, INC. SECURITIES LITIGATION** | § § § § § § | Civil Action No. 3:22-cv-00410-B |
| | | <u>CLASS ACTION</u> |
| **This Document Relates To:  All Actions** | § § § § § § | |

## <u>DEFENDANT WHITLEY PENN LLP'S MOTION TO DISMISS AND SUPPORTING BRIEF</u>

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 2

        A.    Whitley Penn and Its 2019 Audit Opinion. ................................................. 2

        B.    Plaintiffs' Allegations against Whitley Penn. ............................................ 3

PLEADING STANDARD .................................................................................................... 4

ARGUMENT ....................................................................................................................... 4

    I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED. ..................................................... 4

    II.    PLAINTIFFS FAIL TO ALLEGE A MATERIAL MISREPRESENTATION. ................................................................................... 10

        A.    The Challenged Statements Are Non-Actionable Statements of Opinion. .................................................................................................... 10

            1.    Whitley Penn's Statements Are Pure Opinion. ............................ 10

            2.    The Complaint Fails to Allege Subjective Falsity. ...................... 13

            3.    The 2019 Audit Opinion Did Not Contain Any Embedded Facts. ....................................................................................... 17

        B.    The Complaint Fails to Allege the Materiality of Any Misstatement. ........................................................................................... 18

    III.    PLAINTIFFS FAIL TO ALLEGE STANDING. ................................................. 21

    IV.    NEGATIVE CAUSATION WARRANTS DISMISSAL. ...................................... 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Alamosa Holdings, Inc.*,
  382 F.Supp.2d 832 (N.D. Tex. 2005) ....................................................................5, 24

*Alaska Elec. Pension Fund v. Asar*,
  768 F. App'x 175 (5th Cir. 2019) ...............................................................................3

*In re Alcatel Alsthom Sec. Lit.*,
  2000 WL 34217789 (E.D. Tex. 2000) ......................................................................20

*In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*,
  2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013)............................................................17

*Amorosa v. AOL Time Warner Inc.*,
  409 F. App'x 412 (2d Cir. 2011) .................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................4

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................4

*In re Britannia Bulk Hldgs. Inc. Sec. Litig.*,
  665 F. Supp. 2d 404 (S.D.N.Y. 2009).......................................................................24

*Buttonwood Tree Value Partners, LP v. Sweeney*,
  2012 WL 2086607 (C.D. Cal. June 7, 2012) .....................................................12, 15

*In re CarLotz, Inc. Secs. Litig.*,
  2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ..........................................................24

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) .............................................................................22, 23

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .....................................................................................17

*Cox v. Richards*,
  761 F. App'x 244 (5th Cir. 2019) ...............................................................................2

*Dura Pharms. Inc. v. Broudo*,
  544 U.S. 336 (2005)...................................................................................................24

*Escott v. BarChris Constr. Corp.*,
  283 F. Supp. 643 (S.D.N.Y. 1968)............................................................................21

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011)................................................................................17

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
  53 F.Supp.3d 882 (E.D. La. 2014)....................................................................5, 6

*Fogel v. Vega*,
  759 Fed.Appx. 18 (2d Cir. 2018) .........................................................................13

*Formby v. Deloitte & Touche LLP*,
  2023 WL 4132122 (N.D. Ga. Feb. 13, 2023) .......................................................8

*Francisco v. Abengoa, S.A.*,
  481 F. Supp. 3d 179 (S.D.N.Y. 2020)...................................................................5

*In re Franklin Bank Corp. Sec. Litig.*,
  782 F. Supp. 2d 364 (S.D. Tex. 2011) ...................................................5, 6, 14, 19

*In re HealthSouth Corp. Secs. Litig.*,
  261 F.R.D. 616 (N.D. Al. Sept. 30, 2009) ..........................................................24

*Hemmer Group v. SouthWest Water Co.*,
  527 Fed. Appx. 623 (9th Cir. 2013).................................................................19, 20

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
  2017 WL 1536223 (D.N.J. Apr. 27, 2017) .........................................................12

*Hunt v. Bloom Energy Corp.*,
  2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) .......................................11, 12, 15, 18

*Johnson v. CBD Energy Ltd.*,
  2016 WL 3654657 (S.D. Tex. July 6, 2016)...........................11, 12, 15, 17, 18, 22

*Jones v. Alcoa, Inc.*,
  339 F.3d 359 (5th Cir. 2003) ..............................................................................10

*Kapps v. Torch Offshore, Inc.*,
  379 F.3d 207 (5th Cir. 2004) ..............................................................................19

*Krim v. BancTexas Grp.*,
  989 F.2d 1435 (5th Cir. 1993) ............................................................................19

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005) ..............................................................................22

*In re Lehman Bros. Sec & ERISA Litig.*,
  799 F.Supp.2d 258 (S.D.N.Y. 2011)....................................................................13

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Levi Strauss & Co. Secs. Litig.*,
    527 F.Supp.2d 965 (N.D. Cal. 2007) ....................................................................24

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ...............................................................................3

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014)......................................................................6

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    616 F. App'x 442 (2d Cir. 2015) ............................................................................5

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)............................................................................................6

*Miller v. Nationwide Life Ins. Co.*,
    2003 WL 22466236 (E.D. La. Oct. 29, 2003) ........................................................5

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)..........................................................................10, 11, 12, 13, 18

*Parnes v. Gateway 2000, Inc.*,
    122 F.3d 539 (8th Cir. 1997) ..........................................................................20, 21

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
    245 F. Supp. 3d 870 (S.D. Tex. 2017) ..................................................................12

*Plaisance v. Schiller*,
    2019 WL 1205628 (S.D. Tex. Mar. 14, 2019)...................................................13, 16

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin.*
    *Hldgs.*,
    886 F.Supp.2d 328 (S.D.N.Y. 2012)......................................................................23

*Querub v. Hong Kong*,
    649 F. Appx. 55 (2d Cir. 2016)............................................................................11

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) ...............................................................................19

*S.E.C. v. World-Wide Coin Investments, Ltd.*,
    567 F. Supp. 724 (N.D. Ga. 1983)........................................................................13

*Sirois v. Zions Bancorporation, N.A.*,
    2021 WL 1306767 (S.D. Tex. Apr. 7, 2021) ..........................................................10

*Slack Technologies, LLC v. Pirani*,
    598 U.S. 759 (2023)............................................................................................22

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
   774 F. Supp. 2d 584 (S.D.N.Y. 2011)................................................................................24

*Taubenfeld v. Hotels.com*,
   385 F.Supp.2d 587 (N.D. Tex. 2004) ...............................................................................20

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008)..............................................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................................2

*Thor Power Tool Co. v. C.I.R.*,
   439 U.S. 522 (1979)...........................................................................................................15

*In re Under Armour Sec. Litig.*,
   342 F. Supp. 3d 658 (D. Md. 2018) .................................................................................5, 6

*In re Venator Materials PLC Sec. Litig.*,
   547 F. Supp. 3d 624 (S.D. Tex. 2021) ................................................................................6

**Statutes**

15 U.S.C. § 77k(a) ....................................................................................................................22

15 U.S.C. § 77k(e) ....................................................................................................................24

15 U.S.C. § 77m.......................................................................................................................4, 7

Under Rules 12(b)(6) and 8(a) of the Federal Rules of Civil Procedure, Defendant Whitley Penn LLP ("Whitley Penn") moves to dismiss the case against it, with prejudice, for failure to state a claim under Section 11 of the Securities Act of 1933 (the "Securities Act").

