# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
| --- | --- | --- |
| IN RE GWG HOLDINGS, INC.<br>SECURITIES LITIGATION | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:22-cv-00410<br><br>Class Action<br><br>Jury Trial Demanded |



# DEFENDANT MURRAY HOLLAND'S
# MOTION TO DISMISS

S. Michael McColloch
S. MICHAEL MCCOLLOCH, PLLC
6060 N. Central Expressway, Suite 500
Dallas, Texas 75206
(214) 643-6055

Karen Cook
KAREN COOK, PLLC
6060 N. Central Expressway, Suite 500
Dallas, Texas 75206
(214) 643-6054

Attorneys for Defendant Murray Holland

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................... iii

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

III.    LEGAL STANDARDS .........................................................................................4

        A.      In General............................................................................................................4

        B.      Particularity Requirements under Rule 9(b) ......................................................5

        C.      Stricter Pleading Requirements under the PSLRA .............................................6

        D.      Ban on Group Pleading......................................................................................7

        E.      Special Standard for "Forward Looking" Statements in
                Securities Act Cases............................................................................................8

IV.     ARGUMENTS AND AUTHORITIES..................................................................8

        A.      The Complaint Does Not Allege Standing to Assert a Claim
                under Section 11 ..................................................................................................8

        B.      The Complaint Does Not Allege Standing to Assert a Claim
                under Section 12(a)(3) .......................................................................................10

        C.      The Complaint Fails to Allege that a Statement in the Registration
                Statement was a False or Misleading Statement of Fact......................................13

                1.      The Complaint Does Not Adequately Allege a Lack of GAAP
                        Accounting in the Preparation of GWG's Financial Statements ...............14

                2.      The Complaint Does Not Adequately Allege that Holland
                        Violated Sections 11 or 12 Through Any Misstatement of
                        GWG's Internal Controls in the Registration Statement ..........................15

                3.      The Complaint Does Not Adequately Allege a Violation of
                        Sections 11 or 12 by Holland for Materially Overstated
                        Valuation of Ben by GWG .......................................................................16

                4.      The Complaint Does Not Adequately Allege that GWG
                        Materially Misrepresented the Nature of Ben's Business and
                        its True Financial Condition ....................................................................21

5.      The Complaint's Assertion of Misleading Representations About the Use of Proceeds to Repay Ben Indebtedness Is Contradicted by the Record ........................................................................23

6.      The Complaint's Allegation that the Registration Statement Mischaracterized the Resignation of Several Directors Is Contradicted by the Record and Does Not State or Support a Claim Under Sections 11 or 12................................................................25

D.      The Complaint Wholly Fails to State a Claim Against Holland Under Section 15 for "Control Person" Liability ............................................................27

V.      CONCLUSION..................................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Ahders v. SEI Private Tr. Co.*, 982 F.3d 312 (5th Cir. 2020) ........................................................27

*Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009) ...........................10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................5

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir.2007) ................................5

*Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967) ...........................................................................10

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988)...................................................................13, 23, 25

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 14-cv-786,
    2015 WL 927456 (D. Minn. Mar. 4, 2015) .........................................................................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................5, 11

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir.2003) ...................................6

*Carter v. Target Corp.*, 541 Fed. App'x 413 (5th Cir. 2013)...........................................18, 23, 25

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ...............................................................................................19

*Coates v. Heartland Wireless Commnc'ns, Inc.*, 26 F.Supp.2d 910 (N.D.Tex.1998).....................7

*Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628 (3d Cir. 1989) ..........................................12

*Cutsforth v. Renschler*, 235 F. Supp. 2d 1216 (M.D. Fla. 2002) ..................................................26

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007).........................................................................4

*Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496 (5th Cir. 1990) ........................................................28

*Doe v. Univ. of Texas M.D. Anderson Cancer Ctr.*,
    653 F. Supp. 3d 359 (S.D. Tex. 2023) .................................................................................18

*Edgar v. Anadarko Petroleum Corp.*, No. 17-1372, 2018 WL 3032573
    (S.D. Tex. June 19, 2018) ...............................................................................................17, 18

*Einhorn v. Axogen, Inc.*, 42 F.4th 1218 (11th Cir. 2022) .............................................................17

*Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011) ..............................................................19

**Cases (continued)**

*Fener v. Belo Corp.*, 425 F. Supp. 2d 788 (N.D. Tex. 2006)..................................................7, 11, 12

*Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278 (5th Cir. 2006) ....................................7

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
    53 F. Supp. 3d 882 (E.D. La. 2014) ............................................................... 15-18

*Fitzer v. Sec. Dynamic Techs., Inc.*, 119 F. Supp. 2d 12 (D. Mass. 2000) ..............................26, 27

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir.2009) ...............................................................6, 23, 25

*Goldstein v. MCI Worldcom*, 340 F.3d 238 (5th Cir. 2017) .......................................................4, 5

*Harris v. AmTrust Fin. Servs., Inc.*, 135 F.Supp.3d 155 (S.D.N.Y. 2015) ...................................20

*HCB Fin. Corp. v. McPherson*, 8 F.4th 335 (5th Cir. 2021) .............................................................4

*Heck v Triche*, 775 F.3d 265 (5th Cir. 2014) ...............................................................................27

*In re Anadarko Petrol. Corp. Class Action Litig.*, 957 F. Supp. 2d 806 (S.D. Tex. 2013)............14

*In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862 (S.D. Tex. 2002)...........................................12

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013).................................9, 10

*In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.*, 7 F.3d 357 (3d Cir. 1993)................8

*In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364 (S.D. Tex. 2011),
    *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*,
    464 Fed. Appx. 334 (5th Cir. 2012)..................................................................28

*In re Pilgrim's Pride Corp. Sec. Litig.*, No. 2:08-CV419-TJW, 2010 WL 3257369
    (E.D. Tex. Aug. 17, 2010) ...............................................................................28

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870 (S.D. Tex. 2017),
    *aff'd*, 777 Fed. App'x 726 (5th Cir. 2019)..........................................................13, 23, 25

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583 (S.D. Tex. 2018) .................28

*In re Segue Software, Inc.*, 106 F. Supp. 2d 161 (D. Mass. 2000).................................................14

*In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624 (S.D. Tex. 2021)....................23, 25

**Cases (continued)**

*Indiana Elec. Workers Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
       537 F.3d 527 (5th Cir.2008) ..........................................................................7

*Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435 (5th Cir. 1993) ..........................15, 17, 18

*Krim v. PcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005)..........................................9, 10

*Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
       810 F.3d 951 (5th Cir. 2016) ......................................................................5, 7

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001)........................6, 12

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ......................................5, 8

*Melder v. Morris*, 27 F.3d 1097 (5th Cir 1994) ......................................................6

*N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
       537 F.3d 35 (1st Cir.2008).............................................................................5

*Nathenson v. Zonagen Inc.*, 267 F.3d 400 (5th Cir. 2001) ......................................5, 6

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*, 575 U.S. 175 (2015)........................19, 20

*Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621 (D. N.J. 2021) ...........................19

*Pinter v. Dahl*, 486 U.S. 622 (1988)..................................................................11

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) ...........................................5-7

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)..........................................4

*Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757 (5th Cir. 2011) ..................4

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) .............................4, 9, 11, 12

*Rubinstein v. Collins*, 20 F.3d 160 (5th Cir. 1994) ................................................8

