UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE GWG HOLDINGS, INC. SECURITIES LITIGATION | § § § § § § § § § CIVIL ACTION NO. 3:22-CV-0410-B |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Brad K. Heppner, Peter T. Cangany, Jr., Thomas O. Hicks, Dennis P. Lockhart, Bruce W. Schnitzer, and Beneficient Company Group, L.P. (collectively, the "Ben Defendants")'s Motion to Dismiss (Doc. 68), Defendant Roy W. Bailey's Motion to Dismiss (Doc. 89), Defendants David F. Chavenson and David H. de Weese's Motion to Dismiss (Doc. 90), Defendant Timothy L. Evans's Motion to Dismiss (Doc. 94), and Defendant Murray T. Holland's Motion to Dismiss (Doc. 95).[1] For the reasons discussed below, the Court **GRANTS** the Moving[2] Defendants' Motions to Dismiss and **DISMISSES WITHOUT PREJUDICE** Counts I, III, and IV of Lead Plaintiff Frank Moore's[3] Consolidated Class Action Complaint ("CCAC"). Moore may file an Amended CCAC within **twenty-one (21)** days of this Order.

---

[1] Defendant Whitley Penn LLC ("Whitley Penn") filed a Motion to Dismiss (Doc. 91) Count II of the CCAC that the Court does not address in this Order because the Motion was previously withdrawn, Doc. 105, Order, and the parties have since filed a Motion for Preliminary Approval of Settlement (Doc. 127).

[2] The Court refers to the Ben Defendants, Bailey, Chavenson, de Weese, Evans, and Holland collectively as the "Moving Defendants."

[3] Moore is the only remaining Lead Plaintiff after Lead Plaintiff Thomas Horton voluntarily dismissed his claims. Doc. 126, Notice Dismissal.

I.

BACKGROUND[4]

This is a putative securities class action arising out of GWG Holdings, Inc. ("GWG")'s issuance of bonds on the public market. Until 2018, GWG's business model primarily focused on purchasing life insurance policies. Doc. 63, CCAC, ¶ 2. But GWG also raised money by offering a series of bonds ("L Bonds") to investors. *Id.* Before issuing a security on the public market, an entity must file a Registration Statement with the SEC. 15 U.S.C. § 77e(c). The Registration Statement must include certain information about the issuer and the offered security. *See id.* § 77aa. Over the years, GWG offered L Bonds to investors that were issued pursuant to multiple Registration Statements. Doc. 63, CCAC, ¶ 2. One such Registration Statement was issued in December 2017, and investors purchased L Bonds issued pursuant to the 2017 Registration Statement through the third quarter of 2020. Doc. 111, Ex. A, GWG November 2020 Form 10-Q, 28.[5]

In 2018, GWG partnered with the Beneficient Company Group, L.P. ("Ben"). Doc. 63, CCAC, ¶ 2. Ben provided services to entities who held illiquid assets and loaned money to various trusts that would then invest in "alternative assets." *Id.* ¶¶ 6, 10. In June 2020, GWG offered a new series of L Bonds to investors, which entailed filing a 2020 Registration Statement with the SEC. *Id.*

---

[4] The Court derives the factual background from Moore's CCAC, documents that Moore references in the CCAC, and GWG Holdings, Inc. ("GWG")'s SEC filings. "[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (citation omitted). The Court takes judicial notice of GWG's SEC filings. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 n.1 (5th Cir. 1996).

[5] GWG filed its November Form 10-Q with the SEC, and Moore referenced this form in the CCAC. Doc. 63, CCAC, ¶ 125. Thus, the Court can consider this Form when ruling on the present motions to dismiss. *See Innova Hosp. San Antonio*, 892 F.3d at 726; *see also Izadjoo v. Helix Energy Sols. Grp.*, 237 F. Supp. 3d 492, 518 n.8 (S.D. Tex. 2017) (taking judicial notice of the defendant's form 10-Q).

¶ 5. These L Bonds were "sold through participating dealers and licensed financial advisors and representatives." *Id.* ¶ 55. While GWG did not prohibit investors from later re-selling their L Bonds, GWG did warn investors that it would be difficult to later re-sell their bonds because the company did not anticipate a public market for the L Bonds to develop. GWG Holdings, Inc., 2,000,000 Units of L Bonds (Prospectus) (June 3, 2020) at vii.

