# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE GWG HOLDINGS, INC. SECURITIES LITIGATION** | § § § § § § § | **Civil Action No. 3:22-cv-00410-B** |
| | § | **CLASS ACTION** |
| ———————————————— | § § | |
| **This Document Relates To: All Actions** | § § § | |

## LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF SETTLEMENT NOTICE

## TABLE OF CONTENTS

CONTENTS OF APPENDIX..................................................................................................... vii

I.      INTRODUCTION ........................................................................................................ 1

II.     SUMMARY OF SETTLEMENT TERMS..................................................................... 2

III.    PROCEDURAL HISTORY............................................................................................ 4

IV.     THE COURT SHOULD DIRECT NOTICE TO THE SETTLEMENT CLASS.............. 5

        A.      The Proposed Class Meets the Requirements for Certification for the
                Purpose of Settlement. ............................................................................. 5

                1.      The Requirements of Rules 23(a) and 23(b)(3) Are Satisfied in
                        Connection with the Proposed Settlement .................................... 5

                2.      The Class Is Sufficiently Numerous ............................................. 6

                3.      Commonality Is Satisfied............................................................. 6

                4.      Lead Plaintiff's Claims Are Typical of the Class ....................... 6

                5.      The Adequacy Requirement Is Met .............................................. 6

                6.      The Class Satisfies Rule 23(b)(3)'s Requirements ..................... 7

                        a.      Common Issues Predominate......................................... 7

                        b.      A Class Action Is Superior ........................................... 8

        B.      The Settlement Is Fair, Reasonable, and Adequate and Satisfies Rule 23(e)
                and the Fifth Circuit's *Reed* Factors. ....................................................... 8

                1.      The Settlement Terms.................................................................. 8

                2.      The Applicable Factors for Preliminary Approval ...................... 9

                        a.      Adequate Representation of the Class ......................... 11

                        b.      Arm's Length Negotiations and Absence of Collusion ............... 11

                        c.      The Relief Provided to the Class Is Adequate in Light of
                                the Costs, Significant Risks, and Delay of Trial and Appeal........ 13

                                i.      Risks in Proving Liability and Damages, and in
                                        Certifying a Class.............................................. 13

                        d.      The Complexity, Expense, and Likely Duration of This
                                Action................................................................ 14

i

|   |   | e. | The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery ................................................. 14 |

e.    The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery ................................................. 14

f.    The Opinion of Class Counsel ....................................................... 15

3.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors................ 16

a.    Attorneys' Fees ............................................................................. 16

b.    Supplemental Agreements ............................................................ 17

c.    Class Members Are Treated Equitably Under the Proposed Distribution Plan ........................................................................... 18

C.    The Proposed Forms and Methods of Notice Are Adequate. .............................. 21

V.    PROPOSED SCHEDULE OF EVENTS......................................................................... 24

VI.    CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*
572 F.3d 221 (5th Cir. 2009) ................................................................ 13

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) ................................................................... 7, 8

*Angell v. GEICO Advantage Ins. Co.*
67 F.4th 727 (5th Cir. 2023) ............................................................ 6

*Armstrong v. Kimberly-Clark Corp.*
2024 WL 1123034 (N.D. Tex. Mar. 14, 2024) ............................... 10, 16, 22

*Baron v. HyreCar Inc.*
2024 WL 3504234 (C.D. Cal. July 19, 2024) ................................... 23

*Blackmon v. Zachary Holdings, Inc.*
2022 WL 3142362 (W.D. Tex. Aug. 5, 2022) ................................ 10, 14

*C.C. & L.C. v. Baylor Scott & White Health*
2022 WL 4477316 (E.D. Tex. Sept. 26, 2022) ................................. 11

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*
2015 WL 965693 (W.D. La. Mar. 3, 2015) .................................. 16, 18

*Cunningham v. Brown*
265 U.S. 1 (1924) ...................................................................... 21

*Erica P. John Fund, Inc. v. Halliburton Co.*
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .................................. 17

*Estakhrian v. Obenstine*
2016 WL 6517052 (C.D. Cal. Feb. 16, 2016) .................................. 17

*Garcia v. Matson*
2022 WL 6935303 (5th Cir. Oct. 12, 2022) ................................. 10, 14

*In re Alta Mesa Res., Inc.*
2022 WL 17586710 (Bankr. S.D. Tex. Dec. 12, 2022) ....................... 18

*In re Beacon Assocs. Litig.*
2013 WL 2450960 (S.D.N.Y. May 9, 2013) .................................... 20

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*
2017 WL 2608243 (S.D. Tex. June 15, 2017) ................................... 8

*In re Deepwater Horizon*
739 F.3d 790 (5th Cir. 2014) .......................................................... 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
  2013 WL 12333442 (N.D. Cal. Jan. 8, 2013)
  *R&R adopted sub nom*, 2014 WL 12879520 (N.D. Cal. June 27, 2014) ................................ 20

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*
  2008 WL 4178151 (S.D. Tex. Sept. 8, 2008) .................................................................. 19

*In re Enron Corp. Sec., Derivative & ERISA Litig.*
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ........................................................................... 15

*In re HealthSouth Corp. Sec. Litig.*
  334 F. App'x 248 (11th Cir. 2009) ................................................................................. 18

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................................................ 14

*In re Ins. Brokerage Antitrust Litig.*
  2009 WL 411877 (D.N.J. Feb. 17, 2009) ....................................................................... 20

*In re Kosmos Energy Ltd. Sec. Litig.*
  299 F.R.D. 133 (N.D. Tex. 2014) .................................................................................. 15

*In re Nissan Motor Corp. Antitrust Litig.*
  552 F.2d 1088 (5th Cir. 1977) ....................................................................................... 21

*In re OGA Charters, L.L.C.*
  901 F.3d 599 (5th Cir. 2018) ......................................................................................... 18

*In re Reliant Sec. Litig.*
  2005 WL 8152605 (S.D. Tex. Feb. 18, 2005) .................................................................. 7

*In re Shell Oil Refinery*
  155 F.R.D. 552 (E.D. La. 1993) ..................................................................................... 19

*In re Skelaxin (Metaxalone) Antitrust Litig.*
  2015 WL 1486709 (E.D. Tenn. Mar. 31, 2015) ............................................................... 18

*In re Taubman*
  160 B.R. 964 (Bankr. S.D. Ohio 1993) ........................................................................... 21

*Kostka v. Dickey's Barbecue Restaurants, Inc.*
  2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ...................................................... 7, 8, 9, 16

*Manchaca v. Chater*
  927 F. Supp. 962 (E.D. Tex. 1996) ................................................................................ 12