**PRELIMINARY STATEMENT**

The Section 11 claim against Whitley Penn, GWG's auditor for 2019, should be dismissed for several reasons. First, the one-year statute of limitations expired long before this claim was brought against Whitley Penn in May 2023 (and before the belated tolling agreement in October 2022). GWG publicly announced that it was restating its 2019 financials on August 3, 2021, including the exact reasons for the restatement. Consequently, the statute of limitations expired no later than August 3, 2022. In February 2022—six months before time expired and eight months before asking for a tolling agreement—these same Plaintiffs timely filed their original complaint, which ***did not*** name Whitley Penn as a defendant. Plaintiffs were on notice and had time to bring a claim, but they correctly concluded that they had no claim against Whitley Penn. Years after the Registration Statement, 15 months after their first Section 11 claim here, and just days before the three year statute of repose expired, Plaintiffs filed a claim against Whitley Penn in a desperate attempt to "cover all their bases," and it should be dismissed as untimely.

Second, the Complaint does not sufficiently allege that Whitley Penn made an actionable misstatement. Well-established case law holds that an auditor's opinion statement is only actionable under Section 11 if it was "subjectively false," meaning the auditor knew that the opinion was false when made. Plaintiffs have not even attempted to meet this standard. The restatement of the 2019 financials arose solely from a complex accounting judgment related to the consolidation of a variable interest entity ("VIE"), following new information from GWG's consultation with the SEC on this topic from February – July 2021. That hindsight difference of

1

opinion does not establish that Whitley Penn knew its audit opinion was wrong when originally provided, nor does it sufficiently allege that the 2019 audit opinion was materially misstated.

Third, Plaintiffs lack standing because they cannot trace their decision to purchase L Bonds to the Registration Statement.  There were nearly $950 million of L Bonds outstanding prior to the operative Registration Statement, which automatically renew and are assigned the same CUSIP number and terms as bonds following the Registration Statement.  The Registration Statement says that these earlier, non-actionable L Bonds are indistinguishable from later bonds, and the vast majority are held under the same street name, making it essentially impossible for Plaintiffs and all other L Bond holders to trace their purchases to the Registration Statement.

Finally, the absence of causation on the face of the Complaint warrants dismissal.  The Complaint alleges that the L Bonds lost their value because of GWG's bankruptcy, which was caused by its inability to fund its operations with the continued sale of L Bonds, which terminated in April 2021.  The L Bonds' loss in value is not causally linked to the alleged misstatements by Whitley Penn; thus, no recovery is available under Section 11.

## BACKGROUND

### A.      Whitley Penn and Its 2019 Audit Opinion.

Whitley Penn is an accounting firm headquartered in Fort Worth, Texas, that served as GWG's independent auditor for the calendar year ending December 31, 2019.  CC ¶¶ 19, 38. Whitley Penn issued an audit opinion, dated March 27, 2020, regarding GWG's 2019 year-end financial statements.  *Id.* ¶ 19; Ex. B at F-1 – F-2 (App. 79-80).[1]  That audit opinion was included

---

[1] All citations to Ex. __ refer to the exhibits to the Declaration of James Farrell, filed concurrently herewith in Whitley Penn's Appendix.  Appendix page numbers are also provided.  The Court may properly consider the documents included in the Appendix, each of which is expressly referenced or quoted in the Complaint, and/or is publicly available and subject to judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Cox v. Richards*, 761 F. App'x 244, 248 (5th
*(Cont'd on next page)*

in GWG's 2019 Form 10-K and incorporated by reference into the Registration Statement, effective June 3, 2020, for the relevant L Bond Offering. *See* CC ¶¶ 19, 94, 96.

**B.    Plaintiffs' Allegations against Whitley Penn.**

Plaintiffs' only claim against Whitley Penn is brought pursuant to Section 11 of the Securities Act. *See id.* ¶ 162. Plaintiffs allege that Whitley Penn's 2019 audit opinion dated March 27, 2020, was false in that the audit opinion misrepresented that: (1) GWG's 2019 financial statements were, in all material respects, presented fairly and in conformity with U.S. GAAP; and (2) GWG maintained, in all material respects, effective internal control over financial reporting. *See id.* ¶¶ 95, 165-66. Plaintiffs claim that these opinions were false because, more than one year later, GWG consulted with the SEC's Office of the Chief Accountant ("OCA") for advice on a complex accounting question related to the consolidation of a VIE, as GWG disclosed on July 7, 2021. *See* Ex. D at 1 (App. 180). On August 3, 2021, GWG disclosed the results of that consultation—the OCA believed that the VIE should be consolidated, and this new information resulted in a restatement of GWG's 2019 financial statements. CC ¶ 125; Ex. C at 1 (App. 174).

During the next year, as the one-year statute of limitations expired, GWG also disclosed: (1) a plan to spinoff Ben and its assets, on August 25, 2021, CC ¶ 129; (2) a "Going Concern" warning, disclosing the existence of "substantial doubt regarding [its] ability to continue as a going concern," *id.* ¶ 130; (3) the details of its FY 2019 restatement, its FY 2020 results, and a pending SEC investigation, on November 5, 2021, *id.* ¶¶ 127-28; (4) its inability to make payments on the L Bonds and its retention of a restructuring advisor, on January 18, 2022, *id.* ¶ 131; (5) the original *Bayati* securities class action complaint here, filed on February 18, 2022, *id.* ¶ 136; and (6) its

---

Cir. 2019); *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 181-82 (5th Cir. 2019); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009).

bankruptcy filing on April 20, 2022, *id.* ¶ 132.  More than another year later, on May 26, 2023, *Horton v. Heppner, et al.*, Case No. 3:23-cv-01230-B (the "*Horton*" action) was filed in this Court, naming Whitley Penn as a defendant for the first time.  *Id.* ¶ 140.  On September 12, 2023, this Court consolidated the *Bayati* and *Horton* actions.  *Id.* ¶ 141.  Plaintiffs' consolidated Complaint was filed on October 2, 2023.  Dkt. 63.

## PLEADING STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Whether a claim is plausible depends on the *factual* allegations in the complaint because conclusory allegations and legal conclusions are not accepted as true.  *Id.* at 678-79.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Plaintiffs cannot offer allegations that are "merely consistent with" their favored explanation but are also consistent with the alternative explanation.  *Id.*  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, *see Twombly*, 550 U.S. at 554, in order to render Plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*.