*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462 (1977).............................................26

*Scott v. ZST Digital Networks, Inc.*, 896 F. Supp. 2d 877 (C.D. Cal. 2012).................10

*Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433 (2023).............................................9, 10

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353 (5th Cir. 2004)...................5, 13, 28

**Cases (continued)**

*Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134 (5th Cir.1992) ........................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................................2, 5

*Williams v. WMX Tech., Inc.*, 112 F.3d 175 (5th Cir.1997) ..........................................................6

*Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385 (S.D. N.Y. 2022)...............................16


**Statutes**

15 U.S.C. § 77k (section 11 of the Securities Act of 1933).....................................................1, 2, 13

15 U.S.C. § 77k(a) .....................................................................................................................9

15 U.S.C. § 77l (section 12 of the Securities Act of 1933)...................................... 1, 2, 4, 11-13

15 U.S.C. § 77o (section 15 of the Securities Act of 1933)...........................................1, 2, 27, 28

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737
　　(codified at 15 U.S.C. § 77z-1 and 15 U.S.C. § 78u-4) ...............................................2, 6, 7


**Rules and Regulations**

Fed. R. Civ. Pro. 9 ..................................................................................................................2, 6

Fed. R. Civ. Pro. 12 .................................................................................................................2, 4

Fed. R. Civ. Pro. 23 ..................................................................................................................10


**Other Sources**

Fin. Accounting Standards Board, Accounting Standards Codification 820 -
　　Fair Value Measurement, available at
　　https://asc.fasb.org/820/showallinonepage (last visited Jan. 4, 2024). .............................19

GWG Annual Report (Form 10-K) (2018) .............................................................................2, 3

GWG Annual Report (Form 10-K) (2019) ......................................................... 3, 17, 18, 20-24

**Other Sources (continued)**

GWG Annual Report (Form 10-K) (2020) ........................................................18, 20, 22

GWG Current Report (Form 8-K) (Oct. 21, 2019)................................................25, 26

GWG Current Report (Form 8-K) (Sept. 17, 2020)....................................................17

Notes to Ben's Consolidated Financial Statements ............................................... 20-24

Prospectus (December 1, 2017) .....................................................................................3

Prospectus (August 7, 2019) .........................................................................................3

Prospectus (June 5, 2020) ...........................................................................................11

Defendant Murray Holland submits this motion to dismiss Plaintiffs' claims in their Consolidated Class Action Complaint for violations of the federal securities laws, respectfully stating as follows:

# I.
# INTRODUCTION

Plaintiffs filed this putative class action on behalf of all persons who acquired certain bonds of GWG Holdings, Inc. ("GWG") from June 3, 2020, through April 16, 2021, pursuant to the company's Registration Statement effective on June 3, 2020. The Complaint asserts three claims against Holland: Count I pursuant to Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k (based on statements in the Registration Statement); Count III pursuant to Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l (based on statements in a prospectus); and Count IV pursuant to Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o (based on alleged status as a "controlling person").

The Complaint scarcely mentions Holland. The few references to Holland by name fail to make any actionable allegations. Plaintiffs primarily engage in impermissible group pleading as to the "Individual Defendants," which definition includes Holland. The Complaint alleges that the Individual Defendants, as a group, concealed from investors the risks associated with investing in bonds ("L Bonds") issued by GWG, the nature and value of the business of Beneficient Company Group, L.P. ("Ben"), and the use of proceeds from the sale of the GWG's L Bonds. But the voluminous public documents upon which the Complaint relies demonstrate instead that the risks and other relevant details of the companies' business were fully disclosed, including specifically the myriad risks of investing in the L Bonds. Moreover, many of the Complaint's allegations are contradicted by the incorporated documents upon which they rely.

1

These group allegations are generalized statements and conclusions that fail to provide any detail or specifics that tie one, some or all of the Individual Defendants to the conduct that underlies Plaintiffs' claims. These summary allegations fail to meet the *Iqbal/Twombly* plausibility standard and fail to allege fraud with the particularity required by Rules 9(b) and 12 and the enhanced pleading requirements of the Private Securities Litigation Reform Act. Even taking the allegations as true, the allegations as to Holland are so sparse and lacking in specifics, the court cannot reasonably infer that Holland is liable for any of the alleged misconduct.

The Complaint also fails to establish the Plaintiffs' standing to bring these claims under Sections 11 and 12, and fails to adequately allege that any of the challenged statements were materially false or misleading when made, or that Holland was a "seller" for purposes of Section 12 of the Securities Act of 1933, or a "control person" under Section 15. The Complaint thus fails to state a claim on which relief can be granted. For these reasons the Court should dismiss all of the claims against Holland pursuant to Rule 12(b)(6).

## II.
## BACKGROUND[1]

Defendant Holland was first introduced to GWG due to a transaction entered into in 2017 in which GWG purchased Ben stock from a trust for which Holland served as a financial advisor. GWG made the purchases of Ben stock in a series of transactions that closed prior to 2019.[2] The acquisition of additional shares of Ben stock by GWG and Ben's eventual incorporation as a consolidated operating subsidiary were fully disclosed in GWG's public filings during 2018 and

---

[1] In deciding a motion to dismiss, the Court may consider the Complaint's factual allegations, documents "incorporated in the [Complaint] by reference," and GWG's SEC filings. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Because the Complaint expressly referenced these public SEC filings, Defendants may also rely on such filings in their arguments in this motion.

[2] GWG Annual Report (Form 10-K) (2018) and pp. 2-7.

2019.[3] Although the details of GWG's acquisitions and strategy were disclosed in its public filings, <u>Holland had no role with GWG until he became an officer of GWG in or about April, 2019</u>, part way through the 2019 fiscal year.[4] When Holland signed his first GWG annual report as the company's new CEO, he was required to rely upon the statements, work product and conclusions of others—including the company's outside CPA's—especially as to the events that occurred prior to his appointment as an officer.

In June 2020, GWG commenced a public offering of L Bonds pursuant to a registration statement and prospectus, effective June 3, 2020. These offering documents expressly incorporated by reference the GWG's annual reports for 2018 and 2019, thereby fully disclosing the relationship among the companies, their history, and GWG's financials and strategy.[5] The L Bonds purchased in the 2018 and 2019 offerings automatically renewed for a new term without election by the purchaser.[6] Thus, not all of the holders of L Bonds after June 2020 were purchasers in the June 2020 offering. The Complaint fails to account for those whose purchased prior to the 2020 offering and held their bonds past it.

A restatement of certain financial information was filed by GWG in November of 2021 ("Restatement"). This Restatement revised the Consolidated Balance Sheet because of changes to subsidiary Ben. The Restatement changed *how* information was presented, but did not negatively impact the value of the assets nor the credit worthiness of GWG.[7] Instead, from a presentation perspective, the Restatement reflected a higher valuation of Ben's assets for that time. Despite the

---

[3] GWG Annual Report (Form 10-K) (2018) p. 2, GWG Annual Report (Form 10-K) (2019) pp. 1-2

[4] GWG Annual Report (Form 10-K) (2019) pp. 3, 26.

[5] Dkt. 63, ¶ 6, n. 2.

[6] Prospectus (December 1, 2017) at p. 5; Prospectus (August 7, 2019) at p. 5

[7] GWG annual Report (Form 10-K) (2019).

change in presentation, GWG's financials statements were prepared by independent accounting firms in compliance with Generally Accepted Accounting Principles ("GAAP"), both before and after the Restatement.