Moore purchased two sets of L Bonds that were issued by GWG. Doc. 63, CCAC, ¶ 25. Moore purchased one set of L Bonds on September 1, 2020, and another set of L Bonds on or around January 1, 2021. *Id.* Moore alleges that the L Bonds he acquired were issued pursuant to the 2020 Registration Statement. *Id.*; *see also* Doc. 63, Moore Certification, 58. Moore alleges that GWG's 2020 Registration Statement contains several material misstatements and omissions, all in violation of federal securities law. Doc. 63, CCAC, ¶ 154. However, he does not allege that GWG's 2017 Registration Statement, or any other Registration Statement, contained any misstatements or omissions. *See id.*

The Court previously consolidated two putative securities class action lawsuits. Doc. 61, Mem. Op. & Order, 1. The CCAC contains four counts. The Moving Defendants have moved to dismiss Counts I, III, and IV, which are the only counts asserted against them. *See generally* Docs. 68, 89, 90, 94–95 Mots. Dismiss. Count I is brought under § 11 of the Securities Act of 1933, 15 U.S.C. § 77k. Doc. 63, CCAC, ¶ 150. Count III is brought under § 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2). *Id.* ¶ 173. Lastly, Count IV is brought under § 15 of the Securities Act of 1933, 15 U.S.C. § 77o. *Id.* ¶ 181. The Court considers the Motions below.

II.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration in original) (citation omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration omitted) (citation omitted).

III.

ANALYSIS

The Court concludes that Moore has failed to establish he has statutory standing to assert claims under §§ 11 and 12 of the Securities Act. And because § 15 of the Securities Act requires Moore to have a viable claim under either § 11 or § 12, the Court likewise concludes he failed to state a claim under § 15 of the Securities Act. The Court does not address any of the Moving Defendants' other grounds for dismissal because the Court concludes Moore lacks statutory standing. However, the Court will grant Moore leave to amend to address the deficiencies identified in this Order.

A.     *Moore Failed to Establish Statutory Standing for His § 11 Claim.*

Defendants move to dismiss Moore's § 11 claim, arguing that Moore has failed to adequately plead statutory standing. Doc. 68, Mot., 7–8. While the Fifth Circuit has previously affirmed a district court dismissing a case for lack of subject-matter jurisdiction when a plaintiff lacked statutory standing under § 11 of the Securities Act, *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 493–94 (5th Cir. 2005), the Fifth Circuit has since explained in the context of a different statute that "a motion to dismiss for lack of statutory standing is analyzed under Rule 12(b)(6), not Rule 12(b)(1)." *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 339 (5th Cir. 2021). Accordingly, the Court considers whether Moore has statutory standing under Rule 12(b)(6). *See Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008) ("[W]hether or not a particular cause of action authorizes an injured plaintiff to sue is a merits question . . . not a jurisdictional question.").

Section 11 of the Securities Act creates liability for anyone who "public[ly] offer[s] . . . securities pursuant to a false registration statement." *Krim*, 402 F.3d at 495 (citing 15 U.S.C.

§ 77k(a)). But § 11 only confers statutory standing "to the 'narrow class of persons' consisting of 'those who purchase securities that are the direct subject of the prospectus and registration statement.'" *Id.* (quoting *Fischman v. Raytheon Mfg. Co.*, 188 F.2d 783, 786–87 (2d Cir. 1951)). To survive a motion to dismiss, a plaintiff must "plead . . . that he purchased [securities] traceable to the allegedly defective registration statement." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023). This means that § 11 of the Securities Act only confers statutory standing to plaintiffs who can properly "trace" their securities, here the L Bonds, to the specific Registration Statement containing the alleged misrepresentations. *See id.*

The "tracing" requirement presents additional difficulties in cases, such as this one, where a company has issued the same type of security under multiple Registration Statements. *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013); *see also Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *4 (S.D. Tex. July 6, 2016). In such cases, the plaintiff must allege facts sufficient for the Court to draw the reasonable inference that the plaintiff purchased securities issued under the Registration Statement containing the alleged misrepresentations, rather than an earlier Registration Statement without the alleged misrepresentations. *See Johnson*, 2016 WL 3654657, at *5. In other words, it is not enough for Moore to allege that he acquired L Bonds issued by GWG. Instead, Moore needs to allege that his specific L Bonds were issued under GWG's 2020 Registration Statement—*not* any of GWG's earlier Registration Statements.

Plaintiffs generally establish statutory standing if they either "(1) bought directly from the issuer or underwriter in the initial offering, or (2) made an aftermarket purchase and can 'trace their shares to the faulty registration' at issue." *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp.