*Marcus v. J.C. Penney Co., Inc.*
  2017 WL 6590976 (E.D. Tex. Dec. 18, 2017)
  *R&R adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) ................................................ 18

*Matson v. NIBCO Inc.*
  2021 WL 4895915 (W.D. Tex. Oct. 20, 2021) ........................................................ 14

*McNamara v. Bre-X Minerals Ltd.*
  214 F.R.D. 424 (E.D. Tex. 2002) ............................................................................. 5

*McNamara v. Felderhof*
  410 F.3d 277 (5th Cir. 2005) ................................................................................ 13

*Neely v. Intrusion Inc.*
  2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ................................ 11, 12, 17, 19

*Newby v. Enron Corp.*
  394 F.3d 296 (5th Cir. 2004) ................................................................................ 10

*ODonnell v. Harris Cnty., Texas*
  2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ...................................... 5, 10, 14, 16

*Pettway v. Am. Cast Iron Pipe Co.*
  576 F.2d 1157 (5th Cir. 1978) .............................................................................. 16

*Poff v. PHH Mortg. Corp.*
  2023 WL 11983790 (S.D. Tex. Apr. 18, 2023) ..................................................... 13

*Prause v. TechnipFMC, PLC*
  2020 WL 3549686 (S.D. Tex. Mar. 9, 2020) ......................................................... 7

*Reed v. Gen. Motors Corp.*
  703 F.2d 170 (5th Cir. 1983) ...................................................................... 10, 13, 16

*S.E.C. v. Forex Asset Mgmt. LLC*
  242 F.3d 325 (5th Cir. 2001) ................................................................................ 19

*Schwartz v. TXU Corp.*
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................................... 8, 17

*SEC v. Faulkner*
  2020 WL 2042339 (N.D. Tex. Apr. 28, 2020) ...................................................... 21

*SEC v. Quan*
  870 F.3d 754 (8th Cir. 2017) ................................................................................ 18

*Shen v. Exela Techs., Inc.*
  2023 WL 8518901 (N.D. Tex. Dec. 7, 2023) ........................................................ 17

*Stirman v. Exxon Corp.*
  280 F.3d 554 (5th Cir. 2002) .................................................................................. 6

*Stott v. Cap. Fin. Servs., Inc.*
  277 F.R.D. 316 (N.D. Tex. 2011) ......................................................................... 19

*Sullivan v. DB Invs., Inc.*
667 F.3d 273 (3d Cir. 2011)..................................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*
564 U.S. 338 (2011) ................................................................................................. 7

*Welsh v. Navy Fed. Credit Union*
2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ...................................................... 11

**Statutes**

15 U.S.C. §77z-1(a)(7)............................................................................................... 22

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

## CONTENTS OF APPENDIX

In accordance with Local Rule 7.1(i), Lead Plaintiff submits an Appendix with materials that he relies on in support of his Motion for Preliminary Approval. When citing these materials in his brief, Lead Plaintiff uses the original pagination. For ease of reference, the table below also shows the beginning "App." page number as stamped on each document.

| DOCUMENT | PAGES |
|---|---|
| Settlement Agreement | App. 2 – 48 |
| Ex. A to Settlement Agreement: Directors' and Officers' Liability Insurance Policies | App. 49 – 51 |
| Ex. B to Settlement Agreement: Proofs of Claim Filed in the Bankruptcy Case | App. 52 – 53 |
| Ex. C to Settlement Agreement: Bankruptcy Approval Order | App. 54 – 58 |
| Ex. D to Settlement Agreement: [Proposed] Order Preliminarily Approving Settlement with Defendants Bradley K. Heppner, Peter T. Cangany, Jr., Thomas O. Hicks, Dennis P. Lockhart, Bruce W. Schnitzer, Roy W. Bailey, David F. Chavenson, David H. de Weese, Timothy L. Evans, Murray T. Holland, and The Beneficient Company Group, L.P. | App. 59 – 76 |
| Ex. E to Settlement Agreement: [Proposed] Final Judgment and Order of Dismissal with Prejudice of Defendants Bradley K. Heppner, Peter T. Cangany, Jr., Thomas O. Hicks, Dennis P. Lockhart, Bruce W. Schnitzer, Roy W. Bailey, David F. Chavenson, David H. de Weese, Timothy L. Evans, Murray T. Holland, and The Beneficient Company Group, L.P. | App. 77 – 84 |
| Ex. F to Settlement Agreement: Motion of Litigation Trustee and Settling Defendants for Entry of Bar Order in Connection with Settlement of Adversary Proceeding | App. 85 – 109 |
| Ex. G to Settlement Agreement: Notice of (I) Pendency of Class Action and Proposed Settlements; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Expenses | App. 110 – 127 |
| Ex. H to Settlement Agreement: Summary Notice of (I) Pendency of Class Action and Proposed Settlements; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Expenses | App. 128 – 131 |

| | |
|---|---|
| Supplemental Opt-Out Contingency Agreement | App. 132 – 139 |
| Declaration of Justin R. Hughes in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement | App. 140 – 144 |

## I.    INTRODUCTION

Lead Plaintiff Frank Moore ("Lead Plaintiff")[1] respectfully submits this memorandum in support of his motion for preliminary approval of a settlement (the "Settlement") with Defendants Bradley K. Heppner, Peter T. Cangany, Jr., Thomas O. Hicks, Dennis P. Lockhart, Bruce W. Schnitzer, Roy W. Bailey, David F. Chavenson, David H. de Weese, Timothy L. Evans, Murray T. Holland, and The Beneficient Company Group, L.P. (collectively, "GWG Defendants").  The Settlement was reached after extensive research and negotiations under the auspices of two experienced Court-appointed mediators and bears all the indicia of a fair and just resolution of sharply disputed claims.

At the preliminary approval stage of settlement of a class action under Rule 23, the Court is asked to find that the Class is likely to be certified under Rules 23(a) and 23(b)(3), and to preliminarily approve the Settlement under Rule 23(e) and the Fifth Circuit's standards. As set forth below, the proposed Settlement satisfies the requirements for preliminary approval. In addition, the proposed forms of notice—which would notify Class Members of the proposed Settlement with the GWG Defendants and of the proposed settlement with Defendant Whitley Penn LLP ("Whitley Penn Settlement") that the Court preliminarily approved on December 12, 2024 (Doc. 139)—meet all applicable requirements.