## ARGUMENT

### I.      PLAINTIFFS' CLAIMS ARE TIME-BARRED.

As a threshold matter, Plaintiffs' claims against Whitley Penn are time-barred and must be dismissed.  Section 11 claims *must* be brought "within **one year** after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m (emphasis added).  "To determine when the one-year . . .

limitations period begins to run, courts apply the doctrine of constructive or inquiry notice." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 383 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012); *see also Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882, 899-901 (E.D. La. 2014) (finding Section 11 claim time-barred because company's earnings calls put plaintiff on inquiry notice more than one year before complaint was filed).   At the latest, the clock on the limitations period begins to run when a company reveals the "very falsity that [p]laintiffs . . . allege in their complaint." *Francisco v. Abengoa, S.A.*, 481 F. Supp. 3d 179, 201 (S.D.N.Y. 2020); *see also Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011) (summary order) ("The corrective disclosure date is the same as the constructive notice date for purposes of limitations."); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 863-64 (N.D. Tex. 2005) (press release providing "admission" of an "earlier misrepresentation" put plaintiffs on notice for limitations purposes); *Miller v. Nationwide Life Ins. Co.*, 2003 WL 22466236, at *6 (E.D. La. Oct. 29, 2003) (finding limitations period commenced with public disclosure that "provided constructive notice . . . of the purported untrue statement").

The relevant disclosures do not need to "touch on every specific allegation that a plaintiff chooses to put in his complaint." *In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 447 (2d Cir. 2015) (summary order); *see also Firefighters*, 53 F. Supp. 3d at 899 ("An investor need not have notice of the entire wrong being perpetrated to be on inquiry notice.") (citing *Franklin*, 782 F. Supp. 2d at 384).   Nor is evidence of damages necessary for the statute of limitations to be triggered.  *See, e.g.*, *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 672-73 (D. Md. 2018) (dismissing plaintiffs' Section 11 claim as untimely even though bond rating downgrades and damages did not occur more than a year before complaint was filed).  Rather,

inquiry notice sufficient to trigger the limitations period arises as soon as there are "storm warnings" to suggest to an investor of ordinary intelligence that she should investigate a possible cause of action based on an untrue statement or omission in a registration statement. *See Firefighters*, 53 F. Supp. 3d at 899; *Franklin*, 782 F. Supp. 2d at 383-84.[2]

Here, Plaintiffs allege that the restatement of the 2019 financial statements establishes that Whitley Penn's audit opinions were false. CC ¶ 165. But Plaintiffs acknowledge that, on August 3, 2021, the Company filed a Form 8-K with the SEC that disclosed that it would withdraw and restate the 2019 financial statements and "cautioned" that those financial statements "should no longer be relied on." *Id.* ¶ 125; *see also* Ex. C at 1 (App. 174). This restatement announcement provided Plaintiffs with sufficient notice and information to assert their Section 11 claims. *See, e.g.*, *Franklin*, 782 F. Supp. 2d at 410 (explaining that plaintiffs "clearly . . . would have been on notice of potential [Section 11] claims" following company's announcement that the relevant

---

[2] Courts in this Circuit have continued to apply the "inquiry notice" standard when assessing the timeliness of Securities Act claims, including after the Supreme Court's decision in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010). *See, e.g.*, *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 667 (S.D. Tex. 2021); *Firefighters*, 53 F. Supp. 3d at 899-901; *Franklin*, 782 F. Supp. 2d at 383-84. In *Merck*, the Supreme Court held that the statute of limitations for claims under Section 10(b) of the Securities Exchange Act of 1934 does not begin to run upon inquiry notice—when facts would cause a reasonably diligent plaintiff to investigate further—but rather when a reasonably diligent plaintiff would have discovered the "facts constituting the violation." 559 U.S. at 653. Subsequently, there has been disagreement among courts outside of this Circuit about whether *Merck*'s holding should be applied to Securities Act claims. *See, e.g.*, *Firefighters*, 53 F. Supp. 3d at 900 n.40. Here, it does not matter if the "inquiry notice" standard or *Merck*'s "discovery rule" is applied because Plaintiffs' claims are untimely under either test. *See, e.g.*, *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 301 (S.D.N.Y. 2014) (dismissing Securities Act claims as untimely without deciding which standard applied because company disclosed "a sufficient 'constellation of facts' to satisfy either standard"), *aff'd*, 616 F. App'x 442 (2d Cir. 2015); *see also Under Armour*, 342 F. Supp. 3d at 672 (finding Section 11 claim untimely even if court were to assume that "discovery rule" applied because "a reasonably diligent plaintiff would not only have begun investigating but would have discovered the alleged facts underlying the claim . . . more than one year before th[e] claim was ultimately filed"). As discussed below, this is not a case where there were merely suspicious circumstances that would have put Plaintiffs on notice to investigate; instead, GWG made a definitive, public announcement on August 3, 2021 that the 2019 financial statements would need to be restated based on a new accounting judgment—putting Plaintiffs on notice of the exact "misstatements" at issue in their claims against Whitley Penn. *See* CC ¶ 125; Ex. C at 1 (App. 174).

financial statements would need to be restated).  Accordingly, the statute of limitations ***expired as to Whitley Penn no later than August 3, 2022***.  *See* Ex. A (Timeline of Events) (App. 2-3).

The August 3, 2021 Form 8-K not only publicly announced the need for a restatement of the 2019 10-K, but it also provided details about why the Restatement was necessary.  Among other things, the Form 8-K explained how GWG had consulted with the OCA regarding "whether Ben was required to consolidate any of the trusts established in connection with its business of providing liquidity to holders of alternative assets (the 'ExAlt Plan Trusts')."  Ex. C at 1 (App. 174).  The Form 8-K further disclosed that, following this consultation and the OCA's conclusion that Ben was required to consolidate the trusts, the Company determined that a restatement of the 2019 financial statements was needed "to consolidate the ExAlt Plan Trusts into Ben's financial statements and consequently into the Company's consolidated financial statements."  *Id.*  This disclosure speaks directly to the accounting issue at the heart of Plaintiffs' allegations against Whitley Penn.  *See, e.g.*, CC ¶ 9 ("GWG acknowledged its failure to properly account for certain trusts, referred to as the 'ExAlt Trusts.'"); *id.* ¶ 19 ("Whitley Penn . . . provid[ed] an unqualified opinion that GWG's financial statements were fairly presented in accordance with U.S. [GAAP] despite Ben's failure . . . to consolidate the trusts as required under GAAP."); *id.* ¶ 74 ("The Restatement centered on the accounting treatment of the 'ExAlt Trusts.'").  By the time that Plaintiffs first brought their claims against Whitley Penn—on May 26, 2023—nearly two years had passed since they had been on notice of the relevant accounting restatement and their potential claims.  For this reason, Plaintiffs' claims are time-barred.  *See* 15 U.S.C. § 77m.

Moreover, the August 3, 2021 Form 8-K was not the first time that investors and the public heard about these issues.  Indeed, on July 7, 2021, GWG issued a press release, and Form 8-K, explaining that the Company had consulted with the SEC's OCA on two accounting issues,

including "whether Ben was required to consolidate any of the ExAlt Plan trusts," and that the Company would not file its 2020 10-K until "receiving a final conclusion from OCA." Ex. D at 1 (App. 180). The press release disclosed that the OCA accounting consultation had substantially delayed the filing of GWG's 2020 10-K, which the Company had "expected to file on March 31, 2021," and that the delay, in turn, resulted in GWG's "common stock [being] subject to delisting from The Nasdaq Capital Market." *Id.* at Exh. 99.1 (App. 183).[3] The July 7, 2021 disclosures alerted investors to potentially significant problems at the Company, as well as the specific accounting issue at the core of the Restatement and Plaintiffs' claims. Because Plaintiffs already had notice of these issues prior to August 3, 2021—when the Company's 8-K announced the OCA's conclusion and the need for restatement of the 2019 financial statements—August 3, 2022 is the latest date that the one-year limitations period could have expired. *See* Ex. A (Timeline of Events) (App. 2-3); *see also Formby v. Deloitte & Touche LLP*, 2023 WL 4132122, at *2-4 (N.D. Ga. Feb. 13, 2023) (granting auditor's motion to dismiss untimely securities claims because facts short of a restatement provided sufficient notice of potential claims).