Nowhere does the Complaint describe the participation or lack of participation of Defendant Holland in the accounting treatment of Ben's assets, the disclosures made upon his late arrival at GWG, or the accounting revisions occasioned by the Restatement in late 2020—the very transactions that form the basis for the claims set out in the Complaint.

## III.
## LEGAL STANDARDS

### A. In General

Under FED. R. CIV. P.. 12(b)(6), a complaint should be dismissed when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).[8] To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). In deciding a motion to dismiss, the court "accept[s] the facts alleged in the plaintiffs' complaint as true and constru[es] their allegations in the light most favorable to them," *Goldstein v. MCI Worldcom*, 340 F.3d 238,

---

[8] This includes when a plaintiff fails to plead facts sufficient to demonstrate statutory standing. The Fifth Circuit has treated a plaintiff's failure to demonstrate that the defendant qualifies as a "statutory seller" under Section 12(a)(2) of the Securities Act is a statutory standing issue that can be disposed of under Rule 12(b)(6). *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) (affirming dismissal of Section 12(a)(2) claim against non-sellers under Rule 12(b)(6)); *see generally, HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 339 (5th Cir. 2021) (distinguishing statutory standing and Article III standing, and explaining that "statutory standing is analyzed under Rule 12(b)(6), not Rule 12(b)(1)"). In the alternative, to the extent this Court determines that the issue is one of Article III standing, Defendants respectfully request that the Court consider the standing issue first and dispose of it under Rule 12(b)(1). *See, e.g.*, *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." (quoting Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001))). The Plaintiffs' lack of standing is addressed *infra*, at 8-12.

244 (5th Cir. 2017), but the court does not "strain to find inferences favorable to the plaintiff[s]." *Id*. Nor does the court "accept as true conclusory allegations, unwarranted deductions, or legal conclusions." *Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.,* 365 F.3d 353, 361 (5th Cir. 2004); *Nathenson v. Zonagen Inc*., 267 F.3d 400, 412 (5th Cir. 2001). The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs,* 551 U.S. at 322.

A complaint must contain enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These standards apply fully to cases under the securities acts. *See Lormand v. US Unwired, Inc*., 565 F.3d 228, 258 n.29 (5th Cir. 2009), citing *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc*., 537 F.3d 35, 44 (1st Cir.2008); *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 & n. 2 (2d Cir.2007).

### B. Particularity Requirements under Rule 9(b)

These standards include the heightened particularity requirements for complaints alleging fraud. In cases such as this, Rule 9(b) "imposes a higher standard on the complainant, requiring that he plead with 'particularity the circumstances constituting fraud.'" *Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016). The

Complaint alleges a long-running scheme to defraud L Bond holders, repeatedly alleging conduct that was "false and misleading."[9]

"When 1933 Securities Act claims are grounded in fraud rather than negligence … Rule 9(b) applies." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *Plotkin, supra, at* 696; *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir 1994) (collecting cases). A complaint must contain "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir.2009); *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir.1997). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.2003) (quoting *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.1992)); *Nathenson*, 267 F.3d at 412.

In cases concerning "omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir.2006).

**C. Stricter Pleading Requirements under the PSLRA**

Under the Private Securities Litigation Reform Act of 1995 (PSLRA), which Congress passed to prevent the abuse of federal securities laws by private plaintiffs, the pleading

---

[9] *See, e.g.*, Dkt. #63, ¶¶ 59, 114, 155, 176–77 and pp. 16–17, 23, 26, 28, 31, 35.

requirements are even more stringent than those imposed under Rule 9(b)[10]. The Fifth Circuit has held that "[t]he PSLRA has raised the pleading bar even higher and enhances Rule 9(b)'s particularity requirement for pleading fraud in two ways." *Diodes*, at 956; *Indiana Elec. Workers Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir.2008). "First, the plaintiff must "specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading." *Id.* (citing 15 U.S.C. § 78u–4(b)(1)(B)). Second, "for 'each act or omission alleged' to be false or misleading, plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind.'" *Id*. (citing 15 U.S.C. § 78u–4(b)(2))." *See also*, *Fener v. Belo Corp*., 425 F. Supp. 2d 788, 795 (N.D. Tex. 2006) ("The PSLRA pleading standard for scienter is especially challenging for plaintiffs," citing *Plotkin, supra* at 696–97).

### D. Ban on Group Pleading

The Complaint relies throughout on "group pleading," lumping Holland in with the other Individual Defendants without even attempting to explain how Holland's individual conduct gives rise to liability. "[G]roup pleading ... is not permitted for PSLRA actions in our circuit." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006); *Fener, supra* at 796; *Coates v. Heartland Wireless Commnc'ns, Inc*., 26 F.Supp.2d 910, 915–17 (N.D.Tex.1998) (rejecting group pleading after enactment of PSLRA). Complaints "must distinguish among defendants and allege the role of each." *Fener*, at 796. This is because "[c]orporate officers are not liable for acts solely because they are officers, even where their day-to-day involvement in the corporation is pleaded." *Id*.

---

[10] Pub.L. 104–67, 109 Stat. 737, codified at 15 U.S.C. § 77z-1 and 15 U.S.C. § 78u-4.

### E. Special Standard for "Forward Looking" Statements in Securities Act Cases

The "bespeaks caution" doctrine can preclude liability when (1) forward-looking statements, such as financial projections, are (2) accompanied by meaningful cautionary language, which would alert the reasonable investor to consider those statements with healthy skepticism. *See In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.*, 7 F.3d 357, 371 (3d Cir. 1993). In the Fifth Circuit, forward-looking statements must be analyzed in context of any accompanying cautionary language, under the "total mix" test. *See Rubinstein v. Collins*, 20 F.3d 160, 167 & n.25 (5th Cir. 1994). Meaningful cautionary statements should include "specific, concrete explanations that clearly identif[y] and quantif[y] . . . clearly present financial dangers." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 247 (5th Cir. 2009). Such forward-looking statements do not, by themselves, support a claim under the Securities Act.

### IV.
### ARGUMENTS AND AUTHORITIES

The Complaint's counts against Holland must be dismissed for multiple reasons. Plaintiffs fail to allege sufficient facts to establish the Plaintiffs' standing to bring a claim under either Section 11 or Section 12(a)(2) of the Securities Act. The Complaint fails to plausibly allege a material false or misleading statement, a required element under the Securities Act, and its group pleading fails to include facts to show that Holland had any knowledge that any such statement was false. Finally, the Complaint does not allege a primary violation of the securities laws specifically by Holland or facts which would establish Holland's liability as a "control person."

### A. The Complaint Does Not Allege Standing to Assert a Claim under Section 11

Count I attempts to allege violations of Section 11 of the Securities Act by Holland. But the Complaint does not allege sufficient facts to establish the putative class members' standing to sue under Section 11's strict tracing requirements. Section 11 provides a cause of action for

purchasers of securities whose purchases can be traced to a specific, false registration statement. This means that the Section 11 claim must be dismissed unless the Complaint adequately alleges that each member of the class purchased new L Bonds, and did not merely hold renewed L Bonds, as of June 2020. The Complaint does not. Indeed, the Complaint concedes that its proposed class includes holders of "rolled over" and "reissued" L Bonds. Dkt. 63, ¶ 144.