2d 151, 159 (N.D. Tex. 2007) (Godbey, J.) (citing *Krim*, 402 F.3d at 495–96). Moore has failed to establish statutory standing as necessary to maintain his § 11 claim under either method. The only facts that Moore presented to the Court regarding his purchases of the L Bonds are that he acquired some L Bonds on September 1, 2020, and that he acquired additional L Bonds on January 1, 2021. Doc. 63, CCAC, ¶¶ 24–25; *see also* Doc. 63, Moore Certification, 58. These allegations do not permit the reasonable inference that Moore's L Bonds were issued pursuant to the 2020 Registration Statement. As a result, Moore has not properly pled that he has statutory standing to assert his § 11 claim.

First, Moore fails to explain where he purchased the L Bonds—i.e., directly from GWG's broker-dealer in the initial offering or from an after-market seller on the secondary market. Without alleging where he purchased his L Bonds, the Court cannot draw the reasonable inference that these L Bonds are traceable to the 2020 Registration Statement. *See Congregation of Ezra Sholom*, 504 F. Supp. 2d at 159. Based on the pleadings, Moore could be an aftermarket purchaser, which would mean he might have purchased L Bonds that were issued pursuant to one of GWG's earlier Registration Statements, as opposed to the 2020 Registration Statement, which is the only Registration Statement containing the alleged misrepresentations. *See id.* Thus, Moore has failed to plead that his L Bonds are traceable to GWG's 2020 Registration Statement. *See Slack Techs.*, 598 U.S. at 770.

Second, even if the Court assumed that Moore purchased his L Bonds directly from GWG, it is not entirely clear whether Moore included sufficient allegations to trace the L Bonds he purchased on September 1, 2020, to the 2020 Registration Statement. According to GWG's SEC filings, GWG offered L Bonds pursuant to two registrations in 2020: the 2017 Registration

Statement and the 2020 Registration Statement. Doc. 111, Ex. A, GWG November 2020 Form 10-Q, 28. Importantly, investors had not purchased every L Bond from the 2017 Registration Statement until the third quarter of 2020, meaning investors purchased 2017 L Bonds potentially as late as September 2020.[6] *Id.* Thus, the L Bonds that Moore acquired on September 1, 2020, might have been issued under GWG's 2017 Registration Statement, even if he purchased these bonds directly from GWG. *See Johnson*, 2016 WL 3654657, at *5. In the event there were two outstanding Registration Statements as of September 1, 2020, Moore has not included any additional allegations to trace the L Bonds he purchased in September 2020 to the 2020 Registration Statement.

While Moore alleges he "acquired L Bonds pursuant to the Registration Statement[,]" Doc. 63, CCAC, ¶ 158, a mere conclusory allegation that a plaintiff purchased securities that were issued pursuant to the Registration Statement in dispute is insufficient to establish statutory standing for his § 11 claim. *See Johnson*, 2016 WL 3654657, at *5 (concluding that a plaintiff failed to plausibly establish statutory standing by alleging he purchased shares issued pursuant to one registration statement when that security had previously been issued under multiple Registration Statements); *see also Century Aluminum*, 729 F.3d at 1107–08.

Moore also argues in his Response to the Motions to Dismiss that he has statutory standing because "there was no secondary market" for L Bonds and that he "acquired L Bonds directly from GWG." Doc. 100, Resp., 12. However, neither assertion is supported by the pleadings. Moore failed to plead where or how he acquired his L Bonds in his original pleadings, Doc. 63, CCAC, ¶¶ 24–25; *see* Doc. 63, Moore Certification, 58–59, meaning that the CCAC does not stand for the

---

[6] The Court notes that GWG's Form 10-Q says that the company sold the last of its 2017 L Bonds in the third quarter of 2020, but this form does not establish *exactly* when the last 2017 L Bond was sold. *See* Doc. 111, Ex. A, GWG November 2020 Form 10-Q, 28. So, it is not clear whether GWG was still selling 2017 L Bonds when Moore purchased his L Bonds in September 2020.

proposition that he "acquired L Bonds directly from GWG." Thus, any allegation that Moore purchased L Bonds directly from GWG in the offering is not properly before the Court. *See Coach, Inc. v. Angela's Boutique*, No. CIV.A. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011) ("New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings."). In addition, GWG told investors that it did not "expect a public trading market to develop for the L Bonds in the foreseeable future . . . [and] it is unlikely that holders will be able to sell their [L] bonds easily." GWG Holdings, Inc., 2,000,000 Units of L Bonds (Prospectus) (June 3, 2020) at vii. However, that GWG acknowledged that it would be difficult for its investors to later re-sell their L Bonds does not mean that no secondary market ever developed, much less establish that Moore was not an aftermarket purchaser. Thus, these arguments fail to trace any of Moore's L Bonds to the 2020 Registration Statement.