Lead Plaintiff therefore respectfully requests the Court to: (1) find that the Class is likely to be certified for settlement purposes only; (2) approve the proposed forms and methods of notice to be provided to the Class for the settlements; (3) preliminarily approve the Settlement

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Agreement (defined below). *See* Appendix in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement ("App.") at App. 2-48.  Citations are omitted and emphasis is added throughout unless otherwise noted.

with the GWG Defendants; (4) approve the proposed Distribution Plan for the Net Settlement

Fund; (5) designate Frank Moore as the representative of the Class for settlement purposes only;

and (6) appoint Girard Sharp LLP and Malmfeldt Law Group P.C. as counsel for the Class for

purposes of the Settlement.

## II.     SUMMARY OF SETTLEMENT TERMS

As set forth in the Settlement Agreement dated March 6, 2025 (the "Agreement"), the

Settlement provides for a cash payment of at least fifty million, five hundred thousand dollars

($50,500,000) ("Settlement Amount"). In addition to finally resolving this case, the Settlement

would resolve all claims against Persons covered by the applicable directors' and officers' liability

insurance policies ("D&O Policies") that the trustee of the GWG Litigation Trust ("Trustee"),

appointed in GWG's bankruptcy proceeding ("Bankruptcy Case"), has asserted in a related

adversary proceeding ("Trust Action") pending in the United States Bankruptcy Court for the

Southern District of Texas ("Bankruptcy Court").[2] Many but not all of the GWG Defendants are

also defendants in the Trust Action, which includes additional parties not named as defendants in

this class action (the "Class Action"). As set forth in more detail in the Agreement, the Settlement

is contingent upon final approval by both this Court and the Bankruptcy Court.

The Settlement resulted from the parties' ultimate acceptance of a final mediators'

proposal by the Hon. W. Royal Furgeson (Ret.) and David Murphy after approximately 18

months of hard-fought negotiations. The Settlement will exhaust the remaining limits under the

D&O Policies, less a reserve to cover the costs of documenting the Settlement and obtaining the

---

[2] The Bankruptcy Case is styled, *In re GWG Holdings, Inc., et al.*, No. 22-90032 (MI) (Bankr. S.D. Tex.); the Trust Action is styled, *Goldberg v. Heppner, et al.*, Adv. Pro. No. 24-03090 (MI) (Bankr. S.D. Tex.).

necessary Court approvals as well as coverage available to the Insureds in connection with certain pending or threatened legal matters.[3] Unused policy proceeds in excess of $250,000 will be contributed to the Settlement Fund as additional settlement consideration.

The Distribution Plan calls for the Net Settlement Fund to be distributed to holders of Allowed Claims in accordance with the confirmation order ("Confirmation Order")[4] entered in the Bankruptcy Case. The Confirmation Order provides in relevant part that recoveries will be distributed to all L Bondholders, such that all L Bondholders will participate in the distribution. In addition to saving on distribution expenses, the Distribution Plan maximizes the recovery to Class Members, as any alternative could reduce or eliminate Class Members' recovery, as the estate and the Class compete to be the first to judgment and the remaining insurance dwindles. Class Members face the prospect of a pyrrhic victory if the available insurance is exhausted to pay defense costs or worse if the case is lost at class certification or on a dispositive motion. The Distribution Plan is also consistent with the position maintained by the defendants in the Class Action and the Trust Action: anything short of a global settlement disposing of both cases is a non-starter, as it will deplete the insurance without fully resolving the pending litigation. Lead Plaintiff and his counsel believe the Settlement is a win for investors and any alternative will lead to a reduced recovery or more likely none at all.

---

[3] As of the first week of December 2024, the estimated amount remaining under the applicable D&O Policies above the Settlement Amount was in the range of approximately $27-30 million. Any defense costs incurred by insured parties since that time will reduce that reserve.

[4] The Confirmation Order was entered in the Bankruptcy Case on June 20, 2023. *See* Findings of Fact, Conclusions of Law, and Order Confirming Debtors' Further Modified Second Amended Joint Chapter 11 Plan, *In re GWG Holdings, Inc., et al.*, No. 22-90032 (MI) (Bankr. S.D. Tex.), Doc. 1952 (June 20, 2023).

## III.    PROCEDURAL HISTORY

Lead Plaintiff respectfully refers the Court to his motion for preliminary approval of the Whitley Penn Settlement for a summary of the procedural background of the litigation and mediation efforts.  *See* Doc. 127 at pp. 11-13 of 36.  As relevant to the Settlement, the Trust Action was filed in the Bankruptcy Court on April 19, 2024, by Trustee Michael I. Goldberg. Some but not all of the GWG Defendants are also named in the Trust Action.  On August 29, 2024 and November 4, 2024, the Trust Action Defendants filed motions to dismiss the complaint filed in the Trust Action (Trust Action, Docs. 61-62, 104, 110-11, 113-15, 117); the Trustee filed his response brief on November 25, 2024 (Trust Action, Doc. 132); and certain Trust Action Defendants filed their reply brief on December 13, 2024 (Trust Action, Doc. 138).

On October 24, 2024, the Court entered an order granting GWG Defendants' motions to dismiss and permitting Lead Plaintiff to file an amended complaint within 21 days of the order. Doc. 129. Lead Plaintiff filed a First Amended Consolidated Class Action Complaint ("Amended Complaint") on November 14, 2024. Doc. 131. The Court also entered an order setting a hearing for Lead Plaintiff's motion for preliminary approval of settlement with Whitley Penn for December 11, 2024. Doc. 130.

On December 12, 2024, after the hearing on the preliminary approval motion, the Court entered an order preliminarily approving the Whitley Penn Settlement. Doc. 139. The Court's preliminary approval order requires Lead Plaintiff, within 150 days of entry of the order, to, *inter alia,* submit a proposed form of notice to Class Members, a proposed plan of allocation (relating to the Whitley Penn settlement), and a motion for final approval of settlement. Doc. 139.

On December 26, 2024, Lead Plaintiff filed an agreed motion notifying the Court that the parties have agreed in principle to settle the claims against the GWG Defendants, and requested that the Court vacate the date for responses to the Amended Complaint and order a 90-day stay

of the claims against the GWG Defendants, to allow the parties to memorialize their agreement and submit their settlement for preliminary approval. Doc. 140. On December 27, 2024, the Court granted the motion. Doc. 141.

## IV.    THE COURT SHOULD DIRECT NOTICE TO THE SETTLEMENT CLASS

Pursuant to Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal" before granting final approval to a proposed settlement. Fed. R. Civ. P. 23(e)(1). "The court must consider whether 'giving notice is justified by the parties' showing that the court will likely be able to [finally] approve the proposal under Rule 23(e)(2).'" *ODonnell v. Harris Cnty., Texas*, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)) (alteration in original).

The proposed Class, as defined in the Agreement, is identical to the settlement class that the Court preliminarily certified in its December 12, 2024 order in connection with the Whitley Penn Settlement. Doc. 139. Because the Court is likely to be able to finally approve the proposed Settlement under Rule 23(e)(2), the Court should preliminarily certify the proposed Class for purposes of providing notice of the Settlement and Whitley Penn Settlement to Class Members. *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002).

### A.    The Proposed Class Meets the Requirements for Certification for the Purpose of Settlement.

#### 1.    The Requirements of Rules 23(a) and 23(b)(3) Are Satisfied in Connection with the Proposed Settlement

Because the Court has already found that the Class satisfies the requirements of Rules 23(a) and (b)(3) in granting preliminary approval of the Whitley Penn Settlement, and the Court's conclusions apply equally to the claims against the GWG Defendants, Lead Plaintiff will only briefly discuss each factor. Doc. 139 at 4 ("Specifically, the Court finds that each element

required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met or will likely be met . . . .").

### 2. The Class Is Sufficiently Numerous

Numerosity is satisfied because the Court has found that "the members of the Settlement Class are so numerous that their joinder in the Consolidated Action would be impracticable." Doc. 139 at 4; *see* Fed. R. Civ. P. 23(a)(1).

### 3. Commonality Is Satisfied

"To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). Here, "there are questions of law and fact common to the Settlement Class which predominate over any individual questions[.]" Doc. 139 at 4.

### 4. Lead Plaintiff's Claims Are Typical of the Class

Typicality under Rule 23(a)(3) requires the class representative's claims to "have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002)). "[T]he claims of Lead Plaintiff in the Consolidated Action are typical of the claims of the Settlement Class[.]" Doc. 139 at 4.

### 5. The Adequacy Requirement Is Met

Rule 23(a)(4)'s adequacy prong requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As this Court has found, "Lead Plaintiff and Class Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class." Doc. 139 at 4.

6

### 6.    The Class Satisfies Rule 23(b)(3)'s Requirements

Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Kostka v. Dickey's Barbecue Restaurants, Inc.*, 2022 WL 16821685, at *8-9 (N.D. Tex. Oct. 14, 2022) (addressing predominance requirement). The proposed Class satisfies these requirements.

### a.    Common Issues Predominate

Predominance exists when plaintiff's claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Importantly, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the claims of Lead Plaintiff and all other Class Members turn on the central question of whether the Registration Statement contained materially false statements and omissions in violation of Section 11 of the Securities Act of 1933 ("Securities Act"). For this reason, common issues predominate. *See* Doc. 139 at 4 (finding that common issues predominate); *see also In re Reliant Sec. Litig.*, 2005 WL 8152605, at *9 (S.D. Tex. Feb. 18, 2005) ("[T]he Court finds that the major issues in this case, as in most Section 11 cases, include whether material misrepresentations and/or omissions were made in the registration statement . . . and whether Defendants are liable . . . ."); *Prause v. TechnipFMC, PLC*, 2020 WL 3549686, at *7 (S.D. Tex. Mar. 9, 2020) (finding predominance met with respect to Section 11 claims);

*Schwartz v. TXU Corp.*, 2005 WL 3148350, at *15 (N.D. Tex. Nov. 8, 2005) (finding predominance met in securities class action settlement).

Thus, pursuant to Rule 23(b)(3), the proposed Class is "sufficiently cohesive to warrant adjudication by representation" and predominance is established. *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243, at *4 (S.D. Tex. June 15, 2017) (quoting *Amchem*, 521 U.S. at 623).

### b.      A Class Action Is Superior

"Because this is a proposed settlement class, issues relating to the manageability of a class trial are irrelevant." *Kostka*, 2022 WL 16821685, at *8 (citation omitted). In this case, "a class action is superior to other available methods for the fair and efficient adjudication of the Consolidated Action." Doc. 139 at 4.

### B.      The Settlement Is Fair, Reasonable, and Adequate and Satisfies Rule 23(e) and the Fifth Circuit's *Reed* Factors.

### 1.      The Settlement Terms

The Settlement requires the GWG Defendants' Insurers to pay fifty million, five hundred thousand dollars ($50,500,000) into an escrow account maintained by the Trustee or Wind Down Trustee within thirty (30) days following the latest of (i) entry of the Bankruptcy Approval Order by the Bankruptcy Court, (ii) entry of this Court's order preliminarily approving the Settlement with GWG Defendants ("Preliminary Approval Order"), or (iii) the Insurers' receipt of acceptable payment instructions and a W-9 form for the escrow account. This amount, plus all accrued interest, will make up the Settlement Fund. In addition, and as set forth in more detail in the Agreement, any portion of the insurance not applied towards the Settlement or ongoing legal proceedings and final litigation will be added to the Settlement Fund.

Class Counsel intends to apply under Rule 23(h) for an award of attorneys' fees of $8,484,000, representing 16.8% of the $50.5 million Settlement Fund,[5] and repayment of the expenses and charges attributable to the prosecution of the action not to exceed $500,000; and any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  Pursuant to an *ex ante* agreement with the trustee, Trust Counsel will receive a separate payment of attorneys' fees from the Settlement Fund of $9,191,000, together with repayment of expenses and a proportionate share of any interest accrued on the Settlement Fund, such that total attorneys' fees, including Class Counsel's attorneys' fees, deducted from the Settlement Fund will not exceed 35%.  The attorneys' fee allocation between Class Counsel and Trust Counsel was reached through arm's length negotiation.

In exchange for the benefits the Settlement provides, Class Members will release any and all Released Class Action Claims[6] against the GWG Defendants and the Released Class Action Defendants Releasees. Lead Plaintiff believes and respectfully submits that the Settlement is a favorable result, falls within the range of reasonableness, and therefore warrants preliminary approval.

## 2.    The Applicable Factors for Preliminary Approval

"If a court preliminarily certifies the class, it then moves to the preliminary fairness evaluation." *Kostka*, 2022 WL 16821685, at *2.  Under Rule 23(e)(1), the question before the Court for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which governs final approval of a class action settlement. Fed. R.

---

[5] Class Counsel also intends to apply under Rule 23(h) for an award of attorneys' fees of $135,000, in connection with the Whitley Penn Settlement.  This amount represents 30% of the settlement amount ($450,000) under the Whitley Penn Settlement.

[6] Agreement, ¶ 1.oo (App. 16-17).

Civ. P. 23(e)(1)(B). The Court, therefore, makes a preliminary assessment under the standards governing final approval, which is whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). To make this determination, the Court must consider the factors under Rule 23(e)(2); *see Blackmon v. Zachary Holdings, Inc.*, 2022 WL 3142362, at *3 (W.D. Tex. Aug. 5, 2022) (identifying Rule 23(e)(2) factors).

In addition, the Fifth Circuit has established a six-pronged test, which includes certain factors that overlap with the Rule 23(e)(2) factors, to be applied to the approval of class settlements:

1.    the assurance that there is no fraud or collusion behind the settlement;

2.    the stage of the proceedings and the amount of discovery completed;

3.    the probability of plaintiff's success on the merits;

4.    the range of possible recovery;

5.    the complexity, expense, and likely duration of the litigation; and

6.    the opinions of class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004). "Because the Rule 23 and case-law [*Reed*] factors overlap, courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019); *see, e.g., Garcia v. Matson*, 2022 WL 6935303, at *3 (5th Cir. Oct. 12, 2022) (noting district court "engaged with both the Rule 23(e)(2) and *Reed* factors"); *Armstrong v. Kimberly-Clark Corp.*, 2024 WL 1123034, at *4 (N.D. Tex. Mar. 14, 2024) (discussing *Reed* factors and Rule 23(e)(2) together). When examined under these factors, this Settlement is a fair result for the Class, particularly since it avoids the risk, delay and expense of a trial as well as the possibility there will be no recovery at all in view of

the significant risk of dismissal at the pleading or summary judgment stage and the certainty that ongoing litigation will quickly deplete the remaining insurance.

### a.    Adequate Representation of the Class

As discussed above, Lead Plaintiff is an adequate representative of the Class because he is an "investor who suffered the same alleged injuries as the other class members" so "[h]is motivations are therefore aligned with the other class members, reducing the likelihood of a conflict of interest" and because he has "actively participated in the case[.]" *Neely v. Intrusion Inc.*, 2022 WL 17736350, at *3 (E.D. Tex. Dec. 16, 2022). Class Counsel are also adequate because they have diligently pursued the claims asserted in this case for over three years, including investigating claims, briefing motions to dismiss, and participating in mediation. *See id.* at *4.

### b.    Arm's Length Negotiations and Absence of Collusion

"The Court may 'presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.'" *C.C. & L.C. v. Baylor Scott & White Health*, 2022 WL 4477316, at *3 (E.D. Tex. Sept. 26, 2022) (quoting *Welsh v. Navy Fed. Credit Union*, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018)). No fraud or collusion is behind the Settlement, satisfying Rule 23(e)(2)(B) (arm's length negotiations) and the first *Reed* factor (no fraud or collusion behind settlement).

Class Counsel have pragmatically assessed the strengths and weaknesses of Lead Plaintiff's claims against the GWG Defendants after conducting a thorough investigation of the facts, both before and during the course of the action, by reviewing and analyzing voluminous public and non-public documents, including, *inter alia*, public filings of GWG; public filings of Ben; case documents in the related Bankruptcy Case; case documents in the related Trust Action; and correspondence between and among the employees, officers and directors of GWG and Ben.

11

Moreover, Lead Plaintiff retained accounting consultants to assist in evaluating his claims before the filing of the consolidated class action complaint. In short, Class Counsel had a "full understanding of the legal and factual issues surrounding [the] case[.]" *Neely*, 2022 WL 17736350, at *6 (quoting *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996)). Having completed sufficient investigation, Class Counsel believe that the proposed Settlement fairly resolves the claims against the GWG Defendants without the expense and risk of discovery and trial.

Lead Plaintiff, the Trustee and his counsel, and the GWG Defendants also engaged in arm's length negotiations with the assistance of two experienced mediators appointed by the Court: Hon. W. Royal Furgeson (Ret.), a veteran District Court judge, and David Murphy of Phillips ADR Enterprises LLC. The negotiations spanned nearly a year and a half and took into account all the relevant considerations, including Lead Plaintiff's factual and legal investigation, the substantive and procedural defenses to the claims, and the ongoing depletion of the available insurance.

Furthermore, Class Counsel are experienced in litigating securities class actions and have negotiated other class settlements, which have been approved by courts throughout the country.[7] Similarly, the GWG Defendants have been at all times represented by skilled law firms with strong reputations for their defense of securities class actions. As a result, the Class was fairly and adequately represented in these proceedings and the Settlement is not collusive.

---

[7] *See* Girard Sharp's and Malmfeldt Law Group's websites, available at www.girardsharp.com and www.malmfeldt.com, respectively.

   **c.**  **The Relief Provided to the Class Is Adequate in Light of the Costs, Significant Risks, and Delay of Trial and Appeal**

Rule 23(e)(2)(C)(i) requires the relief provided under the Settlement to be adequate, considering the costs, risks and delay of trial and appeal. The Fifth Circuit's third and fifth *Reed* factors similarly look at the probability of success on the merits as well as the complexity, expense and likely duration of the litigation. 703 F.2d at 172. The proposed Settlement satisfies these factors as well.

   **i.**  **Risks in Proving Liability and Damages, and in Certifying a Class**

 As the Fifth Circuit has recognized, securities class actions carry significant risk from the plaintiffs' perspective, opining that "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Lead Plaintiff and his counsel acknowledge significant barriers to prevailing in this action through trial.

 The Court previously dismissed Lead Plaintiff's complaint. Doc. 129. Even if the Court were to deny the GWG Defendants' eventual motions to dismiss and grant Lead Plaintiff's eventual motion for class certification, the GWG Defendants would likely seek an interlocutory appeal or move to decertify the class prior to trial. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *McNamara v. Felderhof*, 410 F.3d 277, 280 n.8 (5th Cir. 2005) (noting a district court can reconsider or modify its class certification order). As a result, in the absence of the Settlement, there is a very real risk that the Class Members will recover nothing at all. *See Poff v. PHH Mortg. Corp.*, 2023 WL 11983790, at *5 (S.D. Tex. Apr. 18, 2023) (in contrast to the uncertainty of securing class certification and prevailing at trial, the settlement "offers meaningful relief

now"). Thus, Lead Plaintiff and his counsel believe that the payment of $50,500,000, when viewed in the context of the significant risks and uncertainties involved in proving both liability and damages, is a fair exchange for the Class's claims against the GWG Defendants. *See Blackmon v. Zachary Holdings, Inc.*, 2022 WL 3142362, at *4 (W.D. Tex. Aug. 5, 2022) (the risk of a lesser recovery given the delay and risks of continued litigation favored approving the settlement).

> **d.      The Complexity, Expense, and Likely Duration of This Action**

For similar reasons, the complexity, expense and likely duration of further litigation (factor five) is an additional reason for Class Counsel to recommend, and the Court to approve, the Settlement. *See ODonnell*, 2019 WL 4224040, at *10 (the need for additional discovery and likelihood of summary judgment motions weighed in favor of preliminary approval). Moreover, the litigation could serve as a distraction, requiring resources disproportionate to the prospects for recovery, lasting for years as the parties endure a lengthy discovery period, trial, and any delay caused by likely appeals. These factors further support the Settlement. *See Matson v. NIBCO Inc.*, 2021 WL 4895915, at *10 (W.D. Tex. Oct. 20, 2021), *aff'd sub nom. Garcia v. Matson*, 2022 WL 6935303 (5th Cir. Oct. 12, 2022) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.") (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012)).

> **e.      The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery**

There is a significant possibility that this action could well result in no recovery for Class Members. Lead Plaintiff's Amended Complaint might not pass the pleading stage, and Lead Plaintiff would face even greater risk at the class certification stage. *See, e.g.*, *In re Kosmos*

*Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 135 (N.D. Tex. 2014) (denying class certification of Securities Act claims) (Boyle, J.).

In addition, the D&O Policies are "wasting policies" providing for defense costs. Over the past 18 months, there have been intense, competing demands on the D&O Policies, and the available coverage under these policies has substantially eroded. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 791-92 (S.D. Tex. 2008) ("Under [wasting D&O policies], as the litigation goes on, payment of defense costs can drain the fund, leaving little or no money for coverage of settlements or judgments."). Further, GWG, the issuer of the L Bonds, is bankrupt.

Even if the Amended Complaint were to survive Defendants' motion to dismiss and motions for summary judgment, the Court were to certify a class, and Lead Plaintiff were to prevail at trial against the GWG Defendants, it is all but certain that there would be no remaining coverage under the D&O policies at that stage from which to recover on a judgment. Under those circumstances, it may be difficult or impossible for Lead Plaintiff to achieve a meaningful recovery, especially with the Trustee pursuing claims in the Bankruptcy Court against most of the same Defendants. The Settlement, on the other hand, provides a meaningful recovery to Class Members who otherwise might recover nothing on the Class claims if the $50.5 million of insurance coverage that would be paid to resolve the Class Action, and certain claims in the Trust Action, were instead used for continuing defense costs.

Lead Plaintiff therefore believes the $50.5 million recovery achieved through the Settlement is an excellent result for the Class.

### f.    The Opinion of Class Counsel

A strong initial presumption that the settlement is fair and reasonable is created where, as here, experienced counsel have negotiated a settlement at arm's length, with the assistance of a

mediator. *See Armstrong*, 2024 WL 1123034, at *5 ("[T]he fact that the Settlement was obtained through formal mediation before a neutral mediator strongly suggests that it was not the result of improper dealings."); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *6 (W.D. La. Mar. 3, 2015). The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, calling such counsel the "linchpin" of an adequate settlement. *Reed*, 703 F.2d at 175. Thus, if experienced counsel determine that a settlement is in the class's best interest, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978); *see ODonnell*, 2019 WL 4224040, at *8 (presumption of fairness, adequacy, and reasonableness applies to a settlement reached through arm's length negotiations between experienced counsel, which "reflects the strong public interest in settling class actions.").

Lead Plaintiff's counsel have thoroughly evaluated the legal and factual issues, including the defenses asserted by GWG Defendants, and after consultation with the mediators, agreed to the instant Settlement on a fully informed basis. The view of Class Counsel, while not conclusive, is entitled to "significant weight" and supports approval. *Kostka*, 2022 WL 16821685, at *13 (citation omitted).

### 3. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### a. Attorneys' Fees

The Agreement provides that Class Counsel may seek Court approval of attorneys' fees and expenses. Agreement, ¶¶ 22-25 (App. 31-33). At the final approval stage, Lead Plaintiff will move for (a) an award of attorneys' fees from the Settlement of up to $8,484,000; (b) reimbursement of costs and expenses resulting from the prosecution of the action to date not to exceed $500,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. Total fees sought by Class Counsel and Trust Counsel will not

16

exceed 35% of the Settlement Fund, divided 16.8% to Class Counsel and 18.2% to Trust Counsel. As indicated above, the fees payable to Trust Counsel are governed by an *ex ante* agreement between the Trust and Trust Counsel. Class Counsel will submit evidence with their attorneys' fee motion that their hourly billings exceed the fee requested. As to Class Counsel, the fee request is in line with other securities class action settlements approved in this Circuit. *See, e.g., Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) (collecting cases and observing that "[t]he 33[.3]% requested by Class Counsel is within the range of typical awards, and is not the highest fee awarded in securities class action cases."); *Schwartz*, 2005 WL 3148350, at *31 ("The vast majority of Texas federal courts and courts in this District have awarded fees of 25%–33% in securities class actions."); *Shen v. Exela Techs., Inc.*, 2023 WL 8518901, at *1 (N.D. Tex. Dec. 7, 2023) (awarding one-third of settlement fund in securities case; *Neely*, 2022 WL 17736350, at *11 (same).

### b.    Supplemental Agreements

Rule 23(e)(3) requires disclosure of any agreements "made in connection" with the settlement. Fed. R. Civ. P. 23(e)(3). The parties have agreed to a Supplemental Opt-Out Contingency Agreement (*see* App. 132-139) that gives Defendants the right to terminate the Settlement in the event the number of Class opt-outs reaches a certain threshold. *See Estakhrian v. Obenstine*, 2016 WL 6517052, at *12 (C.D. Cal. Feb. 16, 2016) ("[T]he court is persuaded that the opt-out provision is fair and proper in that it supports the parties in their efforts to ensure that settlement proceeds are directed to class members and not diverted to other parties or attorneys to the detriment of the class."). There are no other agreements made in connection with the Settlement.

If the Court requests to see the threshold, Lead Plaintiff will seek leave to submit it *in camera* to keep the exact threshold confidential, as it "is typically not disclosed and is kept

17

confidential to encourage settlement and discourage third parties from soliciting class members to opt out." *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009); *see, e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2015 WL 1486709, at *2 (E.D. Tenn. Mar. 31, 2015) (sealing opt out threshold).

### c.    Class Members Are Treated Equitably Under the Proposed Distribution Plan

Finally, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Assessment of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to the settlement as a whole—the plan must be fair, adequate and reasonable." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. La. Mar. 3, 2015) (quotation marks and citation omitted). "The district court has broad discretion with regard to the allocation of a class action settlement." *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *5 (E.D. Tex. Dec. 18, 2017), *R&R adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018).

"Courts have routinely endorsed the pro rata distribution of assets to investors as the most fair and equitable approach in fraud cases." *SEC v. Quan*, 870 F.3d 754, 762 (8th Cir. 2017) (quotation marks and citation omitted). Similarly, the Fifth Circuit has ruled that bankruptcy courts should exercise oversight to assure an equitable distribution of proceeds from the debtor's insurance policies. *See In re OGA Charters, L.L.C.*, 901 F.3d 599, 604-05 (5th Cir. 2018) (classifying debtor's insurance policies' proceeds as estate property where claims against the estate so exceed the available insurance); *In re Alta Mesa Res., Inc.*, 2022 WL 17586710, at *7 (Bankr. S.D. Tex. Dec. 12, 2022) (acknowledging "[t]here is . . . [Fifth Circuit] case law to support the argument that where liability policy proceeds would be insufficient to cover a multitude of claims, the policy proceeds may properly be considered estate property[,]" and

18

relatedly "the debtor [has] an equitable interest in having the proceeds apply to satisfy as many claims as possible") (Isgur, M.).

Under the proposed Distribution Plan, the Net Settlement Fund will be distributed to holders of Allowed Claims in accordance with the Confirmation Order entered in the Bankruptcy Case. The *pro rata* distribution treats Class Members equitably. *See Neely*, 2022 WL 17736350, at *5 (noting that a *pro rata* distribution "is common in securities class actions"); *S.E.C. v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001) (affirming *pro rata* distribution of remaining assets); *Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 328 (N.D. Tex. 2011). In the interests of efficiency and minimizing the costs of distribution, Lead Plaintiff moves to add the Whitley Penn settlement fund, less any fees and costs approved by the Court, to the Settlement Fund. Implementing a separate distribution scheme will result in excessive expense in relation to the value of the recovery to any individual bondholder.

The proposal to distribute the entire $50,950,000, less court-approved deductions, to the broader group of holders of Allowed Claims in the Bankruptcy Case is also fair, reasonable and based on rational considerations. *See Neely*, 2022 WL 17736350, at *5 ("When an allocation plan is formulated by competent and experienced counsel, it will generally be upheld if it is supported by a reasonable, rational basis.") (quotation marks and citation omitted); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2008 WL 4178151, at *5 (S.D. Tex. Sept. 8, 2008) (a distribution plan may take into "consideration the unique facts and circumstances of this litigation[.]").

Class actions are often settled as part of a larger settlement of all claims, including non-class claims. *See, e.g.*, *In re Shell Oil Refinery*, 155 F.R.D. 552, 556 (E.D. La. 1993) (noting that because "[s]ettlement of all claims was a crucial goal," the class action settlement was contingent

19

on settlement of opt-out cases and state court cases). Where, as here, there is a single global

settlement of parallel cases, courts have approved distribution to both class and non-class

members. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 2009 WL 411877, at *8 (D.N.J. Feb. 17,

2009) (plan allocating reserved portion of settlement fund to "settle non-Class Member" actions

was fair and reasonable); *In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *4 (S.D.N.Y. May 9,

2013) (approving plan of allocation that provided for payment out of settlement fund to

regulators); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL

12333442, at *87-88 (N.D. Cal. Jan. 8, 2013) (approving distribution plan reserving portion of

settlement funds to be distributed to government plaintiffs in "Non-Class" states), *R&R adopted*

*sub nom.* 2014 WL 12879520 (N.D. Cal. June 27, 2014).

　　　　In this case, a single Settlement will resolve both the Class Action claims against the

GWG Defendants and the Trust Action claims against the Released Trust Action Defendants

Releasees. It is equitable to distribute the settlement fund to holders of Allowed Claims because

attempting to disaggregate the Class Action claims and Trust Action claims for distribution

purposes makes little sense in the context of this case. Both Lead Plaintiff and the Trustee allege

that GWG's bankruptcy, and the losses suffered by L Bondholders, resulted from many of the

same actions on the part of Defendants. Neither case will settle unless the other settles

concurrently, and competition between both cases will inevitably deplete the insurance at the

expense of the intended beneficiaries of the litigation. The Trustee strongly opposes any attempt

to disaggregate the funds.  *Cf. Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011)

(district courts have the discretion to treat "all class members as falling within a single class for

purposes of a fund allocation" and noting that the "potential Balkanization of the class action"

can create "a huge obstacle to settlement if each subclass has an incentive to hold out for more

money") (quotation marks and citation omitted). Moreover, in cases for recovery of investment losses, courts in the bankruptcy and receivership contexts have consistently applied equitable principles to approve distribution plans allocating funds based on victims' losses. *See In re Taubman*, 160 B.R. 964, 978 (Bankr. S.D. Ohio 1993) (noting that under such circumstances, courts "have specifically applied equitable principles to resolve claims distribution issues") (citing *Cunningham v. Brown*, 265 U.S. 1, 44 (1924)); *SEC v. Faulkner*, 2020 WL 2042339, at *5 (N.D. Tex. Apr. 28, 2020) (in approving distribution of receivership funds, courts determine what is the most equitable and noting that courts have favored *pro rata* distributions where fraud victims' funds were commingled and were "similarly situated").

It is therefore fair and reasonable to make a *pro rata* distribution of the Net Settlement Funds to the broader group of holders of Allowed Claims in accordance with the Confirmation Order entered in the related Bankruptcy Case.

### C. The Proposed Forms and Methods of Notice Are Adequate.

Pursuant to Fed. R. Civ. P. 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class members must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice must "contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member.*" In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977). Additionally, the notice must "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Id.* at 1105.

Since the present case is governed by the Private Securities Litigation Reform Act ("PSLRA"), the proposed notices must also comport with the PSLRA's requirements.

Specifically, the notices must contain certain information, including a statement of recovery, potential outcome of the case, attorneys' fees or costs sought, identification of lawyers, and the reasons for the settlement. *See* 15 U.S.C. §77z-1(a)(7).

The forms of notice—the Notice of Pendency of Class Action and Proposed Settlements ("Class Notice"), Agreement, Ex. G (App. 110-127), and the summary notice ("Summary Notice"), Agreement, Ex. H (App. 128-131)—which would notify Class Members of the Settlement and Whitley Penn Settlement, both comport with Rule 23(e) and the PSLRA. They use "plain English" to inform Class Members of the essential terms of the Settlement and Whitley Penn Settlement, to provide a statement of the recovery, to provide the procedures for requesting exclusion from the Class or objecting to the Settlement, and to provide specifics on the date, time, and place of the Final Approval Hearing. In addition, the notices contain information regarding Class Counsel's fee and expense application and the proposed plan for allocating the proceeds of the Settlement and Whitley Penn Settlement among Class Members. Thus, the notices fairly apprise Class Members of their rights with respect to the Settlement and Whitley Penn Settlement, are the best notice practicable under the circumstances, and should be approved by the Court. *See Armstrong*, 2024 WL 1123034, at *3 (settlement notice that "described, in plain and easily understood terms" the nature and terms of the settlement satisfied Rule 23(e)(1)); *see also* Declaration of Justin R. Hughes, ¶ 13 (App. 144).

Lead Plaintiff proposes that Stretto, Inc. ("Noticing Agent"), the noticing agent already retained by the Wind Down Trust established in the Bankruptcy Case, beginning no later than twenty (20) business days after the date of entry of the Preliminary Approval Order, mail the Class Notice to all Persons who purchased or otherwise acquired L Bonds during the Class Period at the addresses set forth in GWG's books and records received by the Wind Down

Trustee, or who may be identified through further reasonable effort. Lead Plaintiff also proposes that the Noticing Agent email the Class Notice to the same Persons within twenty (20) business days after the date of entry of the Preliminary Approval Order, using the records maintained by the Wind Down Trustee.

Additionally, Lead Plaintiff proposes that the Summary Notice be published once in Investor's Business Daily and once by press release through PR Newswire, within twenty (20) business days after the date of the entry of the Preliminary Approval Order. Further, Lead Plaintiff proposes that the Class Notice be published on the Wind Down Trust's website established in connection with the Bankruptcy Case, https://gwgholdingstrust.com, within twenty (20) business days of the date of entry of the Preliminary Approval Order. *See Baron v. HyreCar Inc.*, 2024 WL 3504234, at *16 (C.D. Cal. July 19, 2024) (approving securities class action that provided for mail and/or email notice, posting on website, and publication on Investor's Business Daily and PR Newswire).

The Class Notice and Summary Notice comply with the requirements of the PSLRA. And, collectively, these proposed forms of notices, and methods of notice, are reasonably calculated to apprise class members of the terms of the settlements, and therefore satisfy the requirements of Rule 23(e)(1).

*     *     *

Each approval factor identified under Rule 23(e) and the Fifth Circuit is satisfied. Accordingly, Lead Plaintiff and Class Counsel respectfully submit that the Settlement is both fair and adequate and that it meets each of the Rule 23(e)(2) factors such that the Court should preliminarily approve the Settlement.

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court is required to schedule deadlines for mailing the Class Notice and publication of the Summary Notice, deadlines to request exclusion from the Class or object to the Settlement, and to submit claim forms (not applicable here).

The Court must also set the date of the Final Approval Hearing. The parties propose the following schedule:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Initial mailing of Class Notice to Class Members | Twenty (20) business days after the date of entry of the Preliminary Approval Order |
| Deadline for publication of Class Notice on Wind Down Trust's website | Twenty (20) business days after the date of entry of the Preliminary Approval Order |
| Deadline for publication of Summary Notice in Investor's Business Daily and by press release through PR Newswire | Twenty (20) business days after the date of entry of the Preliminary Approval Order |
| Deadline for filing motion in support of final approval of Settlement, Distribution Plan of Settlement proceeds, and application for attorneys' fees and expenses relating to the Settlement | Thirty-five (35) calendar days prior to the date of the Settlement Hearing |
| Deadline for filing motion in support of final approval of the Whitley Penn Settlement, Distribution Plan of Whitley Penn Settlement proceeds, and application for attorneys' fees and expenses relating to the Whitley Penn Settlement | Thirty-five (35) calendar days prior to the date of the Settlement Hearing |
| Deadline for the receipt of objections to the Settlement and the Whitley Penn Settlement, Distribution Plan of Settlement proceeds and Whitley Penn Settlement proceeds, and/or applications | Fourteen (14) calendar days prior to the date of the Settlement Hearing |

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| for attorneys' fees and expenses, and requests for exclusion from the Class | |
| Deadline for filing papers in response to any objections to the Settlement, Distribution Plan of Settlement proceeds, and/or application for attorneys' fees and expenses relating to the Settlement | Seven (7) calendar days before the Final Approval Hearing |
| Deadline for filing papers in response to any objections to the Whitley Penn Settlement, Distribution Plan of Whitley Penn Settlement proceeds, and/or application for attorneys' fees and expenses relating to the Whitley Penn Settlement | Seven (7) calendar days before the Final Approval Hearing |
| Final Approval Hearing | Approximately one hundred and ten (110) calendar days after the date of entry of the Preliminary Approval Order |

## VI.    CONCLUSION

Because the proposed Settlement meets the standards for preliminary approval, Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the proposed Settlement as within the range of possible fairness, reasonableness and adequacy; (ii) certify the proposed Class for settlement purposes; (iii) designate Frank Moore as the representative of the Class for settlement purposes only; (iv) appoint Girard Sharp LLP and Malmfeldt Law Group P.C. as counsel for the Class for purposes of the Settlement only; (v) approve the proposed forms and methods of notice for the Settlement and Whitley Penn Settlement to Class Members; and (vi) schedule a date and time to consider final approval of the Settlement, the Distribution Plan, and the application for attorneys' fees and expenses.

Dated:  March 7, 2025                              Respectfully submitted,

                                                            */s/ Daniel C. Girard*
                                                            Daniel C. Girard (admitted *pro hac vice*)

Adam E. Polk (admitted *pro hac vice*)
Sean Greene (admitted *pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
dgirard@girardsharp.com
apolk@girardsharp.com
sgreene@girardsharp.com

Paul D. Malmfeldt (admitted *pro hac vice*)
**MALMFELDT LAW GROUP P.C.**
120 N. LaSalle Street, Suite 2000
Chicago, IL 60602
Tel: (312) 606-8625
pdm@malmfeldt.com

Warren T. Burns (TXBN 24053119)
Clayton Mahaffey (admitted *pro hac vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
wburns@burnscharest.com
cmahaffey@burnscharest.com

*Attorneys for Lead Plaintiff Frank Moore*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(a), I hereby certify that the relief sought in this motion has been confirmed to be unopposed after conferences with counsel for defendants regarding the relief requested herein.

*/s/ Daniel C. Girard*
Daniel C. Girard

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 7, 2025, I filed the above and foregoing on the Court's

CM/ECF electronic filing system, and that by virtue of this filing, all attorneys of record will be

served electronically with true and exact copies of this filing.

*/s/ Daniel C. Girard*
Daniel C. Girard