The subsequent release of the restated 2019 financial statements, which was included in GWG's 2020 10-K, issued on November 5, 2021, merely reiterated and implemented the accounting change that already had been announced on August 3, 2021. Indeed, the 2020 10-K's description of the Restatement makes clear that it involved the exact same issue described in the July 2021 and August 2021 SEC filings, namely that the OCA was consulted on the question of

---

[3] Plaintiffs acknowledge that "missing the deadline to file its 2020 annual report" also caused GWG to "suspend[] the [L Bond] Offering in April 2021." CC ¶ 7; *see also id.* ¶ 126 (citing disclosure in August 3, 2021 Form 8-K that the Company "suspended the sale of its L Bonds due to the fact that the Company did not timely file its 2020 Form 10-K"). Thus, to the extent Plaintiffs seek to base any of their claims against Whitley Penn on their theory that "[w]ithout new L Bond sales to repay amounts owed on the earlier issued L Bonds, GWG was destined for bankruptcy," CC ¶ 20, they were on notice of this problem as early as April 2021, when the Company halted L Bond sales, and expressly reminded of it again in August 2021.

whether to consolidate the ExAlt Trusts, and it was concluded (as previously disclosed in August 2021) that those trusts should be consolidated.  *See* Ex. E at F-69 – F-76 (App. 447-54).

Recognizing the Section 11 claim as to Whitley Penn is time-barred, the Complaint pretends that GWG's November 2021 SEC filing contains a surprising revelation, but in reality, Plaintiffs were fully on notice as to any potential claim by August 2021, when GWG announced that it would restate its 2019 financials and consolidate the ExAlt Trusts.

Plaintiffs cannot avoid their untimely claim through the October 2022 tolling agreement with Whitley Penn, CC ¶ 139, because that agreement was entered more than two months ***after the statute of limitations had already expired***.  Plaintiffs do not, and cannot, allege that expired claims are rejuvenated under that tolling agreement; thus, the tolling agreement has no effect here.

Finally, Plaintiffs and their counsel were well aware that Whitley Penn was GWG's auditor for 2019, referencing Whitley Penn as a "relevant non-party" when they first filed their Section 11 claims here on February 18, 2022.  *See* Ex. I at 8 (App. 828).  The fact that Whitley Penn was not named as a defendant in the original complaint speaks volumes.  It shows that Plaintiffs were on notice and could have filed a timely action within one year from the announced restatement on August 3, 2021, but they expressly chose not to name Whitley Penn as a defendant in their February 2022 complaint—more than three months after the details of the restatement were released in November 2021.[4]   In short, two of the three related lawsuits here concluded that there was no claim against Whitley Penn, after noting that there were public events in 2021—most notably the announcement of the 2019 restatement on August 3, 2021—that revealed the potential

---

[4]  Similarly, in the *Scura* "related" action, the complaint alleges a series of additional events that revealed the problems at GWG to the market, including the April 2021 suspension of selling L Bonds, the June 11, 2021 resignation of Brad Heppner, GWG's July 7, 2021 announced consultation with the SEC OCA over the ExAlt Trusts consolidation issue, and the August 3, 2021 announced restatement based on the OCA consultation and conclusion to consolidate the ExAlt Trusts.  Ex. G, ¶¶ 78-82 (App. 733-34).

claim to the market. Thus, the claims against Whitley Penn are time-barred and should be dismissed. *See* Ex. A (Timeline of Events) (App. 2-3).

Where, as here, the untimeliness of Plaintiffs' claims is apparent on the face of the Complaint, "dismissal is required under Rule 12(b)(6)." *Sirois v. Zions Bancorporation, N.A.*, 2021 WL 1306767, at *2 (S.D. Tex. Apr. 7, 2021); *see also Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred.").

## II.     PLAINTIFFS FAIL TO ALLEGE A MATERIAL MISREPRESENTATION.

### A.     The Challenged Statements Are Non-Actionable Statements of Opinion.

All of the Whitley Penn statements that Plaintiffs challenge are opinions, and opinion statements are not actionable under Section 11 merely because they later turn out to be incorrect or simply reflect a different opinion. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). As the Supreme Court explained in *Omnicare*, "a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong." *Id.* Rather, a statement of pure opinion is actionable as a factual misstatement only if the speaker did not sincerely believe the opinion at the time, *id.* at 184–85—*i.e.*, if the belief was not "honestly held," *id.* at 186. This requirement to plead subjective falsity is consistent with the intent of Section 11, which "does not allow investors to second-guess inherently subjective and uncertain assessments," or engage in "Monday morning quarterback[ing]." *Id.* Plaintiffs' claims fail because they have not alleged that Whitley Penn did not actually believe its stated opinions.

#### 1.     Whitley Penn's Statements Are Pure Opinion.

The only statements made by Whitley Penn at issue in this litigation are statements from its 2019 audit opinion, and the Complaint itself acknowledges that Whitley Penn's statements are

10

opinion statements. *See, e.g.*, CC ¶ 14 ("The Registration Statement . . . included an unqualified **opinion** from the accounting firm Whitley Penn LLP."); *id.* ¶19 ("Whitley Penn provided an . . . **audit opinion** on GWG's 2019 financial statements incorporated by reference into the Registration Statement."); *id.* ¶ 95 (quoting "**Opinion** on Financial Statements" and "**Opinion** on Internal Control Over Financial Reporting" from Whitley Penn audit report included in GWG's 2019 10-K); *id.* ¶ 165 ("The Registration Statement incorporated by reference the 2019 10-K which . . . includes Whitley Penn's **opinions**."). An audit opinion is an expression of belief that involves a great deal of subjective judgment, making an audit opinion a quintessential statement of opinion. *See, e.g.*, *Querub v. Hong Kong*, 649 F. App'x. 55, 58 (2d Cir. 2016) (summary order) (affirming that "[a]udit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard"); *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *13-15 (N.D. Cal. Sept. 29, 2021) (holding that audit report and statements therein were pure statements of opinion subject to the *Omnicare* framework); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *10-11 (S.D. Tex. July 6, 2016) (collecting cases and holding that audit opinions are opinions under *Omnicare*).

In *Omnicare*, the alleged misstatements were the following two sentences contained in the registration statement: "We believe our contract arrangements...are in compliance with applicable federal and state laws," and "[w]e believe that our contracts...bring value to the healthcare system and the patients that we serve." 575 U.S. at 179-80. The Supreme Court "concluded that both sentences were 'pure statements of opinion,' reasoning that the words 'we believe' indicate that the company is expressing a 'view, not a certainty.'" *Johnson*, 2016 WL 3654657, at *9 (citing *Omnicare*). Because the plaintiffs in *Omnicare* failed to "allege that the defendants did not

11

subjectively believe either of these opinions, the Court held that neither of them constituted 'untrue statements of material fact' under section 11." *Id.*

Here too, Whitley Penn expressed belief, not certainty. In its "**Opinion** on Financial Statements," Whitley Penn wrote: "**In our opinion**, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2019, . . . in conformity with accounting principles generally accepted in the United States of America." CC ¶ 95 (emphasis added). Likewise, in its "**Opinion** on Internal Control Over Financial Reporting," Whitley Penn wrote: "**In our opinion**, the Company maintained, in all material respects, effective internal control over financial reporting." *Id.* The titles and plain wording of these statements make clear that they were opinions. As the Supreme Court explained, a reasonable person "recognizes the import of words like 'I think' or 'I believe,' and grasps that they convey some lack of certainty as to the statement's content." *Omnicare*, 575 U.S. at 187.[5]

Moreover, because GAAP requires complex and often subjective judgments, representations of GAAP compliance are inherently statements of opinion. *See, e.g.*, *Hunt*, 2021 WL 4461171, at *14; *Johnson*, 2016 WL 3654657, at *10; *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017) ("Where statements about GAAP compliance are concerned, courts have deemed them to be opinions."), *aff'd*, 905 F.3d 106 (3d Cir. 2018); *Buttonwood Tree Value Partners, LP v. Sweeney*, 2012 WL 2086607, at *2 (C.D. Cal. June 7, 2012) (holding that statements regarding compliance with GAAS or GAAP are opinions because "both GAAS and GAAP are a collection of broad standards that are 'couched in rather general and in some cases inherently subjective terms . . . to which reasonable professionals

---

[5] Additionally, "a reasonable investor would not understand . . . high-level, general statements . . . [of] substantial compliance . . . as implicitly assuring absolute compliance." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 909 (S.D. Tex. 2017), *aff'd*, 777 Fed. App'x 726 (5th Cir. 2019).

planning or conducting an audit reasonably and frequently could disagree'") (citing *In re Lehman Bros. Sec & ERISA Litig.*, 799 F. Supp. 2d 258, 301 (S.D.N.Y. 2011)).

Similarly, beliefs regarding the effectiveness of internal controls over financial reporting are also inherently subjective and based on opinion. *See, e.g.*, *Plaisance v. Schiller*, 2019 WL 1205628, at *9-13 (S.D. Tex. Mar. 14, 2019) (finding auditor's statement that Company "maintained effective internal control over its financial reporting" to be a statement of opinion under *Omnicare*); *see also Fogel v. Vega*, 759 Fed. App'x. 18, 24 (2d Cir. 2018) (summary order) (finding statements concerning effectiveness of internal controls to be nonactionable opinion statements); *S.E.C. v. World-Wide Coin Investments, Ltd.*, 567 F. Supp. 724, 751 (N.D. Ga. 1983) ("[E]valuat[ing] the sufficiency of controls . . . is inevitably a highly subjective process.").

The statements by Whitley Penn that Plaintiffs challenge here are unquestionably statements of pure opinion that, under *Omnicare*, cannot result in liability unless Whitley Penn disbelieved them at the time they were made. *See Omnicare*, 575 U.S. at 185-86.

### 2. The Complaint Fails to Allege Subjective Falsity.

Plaintiffs' claims fail because they do not allege that Whitley Penn did not believe the opinions in its 2019 audit report. Alleging "subjective falsity" is extremely difficult and subject to the same sort of proof as scienter. *See Omnicare,* 575 U.S. at 194 (noting that establishing subjective falsity "is no small task for an investor"). Here, ***the Complaint does not include any allegations that Whitley Penn disbelieved its audit opinions***—let alone "any allegations of fact" that could support an inference that Whitley Penn knew its audit opinions were false or misleading at the time they were made. While Plaintiffs point to the Restatement, nothing in the Restatement indicates that Whitley Penn disbelieved its audit opinions when issued, and courts have consistently rejected similar attempts at pleading falsity by hindsight. *See, e.g.*, *Plaisance*, 2019 WL 1205628, at *11-13 (dismissing claims against auditor involving similar audit opinions and

13

rejecting "allegations that . . . audit reports were false when made because [the company] later restated some of its financial statements"); *Franklin*, 782 F. Supp. 2d at 402 (allegation that company "later announced a need to restate certain financial information" could not show that auditor knew its audit opinions "were false when made").

The Complaint alleges that, while serving as Ben's auditor in 2017, Whitley Penn reached the same determination that it did in 2019 regarding the accounting treatment for the ExAlt Plan trusts. *See* CC ¶ 19. But, at most, this merely reinforces the consistency of Whitley Penn's belief that it was reasonable—and consistent with GAAP—for Ben to not consolidate the trusts.

Critically, Plaintiffs do not allege that Whitley Penn did not actually hold that view, only that Whitley Penn "repeated the same error." *Id.* This is insufficient for liability. Plaintiffs have not established that Whitley Penn knew its 2019 audit opinion for GWG was wrong by alluding to Whitley Penn's audit for a different entity (Ben, not GWG) from two years earlier (2017).[6]

In desperation, Plaintiffs imply that other auditors had different opinions, but their assertion is not supported by the facts, which indicate that Grant Thornton LLP, GWG's new auditor for 2020, "also believe[d] the Company ha[d] a reasonable basis for its [2019] accounting treatment"—*i.e.*, not consolidating the ExAlt Plan trusts. Ex. D at 1 (App. 180). Plus, Baker Tilly, GWG's auditor for fiscal years 2017 and 2018, issued clean audit opinions for GWG, which did

---

[6] Far from supporting their claim that there was some inexplicable shift in the accounting treatment for the ExAlt Trusts, the Ben financial statements Plaintiffs rely on demonstrate the opposite. The Ben financial statements were attached to the Registration Statement and fully disclosed the treatment of the ExAlt Trusts in 2018 and 2019, explaining that the ExAlt Trusts were not consolidated into Ben in 2019 because "certain changes to the trust agreements and loan agreements resulted in Ben no longer being considered the primary beneficiary of certain trusts included in the ExAlt Plan. Due to the reconsideration event, the Company deconsolidated certain trusts included in the ExAlt Plan as of December 31, 2019 that prior to these changes were included in the Company's consolidated financial statements. . . . The Company has a continuing involvement with the deconsolidated trusts in the form of its loans to certain of these trusts included within the ExAlt Plan." Ex. J at 46 (App. 932). *See also id.* at 44-47 (App. 928-933), disclosing the financial details of the ExAlt Trusts.

14

not consolidate Ben or the ExAlt Plan trusts.  Ex. F at F-22 (App. 629-30).

More importantly, different opinions related to these complex accounting judgments concerning the potential consolidation of several variable interest entities cannot establish that Whitley Penn's opinion was knowingly false.  In fact, quite the opposite.  The Supreme Court has long acknowledged that GAAP "tolerate[s] a range of 'reasonable' treatments." *Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 544 (1979).  As discussed above, the complex and subjective judgments involved in applying GAAP—and the potential for reasonable differences in views among audit professionals—are exactly why representations of GAAP compliance are treated as opinions rather than statements of fact.  *See, e.g.*, *Hunt*, 2021 WL 4461171, at *14; *Johnson*, 2016 WL 3654657, at *10; *Buttonwood*, 2012 WL 2086607, at *2.

There is no question that the accounting at issue here was complex.  It was only after a months-long consultation process with the SEC's OCA that the Company determined that the ExAlt Plan trusts should be consolidated.  *See* Ex. C at 1 (App. 174) (OCA consultation lasted from mid-February 2021 to late-July 2021); *see also* Ex. D at 1 (App. 180) (explaining that GWG sought OCA's conclusions because of "the judgment involved in each question," and that the consultation entailed discussions with OCA and the submission of "supplemental materials in response to various OCA requests").  The Restatement itself also makes clear that various, complex factors were involved in the relevant accounting considerations.  *See* CC ¶ 75.  They included "changes to both the governance structure and the underlying economics of . . . certain of the ExAlt Trusts," "new loan agreements between a subsidiary of Ben LP and certain of such trusts," and the complex issue as to whether Ben "had the power to direct the activities that most significantly impact[ed] the economic performance of . . . the ExAlt Trusts." *Id.*  Plaintiffs cannot meet the subjective falsity pleading standard by alleging (in hindsight) that Whitley Penn's 2019

15

opinion about whether the trusts should be consolidated was different from the later opinion of GWG, which was reached following new information related to the OCA's input on consolidation. The Complaint is devoid of any facts indicating that Whitley Penn was contemporaneously aware of any misapplication of GAAP when it issued its 2019 audit opinion.

Plaintiffs' allegation concerning GWG's internal controls is a complete red herring.  CC ¶ 95.  The revision to the internal controls opinion arose from the Restatement and the change in the conclusion whether to consolidate the VIE.  That change in accounting conclusion also meant that the internal controls failed to detect that issue—the material weakness in the internal controls does not reflect a separate issue.  And, as with the accounting judgment, Plaintiffs cannot simply point to a later conclusion about the internal controls to establish that Whitley Penn's earlier opinion was knowingly false when made.  *See, e.g.*, *Plaisance*, 2019 WL 1205628, at *9-13.

Finally, to the extent that Plaintiffs seek to allege that Whitley Penn did not believe its audit opinion on GWG's 2019 financial statements because Ben's goodwill valuation was purportedly inflated, *see, e.g.*, CC ¶ 13, such allegations fail for multiple reasons.  First, the Complaint does not include any allegation that Whitley Penn was aware of any purported inflation in Ben's goodwill.  Second, Plaintiffs lack support for their conclusory assertions about Ben's goodwill valuation and cannot show that there was any inflation of goodwill in the 2019 10-K.  Notably, Plaintiffs admit that any purported inflation of goodwill "was not addressed in the Restatement," CC ¶ 13, and their own conjecture that "Ben's business and prospects did not justify these [goodwill] valuations," *id.* ¶ 91, does not make it so.  In fact, to the extent that goodwill was impacted by the Restatement, the 2020 Form 10-K—which Plaintiffs cite to as the revelation of truth and which included an audit opinion by a second accounting firm, Grant Thornton LLP— showed a ***higher***, not lower, goodwill valuation for FY 2019.  *See* Ex. E at F-70 (App. 448).  And

16

Grant Thornton's FY 2020 opinion concluded that the goodwill valuation for FY 2020 was the same as for FY 2019. *See id.* at 46-47, F-6 (App. 278-80, 335). In other words, a second accounting firm also concluded that there was no goodwill impairment required, even with 12 more months of time passing from the original recording of the goodwill. Third, goodwill valuation is inherently judgmental, and a number of courts have found goodwill valuations to constitute opinions, not statements of fact. *See, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) (finding statements related to company's goodwill valuation were opinion statements subject to *Omnicare* because they "are inherently subjective and involve management's opinion regarding fair value"); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) (finding that estimates of goodwill are opinions that necessarily depend on judgment and subjective determinations of fair value); *see also In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, 2013 WL 1787567, at *4 (S.D.N.Y. Apr. 26, 2013) ("The Second Circuit noted that there was no objective, universally agreed-upon standard for measuring goodwill.") (citing *Fait*, 655 F.3d at 112-13). Multiple layers of opinion and subjective judgment would have been involved in Whitley Penn reaching its own view on the reasonableness of Ben's goodwill valuation for 2019, and there is no basis to conclude that Whitley Penn's view on goodwill was incompatible with its stated audit opinions.

The Complaint alleges nothing that would establish that Whitley Penn knew its audit opinions were not correct, so the Complaint should be dismissed. *See, e.g.*, *Johnson*, 2016 WL 3654657, at *12 (dismissing Section 11 claim against auditor because "[p]laintiffs d[id] not allege that [auditor] did not subjectively believe any of the opinions it provided in its [audit] report").

### 3.   The 2019 Audit Opinion Did Not Contain Any Embedded Facts.

While some opinion statements that "contain embedded statements of fact" can give rise to liability if the opinion affirms "underlying, verifiable" facts and those facts are untrue, *Johnson*,

17

2016 WL 3654657, at *12 (citing *Omnicare*, 575 U.S. at 185), *none of Whitley Penn's challenged opinion statements contain embedded statements of fact*. As discussed above, audit opinions are statements of "pure opinion," as are the specific opinions that Whitley Penn expressed here: (1) that GWG's 2019 financial statements were fairly presented in accordance with U.S. GAAP; and (2) that GWG had maintained effective internal controls over financial reporting.

Moreover, in cases involving allegedly false or misleading audit opinions, courts have "reject[ed] [p]laintiffs' attempt[s] to cast any alleged errors in the financial statements as embedded statements of fact." *Hunt*, 2021 WL 4461171, at *15. In *Johnson*, the Court explained that such attempts are premised on a misinterpretation of "the 'embedded statement of fact' concept discussed in *Omnicare*," and found that audit opinions similar to those at issue here "d[id] not contain any embedded statements of fact that are untrue." 2016 WL 3654657, at *12. As in *Johnson*, Whitley Penn's opinion statements are not accompanied by objectively verifiable "factual bases," and the "numbers in [the company's] financial statements, on which [the auditor] expressed an opinion, do not appear in the audit report and are not 'embedded' in a subordinate clause in any of [the audit opinion's] sentences in the way the *Omnicare* Court set out." *Id.*[7]

## B.    The Complaint Fails to Allege the Materiality of Any Misstatement.

Plaintiffs' claims against Whitley Penn also should be dismissed for the independent reason that the allegedly misstated information would not have been material to a reasonable investor in the L Bonds. A fact is material if there is a "substantial likelihood that a reasonable [investor] would consider it important" in making an investment decision. *Basic Inc. v. Levinson*, 485 U.S.

---

[7] "In *Omnicare*, the Supreme Court's example of an embedded statement of fact was: 'I believe our TVs have the highest resolution available because we use a patented technology to which our competitors do not have access.' The conclusion of the CEO rested on an underlying, verifiable fact: that the company uses a patented technology that its competitors do not have access to." *Johnson*, 2016 WL 3654657, at *12 (citing *Omnicare*, 575 U.S. at 185). Here, Whitley Penn's audit opinions do not contain an analogous, embedded statement of fact.

18

224, 231-32 (1988).  In the Section 11 context, this requires a determination of "whether 'the information allegedly omitted or misrepresented in the [registration statement] was material, in the sense that it would have altered the way a reasonable investor would have perceived the total mix of information available in the [registration statement] as a whole.'"  *Franklin*, 782 F. Supp. 2d at 404 (quoting *Krim v. BancTexas Grp.*, 989 F.2d 1435, 1445 (5th Cir. 1993)).  While materiality is sometimes an issue that is reserved for the trier of fact, "many Section 11 cases have been properly dismissed on the pleadings for lack of materiality."  *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004) (affirming grant of defendant's motion to dismiss because statements in prospectus were not materially misleading); *see also, e.g.*, *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 873-74 (5th Cir. 2003) (affirming dismissal of Section 11 claims because none of the challenged representations were material); *Franklin*, 782 F. Supp. 2d at 408 (dismissing Section 11 claims involving accounting errors on materiality grounds).

Here, the alleged misstatements were immaterial to L Bond investors.  Investors knew that Whitley Penn's assessment of whether GWG's FY 2019 accounting complied with GAAP was a matter of subjective judgment.  Moreover, the issue addressed by the Restatement was a pure presentation question—*i.e.*, whether certain Ben trusts should be consolidated for reporting purposes—and did not reflect any revision of the Company's underlying economic or performance data.  While the change in accounting treatment did have related effects on GWG's 2019 financial statements, the changes did not impact the "total mix" of information available about GWG and would not have been important to a reasonable L Bond investor's decision-making.

Critically, "allegations of improper accounting requiring a restatement does not, by itself, establish materiality."  *Hemmer Group v. SouthWest Water Co.*, 527 Fed. App'x. 623, 626 (9th Cir. 2013).  Rather, "a plaintiff must show with particular[ity] how the accounting irregularities

19

affected the company's financial statements and whether they were material in light of the company's overall financial position." *Id.*[8] Here, the new interpretation of GAAP resulted in certain Ben trusts being presented differently, but this reporting change had a limited overall impact on the 2019 financial statements. The Restatement did not result in any change in net cash flow from operating activities; nor did it negatively affect GWG's most significant financial metrics or key performance indicators. *See* Ex. E at F-70 – F-71 (App. 448-49). In fact, a number of the impacts of the accounting change were positive. GWG's restated balance sheet for 2019 actually ***improved*** because consolidation of the ExAlt Trusts required certain assets to be reported as investments in alternative assets instead of loan receivables, and ***the restated accounting resulted in both an increase in cash and total assets for 2019***. *See id.* at F-70 (App. 448).

Plaintiffs' one-sided portrayal of the Restatement focuses on particular changes in isolation, ignoring the aforementioned improvements to GWG's 2019 balance sheet and obscuring the total financial picture. In fact, the chart included in the Complaint to show the impact of the Restatement on the 2019 financial statements conspicuously excludes lines for cash and total assets—both of which increased. *Compare* CC ¶80 ("Fiscal 2019" chart), *with* Ex. E at F-70 (App. 448). Moreover, while there was a small increase in GWG's total liabilities, it was by an amount smaller than the increase in total assets—and equated to a less than 2% increase on a percentage basis. Ex. E at F-70 (App. 448). Courts have found such revisions to be immaterial as a matter of law. *See, e.g.*, *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997) (affirming dismissal of Section 11 claims because overstatement of total assets by 2% was immaterial).

---

[8] Indeed, even where accounting errors are "seemingly considerable in absolute terms," they can nonetheless still be "immaterial as a matter of law." *Taubenfeld v. Hotels.com*, 385 F. Supp. 2d 587, 593 (N.D. Tex. 2004). This is because "materiality . . . cannot be determined absent some examination of the company's overall structure" or financial picture. *In re Alcatel Alsthom Sec. Lit.*, 2000 WL 34217789, at *11 (E.D. Tex. 2000).

Furthermore, the speculative nature of the L Bonds is highly relevant when assessing materiality and what would have been important to investors.  As the Court explained in *Parnes*: "It seems clear that a reasonable investor, faced with a high-risk/high-yield investment opportunity in a company with a history of very rapid growth, would not have been put off by an asset column that was 2% smaller."  122 F.3d at 547; *see also, e.g.*, *Escott v. BarChris Constr. Corp.*, 283 F. Supp. 643, 681-82 (S.D.N.Y. 1968) (holding that a reasonable investor in a speculative, convertible debenture would not care about certain errors to the company's sales, net operating income, contingent liabilities, or EPS).  Here, the Registration Statement made clear, in bold type, that "**L Bonds may be considered speculative and involve[] a high degree of risk, including the risk of losing your entire investment**."  Ex. H (App. 752) (emphasis in original).  The Registration Statement also warned potential investors that the bonds were highly illiquid, and that investors "**should not expect to be able to resell [their] L Bonds regardless of how [GWG] perform[s]**." *Id.* (emphasis added).  As such, investors would have been primarily concerned with GWG's ability to pay the principal and interest offered on the L Bonds, not on minor fluctuations in financial results—let alone technical accounting changes that did not negatively impact the Company's total cash.[9]

## III.   PLAINTIFFS FAIL TO ALLEGE STANDING.

Section 11 claims are limited to investors who can "plead and prove that [they] purchased

---

[9] The mere fact that the L Bonds were bonds, with a fixed rate of return tied to an interest rate, also made minor fluctuations in financial results immaterial to L Bond investors.  Unlike equity investors, who may care about earnings results because their investment is entitled to a share of company earnings, bondholders are typically focused on a company's ability to make principal and interest payments on the bonds. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 210 (2d Cir. 2008) (holding that goodwill write-off and other negative information was not material to company's "certificates," noting "that a comparison between equity and bond markets is a comparison between the proverbial apple and orange").  The consolidation of Ben's ExAlt Trusts did not reduce GWG's cash or ability to make payments on the L Bonds.  GWG was unable to make payments on L Bonds because it lost the ability to continue to sell L Bonds and went bankrupt.

shares traceable to the allegedly defective registration statement." *Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 770 (2023); *see also Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 498 (5th Cir. 2005) ("Section 11 is available for [those] who can demonstrate that their shares are traceable to the registration statement in question."); 15 U.S.C. § 77k(a).  Courts have recognized that this tracing requirement often presents an insurmountable challenge to Section 11 plaintiffs where the security in question has been issued in multiple offerings.  *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107-08 (9th Cir. 2013) ("[W]hen a company has offered shares under more than one registration statement, aftermarket purchasers usually will *not* be able to trace their shares back to a particular offering.") (emphasis in original).

The Complaint alleges that "Plaintiffs acquired L Bonds pursuant to the Offering."  CC ¶ 169.  However, the only factual allegations pled in support of this proposition are the dates on which the two Named Plaintiffs acquired L Bonds.  *See id.* ¶¶ 24, 25.  Simply including the date of purchase is insufficient to allege traceability where millions of L Bonds were outstanding prior to the Registration Statement and Offering in question.  *See, e.g.*, *Century*, 729 F.3d at 1108 (finding similar allegations regarding date of purchase insufficient because they did not "exclude the possibility that [plaintiffs'] shares came from the pool of previously issued shares").  Plaintiffs do not include allegations of how they purchased L Bonds in order to plausibly allege traceability, and their conclusory allegations are precisely the type that have been dismissed by Fifth Circuit courts.  *See Johnson*, 2016 WL 3654657, at *3-6 (finding allegation that securities were purchased "pursuant to or traceable to the Offering Documents" insufficient for Section 11 claim).  Plaintiffs have not alleged any facts evidencing traceability, nor can they.

The L Bonds were sold by GWG for years before the June 3, 2020 Registration Statement. Prior to the relevant Offering, there already were over $948 million of L Bonds outstanding.  Ex.

H at 7 (App. 773).  As L Bonds reach maturity, following their 2, 3, 5, or 7-year terms, they automatically renew as new L Bonds, and they are given the exact same terms and CUSIP number as new L Bonds issued that same month.  *Id.* at vi-vii.  For example, 2-year term L Bonds issued in June 2018—*i.e.*, two years before the Registration Statement—would automatically renew and get the same terms and CUSIP number as the new L Bonds issued pursuant to the June 2020 Registration Statement.  L Bonds that were automatically renewed upon expiration are thus entirely interchangeable and fungible with L Bonds that were newly issued in the same month.  In fact, the operative Registration Statement explains that previously purchased L Bonds that automatically renew will be "completely fungible" with newly issued L Bonds from the Registration Statement.[10]  *Id.* at vi.  Therefore, it is impossible to determine if any individual investor purchased an L Bond pursuant to the Registration Statement, or if their L Bond was one that had been purchased earlier and automatically renewed after the expiration of its original term.

Here, L Bonds that were purchased prior to the Registration Statement are clearly not traceable to the Registration Statement.  *See, e.g., Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Hldgs.*, 886 F. Supp. 2d 328, 339 (S.D.N.Y. 2012) ("[B]ecause Plaintiff purchased shares *before* the challenged offerings, it cannot possibly 'trace' its stock purchases to an offering or registration statement.").  And because L Bonds that were issued pursuant to the Registration Statement have been commingled with, and become indistinguishable

---

[10] L Bonds can be purchased in two different ways:  (1) DTC settlement through a broker-dealer, or (2) direct settlement with the Company.  Ex. H at iii (App. 757).  L Bonds purchased with broker-dealers through the DTC process are held in their street name (Cede & Co.) and are assigned a single CUSIP number each month.  *Id.* at vi.  All L Bonds belonging to a single CUSIP are "completely fungible." *Id.*  "Courts have long noted that tracing shares . . . is often impossible, because most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares, and many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position."  *Century*, 729 F.3d at 1106-07.

23

from, the earlier purchased L Bonds that were automatically renewed, Plaintiffs face an insurmountable standing problem. *See In re HealthSouth Corp. Secs. Litig.*, 261 F.R.D. 616, 648 (N.D. Al. Sept. 30, 2009) (finding no traceability for Section 11 claim where buyers purchased unregistered bonds prior to the filing of registration statement and exchanged these for registered bonds after the filing); *In re Levi Strauss & Co. Secs. Litig.*, 527 F. Supp. 2d 965, 978 (N.D. Cal. 2007) (dismissing Section 11 claims as to plaintiffs who exchanged unregistered bonds purchased before the registration statement for registered bonds); *see also In re CarLotz, Inc. Secs. Litig.*, 2023 WL 2744064, at *7-9 (S.D.N.Y. Mar. 31, 2023) (rejecting argument that shares bought before registration statement had been "functionally transformed" into new shares for tracing purposes).

## IV. NEGATIVE CAUSATION WARRANTS DISMISSAL.

Dismissal is also warranted because any losses experienced by Plaintiffs are not attributable to the purported misstatements and "corrective disclosures" on which they rely in their Complaint. The securities laws do not "provide investors with broad insurance against market losses;" rather, they "protect [investors] against those economic losses that misrepresentations actually cause." *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 345 (2005). The Securities Act provides an affirmative defense of "negative causation," that bars recovery for losses not attributable to the alleged misrepresentation. *See* 15 U.S.C. § 77k(e). Even at the pleading stage, dismissal is warranted if "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011); *see also In re Britannia Bulk Hldgs. Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 418-20 (S.D.N.Y. 2009) (dismissing Section 11 claims on "negative causation" grounds where evident from the face of the complaint); *Alamosa*, 382 F. Supp. 2d at 866 (granting motion to dismiss because "Section 11 claim [wa]s subject to the absolute negative causation defense").

24

Here, the decline in the value of the L Bonds was not caused by Whitley Penn's 2019 audit opinion or the alleged accounting error in the 2019 financial statements.  Instead, the loss of the L Bonds' value occurred because GWG stopped selling L Bonds in April 2021, which created a cash flow deficit given the Company's reliance on new L Bond sales to fund its operations.  *See* CC ¶¶ 4, 7, 20, 42-43, 126, 131-32.  The Complaint itself alleges that "GWG relied on L Bond purchases to fund its operations."  *Id.* ¶ 42.  Indeed, according to Plaintiffs, "***GWG was dependent on continuous sales of new L Bonds*** to repay principal and interest owed to earlier L Bond investors.  GWG's future—***and the fortunes of the L Bond investors***—turned on Ben's successful implementation of its business model."  *Id.* ¶ 4 (emphasis added); *see also id.* ¶¶ 42-43.  Plaintiffs also acknowledge that, after missing the deadline to file its 2020 annual report, GWG suspended the sale of new L Bonds in April 2021, and they were not resumed.  *Id.* ¶¶ 7, 20, 126, 131.  Without the influx of new capital GWG needed from L Bond sales, the Company could not meet its cash needs and ultimately became insolvent.  *See, e.g.*, *id.* ¶ 20 ("Without new L Bond sales to repay amounts owed on the earlier issued L Bonds, GWG was destined for bankruptcy.").  Thus, as evident from the Complaint itself, the L Bonds' loss of value was caused by the halt of new L Bond sales, which were essential to GWG's existence—<u>not</u> by any alleged misstatement by Whitley Penn.

### CONCLUSION

For all of these reasons, Defendant Whitley Penn respectfully requests that this Court grant this motion and dismiss the claims against it with prejudice.

DATED:  January 4, 2024                    Respectfully submitted,

*/s/ James J. Farrell*

25

James Farrell (admitted *pro hac vice*)
Brad Schoenfeldt (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, New York 10166
Telephone:  212.351.4000
Facsimile:  212.351.4083
JFarrell@gibsondunn.com
BSchoenfeldt@gibsondunn.com

Trey Cox
  Texas Bar No. 24003722
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone:  214.698.3256
Facsimile:  214.571.2923
TCox@gibsondunn.com


COUNSEL FOR DEFENDANT
WHITLEY PENN LLP

26

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of January, 2024, the foregoing document was filed using the Court's CM/ECF system.  In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

/s/ *James J. Farrell*
James J. Farrell

27