Section 11 of the Securities Act only applies to a person acquiring "such security," 15 U.S.C. § 77k(a), which effectively provides standing only to "anyone who can 'trace' his shares to the challenged registration statement." *Krim v. PcOrder.com, Inc.*, 402 F.3d 489, 494–502 (5th Cir. 2005); *Rosenzweig*, 332 F.3d at 873; *see also, Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1440–41 (2023). The Complaint must go beyond conclusory allegations and provide factual specificity supporting a reasonable inference tracing a plaintiff's purchase to the allegedly false registration statement. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107–08 (9th Cir. 2013).

Count I of the Complaint does not meet these standards. The challenged registration statement was issued effective June of 2020. But GWG L-Bonds existed long before that and *automatically* renewed when they came due, even if during an open registration statement later in time.[11] Thus a purchaser acquiring the bonds in 2018 could not have made the purchase pursuant to the 2020 registration statement two years later, but is nevertheless included in the putative class for purposes of Count 1. Indeed, the Complaint is silent regarding which L Bonds within the proposed class were *new* L Bond purchases as opposed to automatic renewals, precluding class

---

[11]  Prospectus (December 1, 2017) at p. 5.

certification.[12]  A conclusory allegation that the bonds were purchased by all the proposed class members pursuant to the 2020 registration statement is not sufficient and factually impossible.

The Complaint is devoid of any factual allegations to plausibly show Plaintiffs to have performed the "often impossible" task of "trac[ing] the lineage of [their] shares to the new offering." *Barnes v. Osofsky*, 373 F.2d 269, 271–72 (2d Cir. 1967) (Friendly, J.); *see also Krim*, 402 F.3d at 498 (noting that "the fungible nature of stocks" makes tracing "virtually impossible"); *Century Aluminum*, 729 F.3d at 1106 (noting that tracing "is easier said than done"). Because Plaintiffs cannot satisfy the tracing requirement, Plaintiffs' Section 11 claim must be dismissed. *See Krim,* 402 F.3d at 491; *see also Slack*, 143 S. Ct. 1441– 42; *Century Aluminum*, 729 F.3d at 1107–08 (affirming dismissal of complaint where plaintiffs "allege[d], without more, that they 'purchased Century Aluminum common stock directly traceable to the Company's Secondary Offering'"); *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 14-cv-786, 2015 WL 927456, at *15–*17 (D. Minn. Mar. 4, 2015) (dismissing claim where plaintiffs "simply plead[ed] that the shares were purchased 'pursuant and/or traceable to' the misleading registration statement"); *Scott v. ZST Digital Networks, Inc.*, 896 F. Supp. 2d 877, 883 (C.D. Cal. 2012) (holding that "mere boilerplate allegations of traceability are insufficient").

**B.   The Complaint Does Not Allege Standing to Assert a Claim under Section 12(a)(2)**

Count III attempts to allege violations of Section 12(a)(2) of the Securities Act by Holland

---

[12]   FED. R. CIV. P. 23(b)(3) precludes certification where the complaint fails to aver sufficient facts to establish that the proposed class is sufficiently cohesive in its legal posture. That is impossible where, as here, an admittedly "unknown" portion of the bondholders plainly lack standing. The rule requires a proposed class representative to establish that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available means of adjudication. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009).  The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The conclusory allegation that "[c]ommon questions of law and fact exist as to all members of the [putative] Class," Dkt. 63, at 46, does not meet this requirement, especially where the Complaint on its face contradicts the cohesiveness element.

over the allegedly false June, 2020, Prospectus (June 5, 2020) issued by GWG. Dkt. 63, ¶¶ 172-179.  But the conclusory, group allegations in Count III fall far short of the requirements of § 12(a)(2), which by its clear terms only authorizes a claim against a party which actually passed title to the security to a plaintiff or directly solicited the purchase.  The Complaint does not supply any factual allega-tion to show how Holland did either.

Section 12(a)(2), codified at 15 U.S.C. § 77*l*(a)(2), only allows a claim against a "statutory seller" from which the plaintiff directly purchased a security. *Pinter v. Dahl*, 486 U.S. 622, 641–42 (1988).  As the Supreme Court has explained, this means that for a cause of action to arise against a particular defendant the Complaint must show that the defendant either (1) actually passed title to plaintiffs, or (2) was "'the person who successfully solicit[ed] the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner,' e.g., a *broker*."  *Id*. at 647; *Rosenzweig*, 332 F.3d at 871.  The Complaint itself establishes instead that Holland was not a "statutory seller" under § 12(a)(2), thus precluding standing against him by the putative plaintiff class.  The Complaint alleges that the putative class plaintiffs purchased L Bonds in GWG's offering, such that *GWG* passed title to the Plaintiffs, not Holland (or any other Individual Defendant).  *See* Dkt. 63 *passim*. The Complaint also alleges that the L Bonds sales were solicited by "a network of independent broker-dealers," not Holland or any Individual Defendant. *Id.* at 10-11.  The Complaint thus negates the facts necessary to establish that Holland constitutes a statutory seller necessary for standing to pursue a claim against Holland under § 12(a)(2).  The Complaint's contrary and conclusory allegation that "Defendants" solicited and sold the L Bonds, Dkt. 63, ¶¶ 175, does not fix the standing problem, running afoul of the *Twombly* plausibility standard, the PSLRA specificity requirement, and the Fifth Circuit's bar

11

against group pleading. *See Fener*, *supra* at 796 (complaints "must distinguish among defendants and allege the role of each").

The Complaint also attempts to allege "solicitation" through the group pleading allegation that the Individual Defendants "participat[ed] in the preparation, dissemination, and promotion in the preparation and circulation of the prospectus." Dkt. 63, ¶ 176. This group "participation" pleading gambit has been rejected by the Fifth Circuit. In *Rosenzweig* the court determined that the plaintiffs lacked standing in holding that solicitation under Section 12 was not alleged by virtue of individual defendants' having "signed the registration statement" and engaging in some kind of "concerted course of action" to market the securities. 332 F.3d at 871. To allege solicitation the complaint must, "at a minimum," allege specifically that a particular defendant "directly communicate[d] with the buyer" and must have "actively solicited" the sale, so that the defendant himself "became the vendor's agent." *Id.* (citing *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363 (5th Cir. 2001) and *Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628, 636 (3d Cir. 1989)); *see also, Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d at 636 (holding defendant could not be liable "on the basis of its involvement in preparing the prospectus"; such collateral "participation" is insufficient); *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 892 (S.D. Tex. 2002).

The *Rosenzweig* doctrine fully resolves this case for purposes of Count III. Bare allegations that a defendant signed a registration statement and allegedly "participated" in some undefined way in its preparation is insufficient per se to establish "solicitation" and therefore standing. For that reason, and because the Complaint fails to identify a single direct communication between any prospective class plaintiffs and Holland, or for that matter any Individual Defendant, the Count III Section 12(a)(2) claim must be dismissed for lack of standing.

**C. The Complaint Fails to Allege that a Statement in the Registration Statement was a False or Misleading Statement of Material Fact**

To adequately plead its Section 11 claim in Court I or its Section 12 claim in Count III, the Complaint must adequately allege a false or misleading statement or omission of material fact. A Section 11 claim requires adequate factual allegations that the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 894 (S.D. Tex. 2017), *aff'd*, 777 Fed. App'x 726 (5th Cir. 2019). Similarly, a Section 12(a)(2) claim requires adequate factual allegations that a prospectus contained an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading the purchaser not knowing of such untruth or omission." 15 U.S.C. §77*l*(a)(2); *In re Plains*, 245 F. Supp. 3d at 894.

Materiality requires allegations showing "a substantial likelihood that a reasonable investor would consider it important in making an investment decision." *In re Plains*, 245 F. Supp. 3d at 890. "[T]o fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (internal citations omitted). Moreover, "generalized, positive statements . . . are not actionable because they are immaterial." *Southland,* 365 F.3d at 372.

The Complaint alleges six instances of material misrepresentations or omissions in the June, 2020, registration statement: (1) that GWG's financial statements were not prepared in accordance with GAAP; (2) that GWG lacked adequate internal and financial controls; (3) that GWG's valuation of Ben was materially overstated; (4) that GWG materially misrepresented the

nature of Ben's business and its true financial condition; (5) that GWG's representations about the use of proceeds to repay Ben indebtedness were materially incomplete, misleading, and concealed related party transactions; and (6) that GWG's representations about the reasons for the resignation of several GWG directors before the effective date of the Registration Statement were materially misleading and false." Dkt. 63 at ¶ 154. But none of these issues constituted material misstatements or omissions, having been either fully disclosed in the Registration Statement, or relating to information that did not exist at the time the Registration Statement was filed, or not constituting a representation of fact to begin with.

**1. The Complaint Does Not Adequately Allege a Lack of GAAP Accounting in the Preparation of GWG's Financial Statements**

Aside from the bare conclusory allegation that GWG's financial statements "were not prepared in accordance with GAAP [Generally Accepted Accounting Principles]," Dkt. 63 ¶ 154, the Complaint actually demonstrates that GAAP *was* employed by GWG's accounting firms throughout the relevant time period. The theory apparently advanced by the Complaint is that the correction or revision of past accounting classifications of certain assets by GWG's outside accounting firm, adhering to GAAP standards, amounts somehow to a *rejection* or disregard of GAAP accounting by GWG. *See* Dkt. 63 ¶¶ 14, 19, 90, 97, and 99. But a voluntary "restatement of earnings, without more, does not support a strong inference of fraud, or for that matter, a weak one." *In re Segue Software, Inc.*, 106 F. Supp. 2d 161, 169 (D. Mass. 2000); *see also, In re Anadarko Petrol. Corp. Class Action Litig.,* 957 F. Supp. 2d 806, 824 (S.D. Tex. 2013) (holding that the presence of an isolated control breakdown does not create an inference that broader company statements about its overall controls were misleading). In any event, the issue of adherence to GAAP by GWG's accountants does not supply a sufficient factual basis to support Counts I and III against Holland, for whom the Complaint alleges nothing to establish knowledge

of arcane GAAP accounting principles or any misstatements in financial statements or registration statements, participation in the preparation of the financial statements, or personal solicitation of L Bond sales to investors. The Complaint's conclusory group pleading on GAAP compliance based on the 2020 Restatement does not support any basis for liability of Holland under either Counts I or III.

**2. The Complaint Does Not Adequately Allege that Holland Violated Sections 11 or 12 Through Any Misstatement of GWG's Internal Controls in the Registration Statement**

Without identifying any relevant culpable conduct by Holland, the Complaint alleges that the June, 2020, Registration Statement "materially misrepresented GWG's internal controls over financial reporting as effective." Dkt. 63 at ¶ 99. But the Complaint also reveals that the previous financial statement as of December 31, 2019, was prepared upon the audit of accounting firm Whitley Penn—an audit which did not identify any internal control issues. Dkt. 63 ¶¶ 165-166. Further, the Complaint contains no allegations relating to Holland's involvement, or lack of involvement, in the audit or its conclusions, and no allegations that would supply any basis for reasonably inferring that Holland had reason to question Whitley Penn's professional conclusions.

The Complaint shows on its face that any failure by the outside accountants to identify internal control issues does not provide adequate grounds to state a claim for which relief can be granted against Holland. The Complaint fails to adequately allege facts which would tend to show the statements were known by Holland to be false *when made*. *See Krim v. BancTexas Grp., Inc.,* 989 F.2d 1435, 1446 (5th Cir. 1993) (no liability under Sections 11 or 12 where no facts showing that "the information allegedly omitted or misrepresented was known to [the defendant] at the time the prospectus was prepared and disseminated, or at the time [the investor] purchased his securities"); *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn,* 53 F.

15

Supp. 3d 882, 909 (E.D. La. 2014). This principle applies fully to alleged misstatements related to internal control failures. *See Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 397 (S.D. N.Y. 2022) (dismissing Section 11 claims based on alleged omission of internal controls weaknesses in registration statement because "[p]laintiff allege[d] no facts suggesting that [defendant] knew or should have known about the internal control weaknesses at the time of the IPO").

The Complaint establishes that the sufficiency of internal controls at GWG was assessed by the company's outside accounting firm and fails to aver any facts from which to infer that Holland had contemporaneous personal knowledge that the accounting firm's conclusions were not accurate. For this reason alone, any alleged misstatement regarding internal controls in the June, 2020, Registration Statement provides no basis for liability as to Holland.

3. **The Complaint Does Not Adequately Allege a Violation of Sections 11 or 12 by Holland for Materially Overstated Valuation of Ben by GWG**

The Complaint attempts to allege that GWG misstated Ben's financial performance and goodwill, resulting in a "failure to disclose" that "the valuation of Ben was materially overstated" in the June 2020 Registration Statement. Dkt. 63 at ¶ 154; see also, ¶ ¶ 83, 91. The Complaint alleges that "Ben's business and prospects did not justify these [goodwill] valuations. . . If Ben had any value at all, its value was only fraction of the inflated value ascribed to it." *Id*. at ¶ 91. But the Complaint fails to adequately allege that Ben was indeed overvalued or, even if it was, how Holland could have omitted the disclosure of a misstatement of value *at the time the statements were made*, or how any statement of opinion is actionable under Sections 11 or 12.

The Plaintiffs' assertions of overvaluation stem in part from the change in presentation of the "ExAlt loans" in the Restatement, allegedly causing Ben's financial performance and assets to be misstated. *See* Dkt. 63 at ¶ 83. But the accounting presentation GWG had adopted prior to the

Restatement was based on GAAP, the professional conclusions of multiple accounting firms, and supported by audits of multiple accounting firms.[13] For example, independent CPA firm Whitley Penn provided the following certification:

> We have audited the accompanying consolidated balance sheet of [GWG] as of December 31, 2019, and the related consolidated statements of operations, changes in stockholders' equity, and cash flows for the year ended December 31, 2019, and the related notes (collectively referred to as the "consolidated financial statements"). In our opinion, ***the consolidated financial statements present fairly, in all material respects, the financial position of [GWG]*** as of December 31, 2019, and the results of their operations and their cash flows for the year ended December 31, 2019, in conformity with accounting principles generally accepted in the United States of America.[14]

Just as with the alleged misstatement of internal controls, *see supra*, at 15, the Complaint provides no factual allegations by which it could be reasonably inferred that Holland had knowledge of any mistake in the accountants' valuations at the time the Registration Statement was prepared and issued or at the time a particular plaintiff purchased L Bonds.  An essential element of a claim under Sections 11 or 12 is "that the information allegedly omitted from the prospectus was known to the issuer at the time the prospectus was distributed." *BancTexas,* 989 F.2d at 1445 (no liability under Sections 11 or 12  where no facts showing  that "the information allegedly omitted or misrepresented was known to [the defendant] at the time the prospectus was prepared and disseminated, or at the time [the investor] purchased his securities"); *see also Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1224–25 (11th Cir. 2022) ("Aside from cursorily alleging that [Defendant] knew the statements were materially false or misleading, [Plaintiff] failed to allege any facts suggesting [Defendant's] actual knowledge of the statements' falsity."); *see also Edgar v. Anadarko Petroleum Corp.*, No. 17-1372, 2018 WL 3032573, at 13 (S.D. Tex. June 19, 2018).

---

[13]  *See* GWG Annual Report (Form 10-K) (2019), at F-1–F-3; GWG Current Report (Form 8-K) (Sept. 17, 2020) at p. 1. GWG, Annual Report (Form 10-K) (2019), at F-1.

[14] GWG, Annual Report (Form 10-K) (2019), at F-1 (emphasis added).

*Bulmahn*, 53 F. Supp. 3d at 909 (granting motion to dismiss where alleged misstatements were "reasonable when made" and finding "defendants had no obligation to provide updated figures until the issuance of" the next Form 10-K);  For this reason, a statement "made by management in a prospectus, even if in hindsight it is shown to have been incorrect" does not give rise to liability under Sections 11 or 12 "as long it was made or reaffirmed with a reasonable basis in fact and in good faith." *BancTexas*, 989 F.2d at 1446. The Complaint supplies no facts from which a contemporaneous lack of good faith could be reasonably inferred.

The alleged omission of the claimed overvaluation of Ben's goodwill suffers from other fatal pleading defects as well.  First, the Restatement did not show that goodwill was inflated; instead, the record shows that the restated goodwill (as of December 31, 2019) was actually *higher*, not lower, than originally reported.[15] Thus, the Restatement did not reveal any material misstatement, misrepresentation, or omission regarding goodwill.  *See Doe v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 653 F. Supp.3d 359, 370 (S.D. Tex. 2023); *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013) (refusing to accept as true factual allegations that were contradicted by the plaintiff's charging documents, which the defendant had attached to its motion to dismiss).

Second, the estimates of Ben's goodwill[16] are statements of opinion.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017)

---

[15]  *Compare* GWG Annual Report (Form 10-K) (2019) at F-4 (showing goodwill valued at $2,358,005,000), *with* GWG, Annual Report (Form 10-K) (2020) at F-6 (showing goodwill valued at $$2,367,750,000).

[16]  The Compliant concedes that Ben's goodwill value is simply a function of Ben's fair value—indeed, the two values are directly correlated. Dkt. ¶ 87.  Under the relevant accounting standards, there are multiple different methods that can be used to calculate the fair value of a reporting unit. *See* Fin. Accounting Standards Board, Accounting Standards Codification 820 - Fair Value Measurement, available at https://asc.fasb.org/820/showallinonepage (last visited Jan. 4, 2024). Any discrepancy in enterprise valuation (and thereby goodwill valuation) here is merely the result of the use of different permissible methods.

(affirming grant of motion to dismiss securities fraud claim because plaintiff failed to allege the actual assumptions defendants relied on in conducting their goodwill valuation analysis); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) ("Estimates of goodwill depend on management's determination of the 'fair value' of the assets acquired and liabilities assumed, which are not matters of objective fact."); *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 666–68 (D. N.J. 2021) (noting that multiple courts have found that determining the "fair value" of a company's assets, including its goodwill, is an "inherently subjective" process).

That the Complaint's inflated-goodwill allegations are insufficient to support its claims under Sections 11 and 12 is confirmed by the Supreme Court's holding in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*, 575 U.S. 175, 186 (2015). The *Omnicare* Court noted that "a statement of opinion is not misleading just because external facts show the opinion to be incorrect. Reasonable investors do not understand such statements as guarantees, and § 11's omissions clause therefore does not treat them that way." *Id*. at 188. The Court held that an opinion statement is only actionable under the Securities Act if: (1) the speaker did not hold the belief professed, (2) the supporting facts supplied were untrue, or (3) the stated opinion, though sincerely held and otherwise true as a matter of fact, omitted information whose omission made the stated opinion misleading to a reasonable investor. *Id.* at 186. Specifically, said the Court, "[t]he investor must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context. That is no small task for an investor." *Id*. at 194.

Plaintiffs have not and cannot satisfy this standard. GWG expressly described how it calculated its fair value and goodwill, warned investors that those valuations were "based on

estimates and assumptions," and disclosed various risks that could require future goodwill impairment.[17]   The Complaint does not even plead facts showing that the supporting facts underlying the fair value of Ben and the resultant goodwill calculation were untrue.   Instead, the Complaint summarily points to the Restatement in its attempt to show the falsity of the underlying facts. Dkt. 63 at ¶ 91.   But the Restatement just reflects the change in presentation under GAAP principles, and did not negatively impact the underlying goodwill calculation.   *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F.Supp.3d 155, 172 (S.D. N.Y. 2015) ("In the absence of a restatement or allegations pointing to objective facts that [d]efendants' accounting methods violated GAAP, carping about [d]efendants' application of GAAP amounts ... d[id] not permit the [c]ourt to infer that the [d]efendants committed accounting fraud."). Thus, the Complaint does not plead sufficient facts to show that the Registration Statement contained material misrepresentations regarding Ben's goodwill valuation.

4.   **The Complaint Does Not Adequately Allege that GWG Materially Misrepresented the Nature of Ben's Business and its True Financial Condition**

The Complaint alleges that the Registration Statement falsely portrayed Ben's business model as being a lender, when Ben was "actually an investor" because Ben's "primary tangible assets were the alternative assets themselves, not loans receivable." Dkt. 63 at ¶ 69, further asserting that GWG "conceded" in the Restatement that the Registration Statement contained false

---

[17] Moreover, the Registration Statement made clear that the goodwill valuation was subject to change based on any number of factors. *See* GWG Annual Report (Form 10-K) (2019) at pp. 11, 26, 40, 50, F-20, F-22, F-23; *see also* Notes to Ben's Consolidated Financial Statements (attached to the 2019 10-K) at pp. 11, 23. Prospectus (June 5, 2020) at p. 5  For instance, the Prospectus disclosed that, should facts and circumstances change, the goodwill or other identifiable intangible assets may be impaired, "*an interim impairment test would be required*."   Further, the Prospectus detailed that a goodwill evaluation "*includes multiple assumptions, including estimated discounted cash flows and other estimates that may change over time*." GWG Annual Report (Form 10-K) (2019), Exhibit 99.4 at p. 27.  GWG's (and Ben's) goodwill was subject to regular impairment testing, supported by third party valuations, and was never impaired. GWG Annual Report (Form 10-K) (2020).

representations regarding Ben's core business. Dkt. #63 ¶ 76. These allegations do not plausibly support a claim against Holland under Section 11 or Section 12 because they are negated by the record and do not further allege facts to plausibly show that Holland could have known of any such falsity at the time the Registration Statement was prepared and filed.

The nature of Ben's business was fully disclosed in its financial statements and SEC filings prior to the Restatement. The Restatement merely clarified the change in accounting presentations under GAAP. The financial statements were restated to consolidate the "ExAlt Trusts," but this was not a material change in presentation. Ben was and remained a lender, and the exact mechanics of Ben's business model were described fully and accurately in GWG's SEC filings: Ben made loans to the ExAlt Trusts, the ExAlt Trusts contemporaneously used the proceeds to acquire interests in alternative assets from customers that own alternative assets, and then the ExAlt Trusts repaid the loans to Ben with the cash flows from the alternative assets as collateral.[18] Upon consolidation of the ExAlt Trusts, the loans receivable and fees receivable no longer appeared on the face of the financial statements, but the effect of such presentation was to *increase*, rather than decrease, total assets and stockholder equity, making such reclassification immaterial.[19]

GWG expressly disclosed to investors that it was changing the presentation to instead present the loans receivable and explained its reasoning for doing so *before* the plaintiffs invested under the Registration Statement, when it disclosed:

> Due to the deconsolidation of the trusts included in the ExAlt Plan™ as of December 31, 2019, the loans receivable between BCC and certain trusts included in the ExAlt PlanTM became Ben's primary reported asset…. In addition, the comparative period on the statement of financial condition of December 31, 2018, is not comparable as the loans were not presented on that statement due to the consolidation of certain trusts included within the ExAlt PlanTM. As a result,

---

[18] GWG Annual Statement (Form 10-K) (2019) at pp. 10, 70, F-9, and F-18; *see also* Notes to Ben's Consolidated Financial Statements (attached to the 2019 10-K) at pp. 7, 20, 26.

[19] GWG Annual Report (Form 10-K) (2020) at F-70.

Ben's statement of financial condition as of December 31, 2018 presented investments in senior beneficial interests instead of loans receivable. Refer to Note 10 for further discussion of the investments in senior beneficial interests…. As of December 31, 2019, due to the deconsolidation of these trusts, Ben's consolidated financial statements no longer report the investments in senior beneficial interests held by the Collective Trusts. Prior to the deconsolidation, the Company held investments in senior beneficial interests in each LiquidTrust that has been established.[20]

Thus GWG made investors aware of the alternative way in which Ben's assets could have been and had been presented on the balance sheet, such that no investor could be misled prior to the Restatement, especially considering that the effect of the Restatement was to increase, rather than decrease, total assets and stockholder equity.

Ben's business was described in detail such that an investor would have known prior to the Restatement that Ben's business was predicated on the cash flows from alternative assets. For example:[21]

- "GWG Holdings conducts its life insurance secondary market business *through a wholly owned subsidiary,* GWG Life, and GWG Life's wholly owned subsidiaries, Life Trust and DLP IV. GWG Holdings' indirect interests *in loans collateralized by cash flows from other alternative assets are held by Ben LP*[.]"

- "[Ben] *operates primarily through its subsidiaries.*"

- Ben "began its *alternative asset business* in September 2017."

- "In 2018 and 2019 we consummated a series of transactions with [Ben] that has resulted in a *significant reorientation of our business and capital allocation strategy towards an expansive and diverse exposure to alternative assets.*"

The alleged misstatement regarding the nature of Ben's business is negated by the documents referenced by the Complaint and therefore fails to support the claim. *Basic Inc.*, 485 U.S. at 231–32; *Flaherty*, 565 F.3d at 207; *In re Plains*, 245 F. Supp. 3d at 894; *see also In re*

---

[20] Notes to Ben's Consolidated Financial Statements (attached to the 2019 10-K) at p. 26.

[21] GWG Annual Report (Form 10-K) (2019), at p. 2 (emphases added); Prospectus at pp. 1.

*Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 669 (S.D. Tex. 2021) (dismissing Section 11 claim for failure to adequately plead material misrepresentation). *See also*, *Carter, supra,* at 417 (dismissing allegations contradicted by the documentary record).[22]

### 5. The Complaint's Assertion of Misleading Representations About the Use of Proceeds to Repay Ben Indebtedness is Contradicted by the Record

The Complaint asserts that "GWG's representations about the use of proceeds to repay Ben indebtedness were materially incomplete, misleading, and concealed related party transactions." Dkt. 663, ¶ 154. More specifically, it alleges that GWG "failed to disclose that a portion of the funds that Ben paid to its lender was subsequently transferred to entities affiliated with [Brad] Heppner." Dkt. 63 at ¶ 15.

Yet again, the Plaintiffs' own record refutes its contentions. GWG fully disclosed prior payments to parties associated with certain Individual Defendants and the potential use of L Bond proceeds to pay obligations owed to such parties:

> [GWG] intend[s] to use the net proceeds from this offering to grow [GWG's] alternative asset exposure, including through investments in [Ben] . . . **[Ben] will have broad discretion to use the proceeds of any such investments and may use such proceeds to** fund alternative asset financings, to **repay indebtedness, *including to related parties***, and for general working capital purposes, including operating expenses."[23]

---

[22] Similarly, the Complaint also alleges, Dkt. 63 at ¶ 71, that "GWG did not disclose that substantially all of Ben's portfolio was acquired through the deal with Paul Capital, and not as a result of Ben's deployment of 'innovative liquidity solutions . . . designed to serve mid-to-high net worth ('MHNW') individuals, small-to-mid sized ('STM') institutions, and asset managers" to "access early liquidity from their alternative assets.' But again, the 2019 10-K *does* expressly disclose this when it says that Ben "plans" to "provide mid-to-high net worth individuals with trust services and related liquidity products," but that, "to date, Ben LP's originations of liquidity products have been transacted with a limited number of family offices, fund-of-funds and institutions. These types of clients, specifically fund-of-funds and institutions, may not represent the target market of Ben's liquidity products in the future." GWG Annual Report (Form 10-K) (2019) at p. 26; *see also* Notes to Ben's Consolidated Financial Statements (attached to the 2019 10-K) at pp. 17-18; 31; 45; 48.

[23] Prospectus (June 5, 2020), at Cover Page (emphasis added); *see also id*. at p. 9.

GWG had expressly disclosed Mr. Heppner's associations with various entities, prior payments to such entities, and that L Bond proceeds could be used to repay Ben's senior lenders and/or other parties associated with Mr. Heppner. This included detailed disclosure of the amounts paid to the Senior Lenders,[24] that "[t]he Senior Lenders are directly or indirectly associated with Brad K. Heppner, who is Chairman of the Company's Board of Directors,"[25] and that "'Related Entities' are defined as certain trusts and those entities held by such trusts that are controlled by Beneficient's founder [Mr. Heppner] and in which Beneficient's founder and his family members are also among classes of economic beneficiaries whether or not Beneficient's founder is entitled to economic distributions from such trusts. Beneficient's founder is also chairman of the board of directors of GWG Holdings."[26]

The Complaint's claim that the Registration Statement misled investors regarding the use of proceeds and related party transactions is simply false, as conclusively shown by the very documentary record cited by the Plaintiffs. These assertions, like so many other contradicted claims in the Complaint, must be disregarded. *See Basic Inc.*, 485 U.S. at 231–32; *Flaherty*, 565 F.3d at 207; *In re Plains*, 245 F. Supp. 3d at 894; *see also In re Venator*, 547 F. Supp. 3d at 669. *See also*, *Carter, supra,* at 417 (dismissing allegations contradicted by the documentary record). The representations in the Registration Statement also include forward-looking statements, which are not actionable. *See* discussion *supra*, at 8.

6. **The Complaint's Allegation that the Registration Statement Mischaracterized the Resignations of Several Directors Is Contradicted by the Record and Does Not State or Support a Claim Under Sections 11 or 12**

---

[24] 2019 10-K at p. 32 of the notes to Ben's consolidated financial statements (attached to the 2019 10-K).

[25] GWG Annual Report (Form 10-K) (2019) at p. 90 and F-30.

[26] GWG Annual Report (Form 10-K) (2019) at F-19.

The Complaint asserts that "GWG's representations about the reasons for the resignation of several GWG directors before the effective date of the Registration Statement were materially misleading and false." Dkt. 63 ¶ 154. Those representations, the Complaint says, were that "four members of the Board of Directors resigned as directors of the Company, and the size of the Board of Directors was reduced from 14 to ten directors in order to facilitate the Board of Directors' ability to oversee the Company's operations in an efficient and effective manner." Dkt. 63 at ¶ 114. This allegation is contradicted by the record and in any event would not give rise to an actionable claim under the Securities Act, and therefore cannot be "material."

The resignations of four directors in October of 2019 were properly disclosed in GWG's October 21, 2019 Form 8-K:

> As a result of discussions among members of the Board of Directors (the "Board") of [GWG] and based in part on a determination that a Board comprised of fewer directors would facilitate that Board's ability to oversee future [GWG] activities in an efficient and effective manner, Messrs. Richard W. Fisher, David H. Glaser, Sheldon I. Stein and Bruce E. Zimmerman resigned from the Board and the size of the Board was reduced from 14 to ten directors.[27]

Even so, GWG was not required to disclose the circumstances surrounding the resignations. The SEC requires registrants to describe the circumstances of a director's resignation when he or she resigned "because of a disagreement with the registrant… on any matter related to the registrant's operations, policies or practices." *See* Form 8-K, item 5.02. But none of the four directors disagreed with the characterization that a downsizing of the board would better facilitate oversight of the company's activities. Further, Item 5.02 requires the director furnish a letter "stating whether he or she agrees with the statements made by the registrant in response to this item 5.02, and, if not, stating the respects in which he or she does not agree." Item 5.02(a)(3)(ii). GWG would

---

[27] GWG Current Report (Form 8-K) (Oct. 21, 2019).

then be required to file such letter from the director. Item 5.02(a)(3)(iii). None of the directors who resigned provided a letter disagreeing with the characterization of their resignations, and certainly did not clarify that their resignations were attributable to "disagreements with GWG management," as the Complaint alleges.

In any event, this allegation would not constitute a material omission or misstatement to support the claims against Holland under the Securities Act. Garden variety corporate mismanagement has been held not actionable under the federal securities laws, *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977), and a failure to disclose every misjudgment or internal squabble about corporate governance cannot support a claim for a material omission. *See Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1242 (M.D. Fla. 2002) ("[C]ourts generally hold that the failure to disclose possible corporate mismanagement does not state a federal securities law claim."); *see also Fitzer v. Sec. Dynamic Techs., Inc*., 119 F. Supp. 2d 12, 31 (D. Mass. 2000) ("[P]oor management is a risk that every investor takes. Damages flowing therefrom are not actionable under the securities laws.").

**D.** **The Complaint Wholly Fails to State a Claim Against Holland Under Section 15 for "Control Person" Liability**

In a classic demonstration of the hazards of group pleading, Count IV of the Complaint attempts to invoke the "control person" theory of liability codified in Section 15 of the Securities Act, 15 U.S.C. § 77o. Without naming Holland specifically, the Complaint asserts the legal conclusion that "[t]he Individual Defendants were controlling persons of GWG by virtue of their positions as Directors or senior officers of GWG." Dkt. 63 ¶ 183. This is so, the Complaint says, because this group of defendants had some totally undescribed "series of direct or indirect business or personal relationships with other Directors or officers or major shareholders of GWG" and "participated in the operation and management of GWG, and conducted and participated, directly

and indirectly, in the conduct of GWG's business affairs." *Id.* Count IV also asserts that all of the Individual Defendants, as a group, "within the scope of their positions … directly or indirectly, controlled the statements made in, signed, or agreed to be named in the Registration Statement." Id. ¶ 185.

These allegations do not begin to comply with the minimal pleading requirements of Section 15. The Fifth Circuit has held that, to support control-person liability, a plaintiff "must at least show that the defendant had an ability to control the *specific* transaction or activity upon which the primary violation is based." *Heck v Triche*, 775 F.3d 265, 283 (5th Cir. 2014) (internal citations omitted, emphasis added).

The Fifth Circuit has also held that "control over day-to-day operations is not facial evidence of control over a primary violation." *Ahders v. SEI Private Tr. Co.*, 982 F.3d 312, 317 (5th Cir. 2020). To adequately plead a claim for control person liability, "a plaintiff must allege some facts beyond a defendant's position or title that show the defendant had actual power or control over the controlled person." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 380 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 Fed. Appx. 334 (5th Cir. 2012); *see also Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990) (holding that defendant's status as a director was not sufficient to make him a controlling person); *In re Pilgrim's Pride Corp. Sec. Litig.*, No. 2:08-CV419-TJW, 2010 WL 3257369, at *33 (E.D. Tex. Aug. 17, 2010) ("[A] plaintiff needs to allege some facts beyond a defendant's position or title that show the defendant had actual power or control over the controlled person."). The Complaint does not allege facts that could satisfy the specificity standard for control, and Count IV should be dismissed for this reason alone.

Count IV is also subject to dismissal for failure of the Complaint to allege a primary

violation. Section 15 provides that "anyone who controls persons liable under § 11 or § 12 of the Securities Act can be held jointly and severally liable to the same extent as the persons they control." 15 U.S.C. § 77o. To allege control-person liability under the Securities Act, Plaintiffs must adequately allege both a primary violation of § 11 or § 12 and the defendant's control over the primary violator. *Southland*, 365 F.3d at 383 ("Control person liability is secondary only and cannot exist in the absence of a primary violation."). Control-person liability under section 15 is thus "secondary or derivative, dependent on the plaintiff demonstrating an underlying 'primary' violation." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 618 (S.D. Tex. 2018). Since the Complaint fails to allege a primary violation, their secondary-liability claims should be dismissed as well. *Southland*, 365 F.3d at 383–84.

## V.
## CONCLUSION

Defendant Murray Holland respectfully requests the Court **GRANT** this Motion and **DISMISS** Plaintiffs' claims against him with prejudice.

Respectfully Submitted,

By: _/s/ S. Michael McColloch_

S. MICHAEL MCCOLLOCH, PLLC
**S. Michael McColloch**
E-mail: smm@mccolloch-law.com
Phone: 214.643.6055
KAREN COOK, PLLC
**Karen L. Cook**
E-mail: karen@karencooklaw.com
Phone: 214.643.6054

6060 N. Central Expressway, Suite 500
Dallas, Texas 75206

ATTORNEYS FOR DEFENDANT
MURRAY HOLLAND

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 4, 2024, the foregoing document was filed with the Clerk for the United States District Court for the Northern District of Texas using the CM/ECF electronic filing system, and that service of such filing will be made electronically on all counsel of record.

By: */s/ Karen Cook*
Karen Cook, Esq.