In sum, the Court is unable to draw the reasonable inference that Moore purchased L Bonds that were issued pursuant to the 2020 Registration Statement. Moore must "plead . . . that he purchased shares traceable to the allegedly defective registration statement." *Slack Techs.*, 598 U.S. at 770. Merely alleging that he acquired the L Bonds, without including *any* additional facts addressing where he purchased the bonds, fails to meet this standard. Accordingly, the Court grants the Moving Defendants' Motions to Dismiss Count I of the CCAC.

B.   *Moore Failed to Establish Statutory Standing for His § 12 Claim.*

Moore also failed to establish statutory standing as necessary to assert his claims under § 12(a)(2) of the Securities Act. Section 12 of the Securities Act creates civil liability for any seller who sells a security with a prospectus containing a material misstatement or omission. 15 U.S.C. § 77*l*(a)(2). This liability, however, is limited to defendants who are "sellers" under the statute, which

"includes either the person who actually passes the title to the buyer, or 'the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner,' *e.g.*, a broker." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) (quoting *Pinter v. Dahl*, 486 U.S. 622, 647 (1988)). Thus, Moore only has statutory standing under § 12(a)(2) if he properly alleges that the Moving Defendants are statutory sellers. *See id.*

Each of the Moving Defendants argues that Moore does not have statutory standing because he has not included sufficient allegations to establish that they are sellers under § 12(a)(2). Doc. 68, Mot., 8–9; Doc. 89, Mot., 2; Doc. 90, Mot., 1 n.1; Doc. 94, Mot., 9; Doc. 95, Mot., 11. Moore effectively concedes as much because the Response only includes a request for leave to amend his § 12 claim, as opposed to rebutting the arguments raised in the Motions to Dismiss. Doc. 100, Resp., 50. Thus, the Court concludes that Moore has failed to allege sufficient facts to establish statutory standing under § 12. *Cf. Doe v. Siddiqui*, No. 3:17-CV-01869-N, 2018 WL 3956292, at *4 (N.D. Tex. Aug. 17, 2018) (Godbey, J.) (granting a motion to dismiss when a plaintiff failed to respond to the defendant's motion arguing the claims should be dismissed). Therefore, the Court grants the Moving Defendants' Motions to Dismiss Count III of the CCAC.

C.      *Moore Failed to State a Claim Under § 15 of the Securities Act.*

Section 15 of the Securities Act provides that "[e]very person who . . . controls any person liable under [Sections 11 or 12] of this title, shall also be liable jointly and severally with and to the same extent as such controlled person." 15 U.S.C. § 77o(a). Thus, "[t]o allege control person liability under § 15, the plaintiff must allege both a primary violation of § 11 or § 12 and the defendant's control over the primary violator." *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 674 (N.D. Tex. 2013) (Boyle, J.). Because Moore has failed to allege a primary violation under either § 11 or

§ 12, he has also failed to state a claim for a violation of § 15. *See id.*; *see also In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 643 (S.D. Tex. 2018), *aff'd on other grounds sub nom. Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019) (dismissing a § 15 claim because the plaintiffs did not have standing to assert either a § 11 or a § 12 claim). Therefore, the Court grants the Moving Defendants' Motions to Dismiss Count IV of the CCAC.

D.  *The Court Grants Moore Leave to Amend the CCAC.*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 566 (5th Cir. 2003).

When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citations and emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

The Court will grant Moore leave to amend his §§ 11, 12, and 15 claims. Moore failed to

allege sufficient facts to establish statutory standing, but this deficiency does not appear to be incurable. *See Great Plains Tr.*, 313 F.3d at 329. Accordingly, the Court grants Moore leave to amend to remedy the deficiencies discussed in this Order.

## V.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Ben Defendants' Motion to Dismiss (Doc. 68), Bailey's Motion to Dismiss (Doc. 89), Chavenson's and de Weese's Motion to Dismiss (Doc. 90), Evans's Motion to Dismiss (Doc. 94), and Holland's Motion to Dismiss (Doc. 95). Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Counts I, III, and IV of Moore's CCAC. Moore may file an amended complaint within **twenty-one (21)** days of this Order.

**SO ORDERED**.

**SIGNED:** October 24, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE